UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

**Case No.** **2:22-cv-02871-MWF (JEMx)**          **Date:  November 29, 2022**
Title:     Moement, Inc. v. Groomore, Inc. et al

Present:   The Honorable MICHAEL W. FITZGERALD, U.S. District Judge

|  |  |
|---|---|
| Deputy Clerk: | Court Reporter: |
| Rita Sanchez | Not Reported |
| | |
| Attorneys Present for Plaintiff: | Attorneys Present for Defendant: |
| None Present | None Present |

**Proceedings (In Chambers):**          ORDER DENYING DEFENDANTS' MOTION
                                        TO DISMISS [19]

        Before the Court is Defendants GrooMore, Inc.'s ("GrooMore") and Chunliang
Lin's ("Lin") (collectively "Defendants") Motion to Dismiss the Complaint (the
"Motion") and Request for Judicial Notice ("RJN"), concurrently filed on June 6,
2022.  (Docket No. 19).  On August 8, 2022, Plaintiff Moement, Inc. ("Moement" or
"Plaintiff") filed an Opposition.  (Docket No. 23).  On August 15, 2022, Defendants
filed a Reply.  (Docket No. 24).

        The Motion was noticed to be heard on August 29, 2022.  The Court read and
considered the papers on the Motion and deemed the matter appropriate for decision
without oral argument.  *See* Fed. R. Civ. P. 78(b); Local Rule 7-15.  The hearing was
therefore **VACATED** and removed from the Court's calendar.

        For the reasons discussed below, the Motion and RJN are wholly **DENIED**.

## I.     REQUEST FOR JUDICIAL NOTICE

        As a threshold issue, the Court notes that in deciding a Rule 12(b)(6) motion, the
court generally looks only to the face of the complaint and documents attached thereto.
*Van Buskirk v. Cable News Network, Inc.,* 284 F.3d 977, 980 (9th Cir. 2002); *Hal
Roach Studios, Inc. v. Richard Feiner & Co., Inc.,* 896 F.2d 1542, 1555 n. 19 (9th Cir.
1990); *see also* Fed. R. Civ. P. 10(c) ("A copy of a written instrument that is an exhibit
to a pleading is a part of the pleading for all purposes.").  Thus, in ruling on this
Motion, the Court has considered the allegations of the Complaint and the attached

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
<u>CIVIL MINUTES—GENERAL</u>

**Case No.  2:22-cv-02871-MWF (JEMx)**          **Date:  November 29, 2022**

Title:      Moement, Inc. v. Groomore, Inc. et al

Exhibits, which include screenshots comparing the user interface of their website with the user interface of Defendant GrooMore's website (Exhibits A and B); a screenshot of a GrooMore tutorial video posted on YouTube allegedly showing evidence that GrooMore copied Plaintiff's source code (Exhibit C); GrooMore's Annual Franchise Tax Report showing GrooMore's date of incorporation (Exhibit D); and certain employment agreements upon which Plaintiff's claims are based (Exhibits E-G); and Plaintiff's Copyright Registration Certificate for their software (Exhibit H).  (*See* Docket No. 1-1) ("Compl.")); *see also Glynn Env't Coal., Inc. v. Sea Island Acquisition, LLC*, 26 F.4th 1235, 1240 (11th Cir. 2022) ("We accept as true the allegations in the complaint and attached exhibits and draw all reasonable inferences in favor of the plaintiffs.").

Generally, "if a district court considers evidence outside the pleadings, it must normally convert a Rule 12(b)(6) motion into a Rule 56 motion for summary judgment." *United States v. Ritchie,* 342 F.3d 903, 907 (9th Cir. 2003).  "A court may, however, consider certain materials—documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice—without converting the motion to dismiss into a motion for summary judgment." *Id.* at 908.  Thus, in ruling on a motion to dismiss, the court can consider material that is subject to judicial notice under Rule 201 of the Federal Rules of Evidence. Fed. R. Evid. 201.  "Under Rule 201, the court can judicially notice '[o]fficial acts of the legislative, executive, and judicial departments of the United States,' and '[f]acts and propositions that are not reasonably subject to dispute and are capable of immediate and accurate determination by resort to sources of reasonably indisputable accuracy.'" *Gerritsen v. Warner Bros. Ent. Inc.*, 112 F. Supp. 3d 1011, 1020 (C.D. Cal. 2015) (citing Fed. R. Evid. 201).  Further, based on the incorporation by reference doctrine, a "court may consider evidence on which the complaint 'necessarily relies'" if: "(1) the complaint refers to the document; (2) the document is central to the plaintiff's claim; and (3) no party questions the authenticity of the copy attached to the 12(b)(6) motion." *Daniels-Hall v. Nat'l Educ. Assn*, 629 F.3d 992, 998 (9th Cir. 2010) (internal citations omitted).

Here, Defendants seek judicial notice of screenshots of GrooMore's website page "evidencing [how they] are actually displayed," "as opposed to" the exhibits

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

Case No.  **2:22-cv-02871-MWF (JEMx)**          Date:  **November 29, 2022**

Title:      Moement, Inc. v. Groomore, Inc. et al

displaying screenshots taken by Plaintiff of GrooMore's webpages that Plaintiff attached to the Complaint.  (Request for Judicial Notice (Docket 19-5)).  Plaintiff contends that Defendants' Exhibits are not subject to judicial notice because "Defendants simply cannot demonstrate that the screenshots of GrooMore's user interface designs are accurate."  (Opposition at 9-10).  Thus, because Plaintiff disputes the authenticity of the screenshots, the Court may not consider the screenshots on a motion to dismiss, neither based on judicial notice nor the incorporation-by-reference doctrine.  *See Daniels-Hall*, 629 F.3d at 998; *Marshall v. Marshall*, 523 F. Supp. 3d 802, 819 (E.D. Va. 2021) ("Court may not consider exhibits offered by the movants as attachments, as has occurred here, when the contents of the exhibits are in dispute.") (citation omitted); *see also Gerritsen*, 112 F. Supp. 3d 1011, 1030-1031 (noting that courts are "very reluctant to take judicial notice of information that appear exclusively on websites which have been created and are maintained by one of the parties to a case.) (citing *Koenig v. USA Hockey, Inc.,* No. 2:09-cv-1097, 2010 WL 4783042, at *3 (S.D. Ohio June 14, 2010)).

Plaintiff also argues that the screenshots are offered to show what GrooMore's website currently looks like, (i.e., "***post lawsuit***"), which at most, illustrates a dispute of fact.  (Opposition at 10) (emphasis in original).  The Court agrees.  Even if the Court were to consider the screenshots, they are only relevant to the extent they dispute Plaintiff's allegations that their website is substantially similar to Plaintiff's, and thus, would not enable Defendants to prevail on their Motion.  *See e.g.*, *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1003 (9th Cir. 2018) ([I]t is improper to assume the truth of an incorporated document if such assumptions only serve to dispute facts stated in a well-pleaded complaint."); *Jones v. Micron Technology Inc.*, 400 F. Supp. 3d 897, 905 (N.D. Cal. 2019) (declining to take judicial notice of documents attached to defendant's motion to dismiss, where defendants purpose in submitting the documents was to create disputed version of facts alleged, or to create defense to allegations in complaint).

Accordingly, Defendants' RJN is **DENIED**.

---

**CIVIL MINUTES—GENERAL**          **3**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

Case No.  **2:22-cv-02871-MWF (JEMx)**          Date:  **November 29, 2022**

Title:       Moement, Inc. v. Groomore, Inc. et al

## II.    **BACKGROUND**

The Court summarizes the allegations in the Complaint in the light most favorable to the Plaintiff.

Plaintiff Moement owns and operates an online pet grooming scheduling software system. (Compl. ¶ 3). Moement hired Defendants Lin, Songyun Liu, and Jie Zhang (collectively the "Individual Defendants") as software engineers in 2017. (*Id.* ¶ 1). The Individual Defendants were involved in developing and had access to Moement's software. (*See id.* at ¶¶ 3-5). As such, Moement required that Defendants Lin, Zhang, and Liu each sign at least three written agreements, including the Mutual Confidentiality Agreement, the Independent Contractor Agreement, and the Founder Advisor Agreement (the "Employment Agreements"). (*Id.* ¶¶ 37-41, 82). The Employment Agreements each "prohibited the[ Individual Defendants] from, among other things, using or disclosing the Moement Trade Secrets." (*Id.*). Plaintiff defines its "Trade Secrets" as "the Moego v.1 backend source code," which comprises "148 files consisting of 93,058 lines of confidential and proprietary computer scripts that took Moement at least 25,000 engineering hours to create and build." (*Id.* ¶¶ 6, 42). Plaintiff contends that its source code serves as the "backbone technology" running its online software platform and the associated mobile application. (*Id.* ¶ 7). According to Plaintiff, access to the source code would "enable engineers at other companies to replicate [it's] automated processes to create a similar scheduling system in a fraction of the time and with a fraction of the expense it took Moement to build it." (*Id.* ¶ 33). Furthermore, Plaintiff alleges that developing the Trade Secrets "was expensive and time-consuming, as Moement and its affiliate spent at least 25,000 man hours of work in over four years developing the code." (*Id.* ¶ 32).

On June 30, 2020, non-moving Defendant Zhang gave notice of his intent to terminate his service contracts with Moement. (*Id.* ¶ 6). Weeks before leaving, Defendant Zhang allegedly "downloaded from Moement's secure internal network a full copy of the Moego v.1 backend source code." (*Id.* ¶¶ 6, 42). Then, four months later, on October 22, 2020, while still working for Plaintiff, moving Defendant Lin launched the moving Defendant company, GrooMore, which is a competing online pet

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

Case No.  2:22-cv-02871-MWF (JEMx)           Date:  November 29, 2022
Title:      Moement, Inc. v. Groomore, Inc. et al

grooming scheduling service.  (*Id.* ¶ 9).  Defendant Lin is GrooMore's CEO and sole director, and Defendants Liu and Zhang currently work for GrooMore.  (*Id.* ¶ 9).

Upon investigation, Plaintiff discovered a GrooMore tutorial video posted on YouTube on October 20, 2020, that showed Moego's Apple Push Notification service (APNs) certificate file "apns-moego-b-2021.p12" embedded in Groomore's software. (*Id.* ¶ 14).  Plaintiff describes the APNs certificate as "a unique and secret key assigned to Moement by Apple for pushing notification to Moement's iOS mobile application users." (*Id.*).  Plaintiff alleges that their APNs certificate should not have appeared in a competitor's software, but for the fact that Defendants copied the APNs code while replicating Moement's source code." (*Id.*).  Plaintiff also found their Google Map API key, a paid-for software license Google assigned to Plaintiff for a fee, in GrooMore's software. (*Id.* ¶ 15).  The key is unique to Plaintiff and only known to Plaintiff and its engineers. (*Id.*).  Plaintiff again alleges that the key could not have been embedded in GrooMore's software unless its own source code was copied by Defendants. (*Id.*).

Based on the above allegations, Plaintiff alleges five claims for relief: (1) violations of the Defend Trade Secrets Act ("DTSA") pursuant to 18 U.S.C. § 1831 *et. seq.*; (2) violations of the California Uniform Trade Secrets Act ("CUTSA") pursuant to California Civil Code § 3426 *et. seq.*; (3) copyright infringement; (4) breach of contract and (5) violations of California Business and Professions Code § 17200.

## III.   LEGAL STANDARD

"Dismissal under Rule 12(b)(6) is proper when the complaint either (1) lacks a cognizable legal theory or (2) fails to allege sufficient facts to support a cognizable legal theory." *Somers v. Apple, Inc.*, 729 F.3d 953, 959 (9th Cir. 2013).

In ruling on the Motion under Rule 12(b)(6), the Court follows *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). "To survive a motion to dismiss, a complaint must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

Case No.  2:22-cv-02871-MWF (JEMx)          Date:  November 29, 2022
Title:      Moement, Inc. v. Groomore, Inc. et al

*Twombly*, 550 U.S. at 570).  The Court must disregard allegations that are legal conclusions, even when disguised as facts.  *See id*. at 681 ("It is the conclusory nature of respondent's allegations, rather than their extravagantly fanciful nature, that disentitles them to the presumption of truth."); *Eclectic Properties E., LLC v. Marcus & Millichap Co*., 751 F.3d 990, 996 (9th Cir. 2014).  "Although 'a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof is improbable,' plaintiffs must include sufficient 'factual enhancement' to cross 'the line between possibility and plausibility.'"  *Id*. at 995 (quoting *Twombly*, 550 U.S. at 556–57) (internal citations omitted).

The Court must then determine whether, based on the allegations that remain and all reasonable inferences that may be drawn therefrom, the Complaint alleges a plausible claim for relief.  *See Iqbal*, 556 U.S. at 679; *Cafasso, U.S. ex rel. v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1054 (9th Cir. 2011).  "Determining whether a complaint states a plausible claim for relief is 'a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'"  *Ebner v. Fresh, Inc.*, No. 13-56644, 2016 WL 5389307, at *2 (9th Cir. Sept. 27, 2016) (as amended) (quoting *Iqbal*, 556 U.S. at 679).  Where the facts as pleaded in the Complaint indicate that there are two alternative explanations, only one of which would result in liability, "plaintiffs cannot offer allegations that are merely consistent with their favored explanation but are also consistent with the alternative explanation. Something more is needed, such as facts tending to exclude the possibility that the alternative explanation is true, in order to render plaintiffs' allegations plausible." *Eclectic Properties*, 751 F.3d at 996–97; *see also Somers*, 729 F.3d at 960.

## IV.   DISCUSSION

### A.   Trade Secret Misappropriation Claims

Plaintiff brings trade secret misappropriation claims under federal and California law.  (Compl. ¶¶ 54, 69) (citing 18 U.S.C. § 1831 *et. seq*; California Civil Code § 3426 *et. seq.*).  Plaintiff points out that in Defendants' Motion they incorrectly assess Plaintiff's federal trade secret claim based on the elements of the Economic Espionage

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

**Case No.** **2:22-cv-02871-MWF (JEMx)**          **Date:** **November 29, 2022**
Title:      Moement, Inc. v. Groomore, Inc. et al

Act. (Opposition at 11). Plaintiff contends that for that reason, Defendants waive any arguments against their DTSA claim. (*Id.*).

Defendants argue that they did not waive their arguments against the DTSA claim because the DTSA "is part of the same statutory scheme enacted in the Economic Espionage Act." (Reply at 3). While true, economic espionage claims and trade secret misappropriation claims have entirely different legal requirements. Nonetheless, because Defendants advanced arguments against Plaintiff's CUTSA claim, and the elements of CUTSA and DTSA are the same, the Court will consider Defendants' arguments for trade secret misappropriation under both the federal and California laws. (*See* Motion at 4-8).

To establish liability for trade secret misappropriation under the DTSA and CUTSA, the plaintiff must prove: (1) the plaintiff owned a trade secret, (2) the defendant "acquired, disclosed, or used" the plaintiff's trade secret through "improper means," and (3) the defendant's actions damaged the plaintiff. *Alta Devices, Inc. v. LG Electronics, Inc.*, 343 F. Supp. 3d 868 (N.D. Cal. 2018) (noting the elements required under the DTSA and CUTSA are the same); *see also* Cal. Civ. Code § 3426.1(b); 18 U.S.C. § 1836(b)(1).

## 1.    Ownership of Trade Secret

"A plaintiff seeking relief for misappropriation of trade secrets 'must identify the trade secrets and carry the burden of showing that they exist.'" *Imax Corp. v. Cinema Techs., Inc.*, 152 F.3d 1161, 1164-65 (9th Cir. 1998) (citing *MAI Sys. Corp. v. Peak Computer, Inc.*, 991 F.2d 511, 522 (9th Cir. 1993)). To meet this burden, Plaintiff must demonstrate that (1) the information is not "readily ascertainable through proper means," (2) it "derives independent economic value," and that (3) it took "reasonable measures to keep such information secret." 18 U.S.C.A. § 1839(3). "A plaintiff need not spell out the details of the trade secret," but must "describe the subject matter of the trade secret with sufficient particularity to separate it from matters of general knowledge in the trade or of special persons who are skilled in the trade, and to permit the defendant to ascertain at least the boundaries within which the secret lies." *AlterG, Inc. v. Boost Treadmills LLC*, 388 F. Supp. 3d 1133, 1144 (N.D. Cal. 2019) (citation

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
<u>CIVIL MINUTES—GENERAL</u>

**Case No.  2:22-cv-02871-MWF (JEMx)          Date:  November 29, 2022**

Title:      Moement, Inc. v. Groomore, Inc. et al

omitted).  As a "general principle, the more difficult information is to obtain, and the more time and resources expended" in developing information, "the more likely a court will find such information constitutes a "trade secret."  *Morlife, Inc. v. Perry*, 56 Cal. App. 4th 1514, 66 Cal. Rptr. 2d 731 (1997).  Plaintiffs can show economic value using circumstantial evidence of its investment of resources in producing the information. *Altavion, Inc. v. Konica Minolta Sys. Lab. Inc.*, 226 Cal. App. 4th 26, 171 Cal. Rptr. 3d 714 (2014); *see also Mattel, Inc. v. MGA Entm't., Inc.*, 782 F. Supp. 911, 972 (C.D. Cal. 2011); *Religious Tech. Ctr. v. Netcom On-Line Commc'n Servs.*, Inc., 923 F. Supp. 1231, 1253 (N.D. Cal. 1995); *Restatement (Third) of Unfair Competition* § 39 (1995).

Here, Plaintiff alleges that the "Trade Secrets" are contained in its "Moego v.1 backend source code," which includes "148 files consisting of 93,058 lines of confidential and proprietary computer scripts that took Moement at least 25,000 engineering hours to create and build."  (Compl, ¶¶ 6. 14, 15).  The source code is "an all-in-one scheduling software … for pet groomers to schedule and customize pet grooming appointments online and receive payments for pet grooming services."  (*Id. ¶¶ 6, 31*).  Plaintiff explains that the source code allows its business to "automate [] online searching and scheduling tasks, and test the automated processes to ensure they function properly" and this "original and proprietary creation" "serve[s] as the backbone technology to the unique logic and features for Moego's online software platform and the associated Moego mobile applications."  (*Id.* ¶ 32).  Plaintiff alleges that it employs a "team of programmers and quality assurance software engineers to write" the code and that it "took Moement four years of sustained effort to develop the Moement Trade Secrets," and the development of the source code was "expensive." (*Id.*).

Defendant appears to argue that the software programs' user interface (the colors, words, and charts) are not trade secrets because they are commonplace and used by several competitors.  (Motion at 5-6).

Defendants miss the point.  Plaintiff has alleged that the underlying source code that serves to fuel the user-interface is the trade secret at issue, not the look and feel of the user-interface itself, which is at issue in the copyright claim.  Plaintiff's allegations

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

Case No.  2:22-cv-02871-MWF (JEMx)          Date:  November 29, 2022
Title:      Moement, Inc. v. Groomore, Inc. et al

are sufficient to identify the source code and establish that it is not readily ascertainable through proper means.  Indeed, courts have found that "source code is undoubtedly a trade secret."  *Altavion*, 226 Cal. App. 4th at 60 (citing *Agency Solutions.Com, LLC v. TiZettor Group, Inc.*, 819 F. Supp. 2d 1001, 1017 (E.D. Cal 2011)); *see also Integral Dev. Corp. v. Tolat*, 675 F. App'x 700, 703 (9th Cir. 2017) ("Source code, which conveys facts or ideas, qualifies for trade secret protection."). And "even if some or all of the elements" of a trade secret are in the public domain, the combination is protectable if it is kept secret and has economic value.  *Altavion*, 226 Cal. App. 4th at 47.

Plaintiff also alleges, and Defendants do not seem to dispute, that the source code has economic value.  Plaintiff alleges that "[t]he Moement Trade Secrets are extremely valuable to Moement and would be to a competitor[] [because] [a]ccess to the scripts would enable engineers at other companies to reverse engineer Moego's automated processes to create a similar scheduling system in a fraction of the time and with a fraction of the expense it took Moement to build it."  (*Id.* ¶ 33).  The code "also would inform competitors of which systems Moement believes are important and valuable to automate and how to automate them – providing a roadmap to copy and hack into Moement's online system and mobile applications."  (*Id.*).

These allegations are sufficient.  Courts have held that "investment and development make the source code confidential and proprietary" as they give businesses "an advantage over competitors."  *WeRide Corp. v. Kun Huang*, 379 F. Supp. 3d 834, 850 (N.D. Cal. 2019), *modified in part*, No. CV 5:18-07233-EJD, 2019 WL 5722620 (N.D. Cal. Nov. 5, 2019).

Defendants, however, insist that the software is not a trade secret as a matter of law because Plaintiff did not take sufficiently reasonable steps to protect it.  (Reply at 3).  Defendants contend that "Moement required its employees to have access to the source code and to "download [it] to their respective personal computers" and Moement "took no action to secure that source code or API Key."  (*Id.*).  Further, Defendant contends that Plaintiff "took no action to ensure that when employees left, that the employees removed these alleged trade secrets from their computers."  (*Id.*).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

Case No.  2:22-cv-02871-MWF (JEMx)          Date:  November 29, 2022
Title:      Moement, Inc. v. Groomore, Inc. et al

According to the Complaint, however, Plaintiff took "extensive measures to ensure that the Moement Trade Secrets remain[ed] strictly confidential[.]"  (Compl. ¶ 34).  These measures allegedly included "limiting access to the scripts" to "fewer than six people," and the "engineers who ha[d] access to the scripts [were] not permitted to download them to personal devices or cloud storage."  (*Id.*).  And Plaintiff further alleges that it uses "password-protected and firewall protected networks" that are only "accessible to authorized personnel with proper credentials and it has an "Information Security team that monitors its systems for suspicious activity, including downloading of confidential information."  (*Id.* ¶¶ 35-36).  Plaintiff also allege that its employees with access to the source code signed confidentiality and other agreements prohibiting engineers from using or disclosing its trade secrets.  (*Id.* ¶¶ 37-41, 82).

In other words, Defendants dispute, as a matter of fact – not law – that employees were freely authorized to download the source code to their personal computers.  Furthermore, businesses are not required to turn themselves into an "impenetrable fortress" to protect their trade secrets.  *Pyro Spectaculars N., Inc. v. Souza*, 861 F. Supp. 2d 1079, 1091 (E.D. Cal. 2012) (citing *E.I. duPont deNemours & Co. v. Christopher*, 431 F.2d 1012, 1017 (5th Cir.1970)).  Courts have found that requiring employees to sign confidentiality agreements respecting its trade secrets is a sufficiently reasonable step to ensure the secrecy of their information.  *MAI Sys. Corp. v. Peak Computer, Inc.*, 991 F.2d 511, 513 (9th Cir. 1993).  Here too, the Court finds that Plaintiff has adequately alleged it took sufficiently reasonable steps to keep its trade secrets confidential.

Therefore, Plaintiff has sufficiently alleged ownership over a trade secret in its source code.

## 2.    Misappropriation

Plaintiff also alleges that Defendants improperly acquired, disclosed, and/or used its source code.  (Compl. ¶¶ 59, 72).  Thus, Defendants' argument that "there are no allegations that Defendant used the alleged trade secret" are incorrect.  (Motion at 5).  Although Defendants' argument is not entirely clear, they seem to also argue that there are insufficient facts against them given non-moving Defendant Zhang is the employee

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

Case No.  **2:22-cv-02871-MWF (JEMx)**          Date:  **November 29, 2022**

Title:       Moement, Inc. v. Groomore, Inc. et al

alleged to have improperly downloaded the source code.  (Motion at 7) ("[T]here are
no allegations that these Defendants uploaded th[e source code] or utilized the
information contained therein").

Under the CUTSA and DTSA, "misappropriation" means either the "(1)
[a]cquisition of a trade secret by another person who knows or has reason to know that
the trade secret was acquired by improper means;" or the "(2) [d]isclosure or use of a
trade secret of another without express or implied consent." 18 U.S.C. § 1839(5); Cal.
Civ. Code § 3426.1(b).

Plaintiff alleges that the moving Defendants improperly acquired, disclosed, and
used the source code.  As for the facts it uses to support its allegations, Plaintiff points
to both direct and circumstantial evidence of such acquisition and use.  First, as direct
evidence it alleges that it discovered "a tutorial video GrooMore published on
YouTube on October 20, 2020, that showed a Moego's APNs' certificate file "apns-
moego-b-2021.p12" embedded in GrooMore's software, and that the APNs certificate
is a unique and secret key that should not have appeared in a competitor's software, but
for the fact that Defendants copied the APNs code while replicating Moement's
proprietary source code."  (Compl. ¶ 45).  Likewise, Plaintiff alleges having found its
Google Map API embedded in GrooMore's software, which again they allege, could
not happen but for Defendants' systemic copying of Plaintiff's source code." (*Id.* ¶
46).

As circumstantial evidence of use, Plaintiff points to the fact that GrooMore
launched "a comparable online platform and mobile applications within months after
its founding and with minimal resources, which would not have been possible if
GrooMore had independently developed its own code." (*Id.* ¶¶ 13, 43-44).

These facts are sufficient to plead misappropriation as to Defendants.  While
Defendants attempt to point the finger solely at non-moving Defendant Zhang, the
allegations that unique secret keys that belong to Plaintiff are embedded in
***GrooMore's*** source code and the implausibly fast production of ***GrooMore's***
comparable website are sufficient allegations to support an inference of ***GrooMore's***
improper use.  *See Ajaxo Inc. v. E\*Trade Grp. Inc.*, 135 Cal.App.4th 21, 50, 37 Cal.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

**Case No.  2:22-cv-02871-MWF (JEMx)          Date:  November 29, 2022**

Title:      Moement, Inc. v. Groomore, Inc. et al

Rptr. 3d 221 (2005) (affirming district court's denial of judgment notwithstanding the verdict where there was sufficient circumstantial evidence of misappropriation given the defendant company developed the same technology as the Plaintiff competitor in "too short a time for independent development").  For instance, in *WeRide*, the court granted a preliminary injunction finding a trade secret claim had a likelihood of success on the merits where the defendant had created autonomous vehicle technology in ten weeks, where it took plaintiff's company eighteen months. 379 F. Supp. at 849. Here too, the four-month development time compared to the four years of development by Plaintiff is circumstantial evidence of use of the improperly obtained source code by moving Defendant GrooMore.  (*See* Opposition at 13).

As for moving Defendant Lin, the Complaint alleges that "Lin worked as a senior software engineer and was fully involved in the development, testing, debugging, and maintenance of the first version of the Moego software known as Moego v.1, the mobile applications, as well as the framework design of the Moego v.2 software." (Compl. ¶ 4).  As part of his job responsibilities at Moement, Lin "had full access to all of Moement's credentials, source code, servers, online platform, and developer accounts." (*Id.*).  GrooMore was set up by Defendant Lin on October 22, 2020, while he was still working for Moement and Lin is the CEO and sole director of GrooMore.  (*Id.* ¶ 9).  It is a reasonable inference from the alleged facts that Defendant Lin, the CEO and sole director of a startup business that directly competes with his former employer, obtained and/or used source code he knew to be improperly obtained from Plaintiff.  Defendant Lin need not have stolen the source code himself, the Complaint sufficiently alleges that he improperly acquired and/or used it.

Therefore, Plaintiff has sufficiently pled misappropriation for both moving Defendants.

### 3.      Damages

Defendants argue that because Plaintiff does not allege that it has suffered economic injury, Plaintiff has failed to plead that it has been damaged as a result. (Reply at 4).  Plaintiff responds by pointing to allegations that it developed its code at "great expense," that there is a threat that Defendants may disclose the source code,

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

Case No.  2:22-cv-02871-MWF (JEMx)              Date:  November 29, 2022
Title:       Moement, Inc. v. Groomore, Inc. et al

thereby destroying its value, and that Defendants have been "unjust[ly] enrich[ed]" because Defendants have gained an "unfair edge in competition," which is "an obvious form of economic injury inflicted by the competitor."  (Opposition 19-20).

A party may recover "damages for the actual loss caused by misappropriation" or the "unjust enrichment caused by misappropriation."  Cal. Civ. Code § 3426.3(a).  And "California courts have presumed irreparable harm when proprietary information is misappropriated." *Albert's Organics, Inc. v. Holzman*, 445 F. Supp. 3d 463, 474 (N.D. Cal. 2020) (citing *TMX Funding, Inc. v. Impero Techs., Inc.*, No. C 10-00202 JF, 2010 WL 1028254, at *8 N.D. Cal. Mar. 18, 2010).  Plaintiff's allegations that Defendants have gained an unfair competitive advantage at Moement's "great expense" is sufficient to plead damages for trade secret misappropriation.

Therefore, the Motion is **DENIED** as to the trade secret misappropriation claims under the DTSA and CUSTA.

## B.    Copyright Infringement

"To prevail on [a] copyright infringement claim, [a plaintiff] must demonstrate (1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." *Benay v. Warner Bros. Entm't, Inc.*, 607 F.3d 620, 624 (9th Cir. 2010) (citation omitted).  A plaintiff may establish copying through direct or circumstantial evidence. *See Baxter v. MCA, Inc.*, 812 F.2d 421, 423 (9th Cir. 1987) ("Because direct evidence of copying is rarely available, a plaintiff may establish copying by circumstantial evidence . . . .").  Circumstantial evidence of copying may include "(1) defendant's access to the copyrighted work prior to creation of defendant's work and (2) substantial similarity of both general ideas and expression between the copyrighted work and the defendant's work." *Id.*  'A plaintiff must show 'substantial similarities of *both* ideas and expression.'" *Buggs v. DreamWorks, Inc.*, No. 09-cv-7070-SJO (AGRx), 2010 WL 5790251, at *4 (C.D. Cal. Dec. 28, 2010) (quoting *Litchfield v. Spielberg*, 736 F.2d 1352, 1357 (9th Cir. 1984)) (emphasis in original).  "Because the requirement is one of substantial similarity to protected elements of the copyrighted work, it is essential to distinguish between the protected and unprotected material in a plaintiff's work, but "substantial similarity can be found

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

Case No.  2:22-cv-02871-MWF (JEMx)          Date:  November 29, 2022
Title:      Moement, Inc. v. Groomore, Inc. et al

in a combination of elements, even if those elements are individually unprotected."
*Williams v. Gaye*, 895 F.3d 1106, 1119–20 (9th Cir. 2018) (internal citations omitted).

### 1.    Ownership

Plaintiff alleges ownership of a copyright in its computer program and provides the registration number (U.S. Copyright Registration No. TX 0009101761) as well as a copy of the Registration Certificate attached as an Exhibit to their complaint, which lists Moement as the current owner.  (Compl. ¶ 86, Ex. H).  "A copyright registration certificate constitutes prima facie evidence of the validity of the copyright and the facts stated on the certificate, including the fact that the plaintiff owns a copyright." *Ticketmaster L.L.C. v. Prestige Ent. W., Inc.*, 315 F. Supp. 3d 1147, 1161 (C.D. Cal. 2018).

Defendants argue that Plaintiff's copyright claim fails because they did not own a copyright in the allegedly infringed computer program at the time of the alleged copying.  (Motion at 8).  Defendant also seems to contend that the computer program and underlying source code are not protectable as they are not original expressions because the various aspects of the user interface are commonplace across competitor websites.  (Motion 9-10).

However, as Plaintiff correctly points out, copyright registration is a prerequisite for filing suit, not for copyright protection.  "[I]f infringement occurs before a copyright owner applies for registration, that owner may eventually recover damages for the past infringement, as well as the infringer's profits" but they must apply for registration and receive a decision on their application before initiating suit. 17 U.S.C. § 504; *Fourth Estate Pub. Benefit Corp. v. Wall-Street.com, LLC*, 139 S. Ct. 881, 892 (2019); *see also Integral Dev. Corp. v. Tolat*, 675 Fed. Appx. 700, 704 (9th Cir. 2017) (plaintiff "acquired a copyright in its source code as the source code was written" and "did not need to register the source code with the copyright office before a copyright existed").

Defendants' originality argument likewise fails.  A commercial website readily qualifies for copyright protection.  *See Ticketmaster L.L.C. v. RMG Technologies*, Inc.,

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

Case No.  2:22-cv-02871-MWF (JEMx)          Date:  November 29, 2022

Title:      Moement, Inc. v. Groomore, Inc. et al

507 F. Supp. 2d 1096, 1104 (C.D. Cal. 2007) ("A website may constitute a work of authorship fixed in a tangible medium of expression ....") (quoting *Integrative Nutrition, Inc. v. Academy of Healing Nutrition*, 476 F. Supp. 2d 291, 296 (S.D.N.Y. 2007)).  And the "[c]opyright protection for a website may extend to both the screen displays and the computer code for the website."  *Integrative Nutrition*, 476 F. Supp. 2d at 296.

Therefore, Plaintiff has sufficiently pled ownership in the copyright of their source code, which is described as a "computer program" on the Registration Certificate attached to the Complaint.

## 2.     Copying

### a.     Access

Defendants do not appear to dispute that Defendants had access to the computer program and source code.  Even if certain ambiguous statements in the Motion could be read as challenging access, those contentions would fail.

Proof of access requires a "reasonable opportunity" or "reasonable possibility" of viewing the plaintiff's work.  *Three Boys Music Corp. v. Bolton*, 212 F.3d 477, 482 (9th Cir. 2000) *overruled on other grounds by Skidmore as Trustee for Randy Craig Wolfe Trust v. Led Zeppelin*, 952 F.3d 1051, 1066; 4 *Nimmer on Copyright*, § 13.02[A], at 13-19 (1999)).  "Reasonable possibility" requires more than "a bare possibility."  *Id.*

Here, Plaintiff contends that Defendants Zhang, Lin, and Liu "were former software engineers that worked for Moement."  (Opposition at 6).  Specifically, Plaintiff alleges that by virtue of their positions at Moement, each of the individual Defendants had access to the copyrighted material; that Defendant Zhang downloaded a copy of the entire backend source code that underpins Plaintiff's website and mobile application weeks before he left the company; and Defendant Lin started GrooMore a few months thereafter, where Defendants Zhang and Liu are also currently employed. (Compl. ¶¶ 3-10).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

Case No.  2:22-cv-02871-MWF (JEMx)          Date:  November 29, 2022

Title:      Moement, Inc. v. Groomore, Inc. et al

The Court is satisfied based on these facts that Plaintiff plausibly pled access.

**b.    Substantial Similarity**

Though not explicitly, Defendants also seem to argue that the websites are not substantially similar because only the non-protectable elements are comparable. (Motion at 9) (citing *Oravec v. Sunny Isles Luxury Ventures*, L.C., 527 F.3d 1218, 1224 (11th Cir. 2008) ("In identifying the protected elements of a plaintiff's work, the court must be mindful of the fundamental axiom that copyright protection does not extend to ideas but only to particular expressions of ideas[.]")).

"The substantial-similarity test contains an extrinsic and intrinsic component." *Funky Films, Inc. v. Time Warner Entm't Co., L.P.*, 462 F.3d 1072, 1077 (9th Cir. 2006).  A finding of substantial similarity under the extrinsic component is a necessary prerequisite to considering the intrinsic component, which is expressly reserved for the jury.  *See Shaw v. Lindheim*, 919 F.2d 1353, 1360-61 (9th Cir. 1990).  A failure to satisfy the extrinsic component on a motion to dismiss thus requires judgment for the defendant as a matter of law.  *See Funky Films*, 462 F.3d at 1077.  "Copyright protection can extend to both "literal and non-literal elements" of a computer program. *Id.* at 1355. The "literal elements of a computer program are the source code and object code, which are consistently held protected by a copyright." *Johnson Controls, Inc. v. Phoenix Control Sys., Inc.*, 886 F.2d 1173, 1745 (9th Cir. 1989). The non-literal components of a computer program include the program's "sequence, structure, and organization, as well as the program's user interface." *Id.* Whether the nonliteral elements are copyrightable depends on whether the component in question qualifies as an expression of an idea, or an idea itself.  *Id.* at 1175. Even components that serve a function, are entitled to copyright protection as long as the author had multiple ways to express the underlying idea.  *Oracle*, 750 F.3d at 1367.  A website's individual non-literal elements are the individual audiovisual components of the website, including the website's logos, images, fonts, videos and sound effects. *Ticketmaster L.L.C. v. Prestige Ent. W., Inc.*, 315 F. Supp. 3d 1147, 1160 (C.D. Cal. 2018) ) ("[W]ebsite's dynamic non-literal elements include the experience of the website as presented to the individual user.").

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

Case No.  2:22-cv-02871-MWF (JEMx)              Date:  November 29, 2022
Title:      Moement, Inc. v. Groomore, Inc. et al

Here, Plaintiff alleges that GrooMore's mobile applications offers designs and source code highly similar to Moego's copyrighted designs and source code, as evidenced by the similar selection of "color codes, layout, text, table of contents, and screen transitions." (Compl. ¶ 89).  They also provide a side-by-side comparison through screenshots of both websites interfaces as Exhibits A and B to the Complaint.

The substantial similarities between the websites are clear.  They not only have the same category of interfaces, the word selection and layout of those interfaces, is remarkably similar.  For instance, they both use a table of contents allowing users to navigate to different interfaces by clicking different tabs in the table.  (Compl. Ex. A).  The different tabs include online booking interfaces, a booking profile interface, a staff profile interface, a clock-in-and-out interface, an "add pet" interface, and a client profile interface.  (*Id.*).  While some of these may be inevitable features of a pet grooming scheduling program, there are several ways to present such features to the user.  It is not functionally required that each of these interfaces be presented separately within their own tab as part of a table of contents on the left side of the screen.  Further, the actual look and features within the interfaces are quite similar; they both contain color-coded, interactive calendars that display the same categories of information with the same naming conventions (whether the appointment is confirmed; the pet's name, the groomer's name, and the type of service booked).  (*Id.*, Ex. B).  Again, the word selections and features used could readily be expressed in different ways; for instance, the word "confirmed" could be easily substituted with "booked" or "set;" likewise "unconfirmed" is just a commonly expressed as "pending," yet both sites calendar features use nearly identical word choice.  (*Id.*).  And it is not inevitable that a calendar entry would even convey whether an appointment is confirmed (or any of the other details both sites include), as those appointment details may be conveyed via email or in-app notifications. *See e.g.*, *Oracle,* 750 F.3d at 1367 ("Even components that serve a function, are entitled to copyright protection as long as the author had multiple ways to express the underlying idea.").  Both sites also use a nearly identical interactive map, which is used to find groomers near the clients.  (Compl., Ex. B).  And while there are some subtle differences in color scheme and layout, "[n]o plagiarist can excuse the wrong by showing how much of his work he did not pirate."

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

Case No.  2:22-cv-02871-MWF (JEMx)          Date:  November 29, 2022

Title:      Moement, Inc. v. Groomore, Inc. et al

*See Sheldon v. Metro Goldwyn Pictures Corp.*, 81 F.2d 49, 56 (2d Cir.), *cert. denied*, 298 U.S. 669 (1936).

Even if these similarities were insufficient on their own, the most glaring allegations that support a finding of substantial similarity are that certain certificates and keys exclusive to Moement's code were found in GrooMore's possession and code.  Specifically, Plaintiff alleges that it discovered "a tutorial video GrooMore published on YouTube on October 20, 2020, that showed a Moego's APNs' certificate file "apns-moego-b-2021.p12" embedded in GrooMore's software, and that the APNs certificate is a "unique and secret key that should not have appeared in a competitor's software, but for the fact that Defendants copied the APNs code while replicating Moement's proprietary source code."  (Compl. ¶ 45).  Likewise, Plaintiff alleges having found its Google Map API embedded in GrooMore's software, which again they allege could not happen but for Defendants' systemic copying of Plaintiff's source code."  (*Id.* ¶ 46).

Courts have found that evidence of functionally unnecessary scripts present in both the plaintiff's and the alleged infringer's source code is strong evidence of substantial similarity.  *See e.g.*, *Atari Games Corp. v. Nintendo of Am. Inc.*, 975 F.2d 832, 845 (Fed. Cir. 1992) (applying Ninth Circuit law, holding that the existence of the unnecessary instructions in the alleged infringer's program was strong evidence of substantial similarity); *M. Kramer Mfg. Co. v. Andrews*, 783 F.2d 421, 446 (4th Cir. 1986) ("Courts have consistently viewed 'common errors' as strongest evidence of copying."); *E.F. Johnson Co. v. Uniden Corp. of Am.*, 623 F. Supp. 1485, 1496 (D. Minn. 1985) ("The existence of the identical unnecessary instructions in both codes is strong proof of substantial similarity."); *SAS Inst. v. S & H Computer Sys.*, 605 F. Supp. 816, 824, 826 (M.D. Tenn. 1985) (inclusion of unnecessary statement "explained only as a result of slavish copying of structural detail").  Here too, the Court finds the presence of Plaintiff's APNs and Google Map API Key is strong evidence of piracy and substantial similarity.

Accordingly, Plaintiff has sufficiently plead copyright infringement and the Motion as to that claim is **DENIED.**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

Case No. 2:22-cv-02871-MWF (JEMx)         Date:  November 29, 2022
Title:       Moement, Inc. v. Groomore, Inc. et al

### C.    <u>Breach of Contract</u>

The elements for a breach of contract claim are: (1) a contract exists; (2) plaintiff's performance or excuse for nonperformance; (3) defendant's breach; and (4) resulting damages to plaintiff.  *Durell v. Sharp Healthcare*, 183 Cal. App. 4th 1350, 1367, 108 Cal. Rptr. 3d 682 (2010).

Plaintiff only brings this claim against the Individual Defendants who signed the Employment Agreements, which prohibited use of its trade secrets.  (Compl. ¶ 82). Moving Defendant Lin argues that Plaintiff's breach of contract claim fails because Plaintiff has not sufficiently pled that it "was in possession of a valid copyright during the period alleged and it possessed protectable trade secrets."  (Motion at 10).  The Court understands this contention as an argument that Plaintiff has not proved breach, the third element of a contract claim.  However, as noted above, the Court concludes that Plaintiff has adequately pled ownership of a copyright and trade secrets and has further adequately alleged that Defendant Lin improperly used and/or copied its protected material.

Accordingly, the Motion as to the breach of contract claim is **DENIED**.

### D.    <u>Unfair Competition Law</u>

Defendants make three arguments against Plaintiff's claim under California Business and Professional Code section 17200 (also known as Unfair Competition Law ("UCL")).  First, that Plaintiff lacks UCL standing because it has not alleged economic injury.  (Motion at 10).  Second, that Plaintiff has not sufficiently alleged an underlying violation of law.  (*Id.* at 11).  Third, Defendants seem to argue that Plaintiff's UCL claim based on fraud must fail because no consumers were harmed and Plaintiff has failed to meet the heightened pleading standards for fraud.  (Reply at 6).  These arguments fail.

The UCL prohibits, and provides civil remedies for, unfair competition, which it defines as "any unlawful, unfair or fraudulent business act or practice." (§ 17200.) *Kwikset Corp. v. Superior Ct.*, 51 Cal. 4th 310, 320, 120 Cal. Rptr. 3d 741 (2011).  In order to have standing to bring a claim under the Unfair Competition Law, the plaintiff

---

CIVIL MINUTES—GENERAL                                    19

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| | |
|---|---|
| **Case No.  2:22-cv-02871-MWF (JEMx)** | **Date:  November 29, 2022** |
| Title:      Moement, Inc. v. Groomore, Inc. et al | |

must state two elements: (1) to have suffered "injury in fact" and; (2) to have "lost money or property." *Kwikset Corp. v. Superior Ct.*, 246 P.3d 877, 885 (2011).  "The requirement of economic injury necessary to satisfy standing under the UCL is met with a showing of lost 'sales, revenue, market share, and asset value.'"  *Millennium Dental Techs. Inc. v. Terry*, No. SACV 18-0348-DOC (KESx), 2018 WL 5094965, at *16 (C.D. Cal. July 16, 2018) (citing *Allergan, Inc. v. Athena Cosmetics, Inc.*, 640 F.3d 1377, 1382 (Fed. Cir. 2011) (internal quotations omitted).

Here, the Complaint sufficiently alleges economic injury because it alleges that "Groomore has gained an unfair edge in competition by using Moement's Trade Secrets," which is tantamount to a loss of market share and diminished asset value. *See, e.g.*, *Overstock.com, Inc. v. Gradient Analytics, Inc.*, 151 Cal. App. 4th 688, 716, 61 Cal. Rptr. 3d 29 (2007) (finding UCL standing where plaintiff had plead that defendant's unfair business practices had "result[ed] in diminution in value of [plaintiff's] assets and decline in its market capitalization and other vested interests").

And Defendants' argument that Plaintiff has failed to sufficiently plead a violation of underlying law also falls short.  As discussed above, Plaintiff has adequately pled trade secret misappropriation, copyright infringement, and breach of contract. Defendants do not challenge Plaintiff's UCL claim on the basis that the specific type of alleged violations of law, even if well-pled, do not support a UCL claim, nor do Defendants argue that the UCL claims are preempted.  Therefore, the Court declines to consider those potentially dispositive issues sua sponte.  *Cf. Glair v. City of Los Angeles*, No. CV 13-8946-DDP (AGR), 2018 WL 3956728, at *11 (C.D. Cal. May 24, 2018), *report and recommendation adopted*, No. CV 13-8946-DDP (AGR), 2018 WL 3954000 (C.D. Cal. Aug. 15, 2018) ("[N]one of these issues have been briefed and the court declines to address them sua sponte on a motion to dismiss.").

Third, Defendants' argument against Plaintiff's UCL claim based on fraud fail because they are undeveloped and were raised for the first time on Reply.  *See Strother v. Baldwin*, No. 2:16-CV-00255-TLN (CKD), 2017 WL 6017137, at *7 (E.D. Cal. Dec. 5, 2017), *aff'd*, 774 F. App'x 1016 (9th Cir. 2019) ([T]he Court is not "required to address perfunctory and undeveloped arguments[.]") (citation omitted); *See United States ex rel. Giles v. Sardie*, 191 F. Supp. 2d 1117, 1127 (C.D. Cal. 2000) ("It is

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

**Case No.  2:22-cv-02871-MWF (JEMx)**            **Date:  November 29, 2022**
Title:      Moement, Inc. v. Groomore, Inc. et al

improper for a moving party to introduce new facts or different legal arguments in the reply brief than those presented in the moving papers.").  Nonetheless, the Court notes that Defendants are mistaken in their belief that UCL claims must allege harm against consumers to establish fraud. The California Supreme Court has reiterated that the UCL's purpose "is to protect both consumers *and competitors* by promoting fair competition."  *See Millennium*, 2018 WL 5094965, at *15 (citing *Kwikset*, 51 Cal. 4th at 320) (emphasis added).

Therefore, the Motion as to the UCL claim is **DENIED**.

**V.    CONCLUSION**

Because Defendants have failed to establish that any of the claims (trade secret misappropriation, copyright infringement, breach of contract, and violation of the UCL violation) are insufficiently pled, the Motion is **DENIED** in full.

Defendants shall file an answer by **January 16, 2023**.

IT IS SO ORDERED.