CHRISTOPHER PELHAM (BAR NO. 241068)
ALEX SCANDROLI (BAR NO. 345278)
**NORTON ROSE FULBRIGHT US LLP**
555 South Flower Street
Forty-First Floor
Los Angeles, California 90071
Telephone:  (213) 892-9200
Facsimile:   (213) 892-9494
christopher.pelham@nortonrosefulbright.com
alex.scandroli@nortonrosefulbright.com

Attorneys for Plaintiff
MOEMENT, INC.

IN THE UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MOEMENT, INC., a Delaware corporation,<br><br>    Plaintiff,<br><br>  v.<br><br>GROOMORE, INC., a Delaware corporation, CHUNLIANG LIN, an individual, JIE ZHANG, an individual, and SONGYUN LIU, an individual,<br><br>    Defendants. | Case No. 2:22-cv-02871-WLH (JEMx)<br><br>*[Assigned to the Hon. Wesley L. Hsu; Courtroom 9B]*<br><br>**PLAINTIFF MOEMENT, INC.'S MOTION *IN LIMINE* NO. 5 TO ADMIT SOURCE CODE EVIDENCE SHOWING MISAPPROPRIATION**<br><br>**[5 OF 5]**<br><br>Action Filed: April 29, 2022<br>*In Limine* Deadline: October 25, 2024<br>Final Pretrial Conference: Nov. 22, 2024<br>Trial: December 9, 2024 |

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE THAT** on October 25, 2024, before the Honorable Wesley L. Hsu in Courtroom 9B of the United States District Court for the Central District of California, Western Division, located at 350 W 1st Street, Los Angeles, California 90012, Plaintiff Moement, Inc. ("Moement") will and hereby does move the Court for order[s] *in limine* to admit evidence showing co-defendant Jie Zhang's possession and misappropriation of the trade-secret-in-dispute to the benefit of Defendants Groomore, Inc. ("Groomore") and Chunliang Lin ("Lin")

Pursuant to the Court's Standing Pretrial Order and the Order re: Jury Trial, (Dkt. 35), Moement's counsel met with Defendants' counsel for a pretrial conference of counsel to address, among other things, the evidence the parties intend to introduce at trial. (Declaration of Alex Scandroli ("Scandroli Dec."), ¶ 2.) Thereafter, Moement's counsel disclosed the grounds for its Motions *in Limine* ("MILs") and attempted to reach agreement that would obviate the need for the MILs. (*Id.*) The parties were unable to reach an agreement. (*Id.*)

This motion is based upon this Notice of Motion, the accompanying memorandum of points and authorities, the Declaration of Alex Scandroli, all documents which this Court may consider or take judicial notice of, and all pleadings and papers on file in this action, and any argument that may be presented to the Court at the time of the final pretrial conference.

Dated:     October 25, 2024        CHRISTOPHER PELHAM
**NORTON ROSE FULBRIGHT US LLP**


By: */s/ Christopher Pelham*
    CHRISTOPHER PELHAM
    ALEX SCANDROLI
    Attorneys for Plaintiff
    MOEMENT, INC.

DOCUMENT PREPARED ON RECYCLED PAPER

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. MOTION *IN LIMINE* NO. 5: TO ADMIT SOURCE CODE EVIDENCE SHOWING MISAPPROPRIATION

There is direct evidence of Co-Defendant Jie Zhang ("Zhang")[1] misappropriating the trade-secret-in-dispute, namely, Moement's proprietary source code known as MoeGo v.1, to the benefit of Lin and Groomore. As further explained herein, admission of this evidence is necessary to rebut the false testimony of Lin who has testified and will testify that Zhang had no involvement whatsoever in establishing, launching, or operating Groomore.

Lin's statements, however, are demonstrably false in light of Moement's evidence produced during discovery that proves Zhang did in fact work on projects relating to or referencing Groomore. For example, Moement produced WeChat messages between Moement founder Emma Chen and a former Moement employee discussing a November 2020 dinner she had with Lin and Zhang where the two solicited her to work at their new company.[2] More importantly, though, there is evidence Moement collected which shows Zhang reprogramming MoeGo v.1 to reference Groomore (the "Zhang Evidence").

### A. The Zhang Evidence

By way of background, in spring 2021, Moement conducted an independent investigation into the work laptop used by former Moement software engineer Zhang and discovered he uploaded MoeGo v.1 to his personal Github repository just weeks before resigning from Moement. (Scandroli Dec., ¶ 4; Ex. B, Expert Report of computer forensic analyst Willis McDonald.) Moement was previously unaware of this upload and in no way authorized Zhang to possess MoeGo v.1.

Zhang's upload fueled Moement's on-going suspicion that Groomore, the

---

[1] Zhang failed to appear or defend himself in this action, resulting in the Court entering an order of default. (Dkt. 102.)

[2] (Scandroli Dec., ¶ 3; Ex. A, Certified Translated WeChats.)

competing website and mobile application founded by former Moement employee Lin, was launched using Moement's technologies that Zhang and/or Lin stole upon their resignations. After this discovery, in August of 2021, Moement's lead software engineer, Junbao Yang ("Yang"), contemporaneously recorded his analysis of Groomore's website for evidence of misappropriation. Yang begins by logging into Groomore through its customer portal and noting various similarities to the calendaring system and user interfaces of MoeGo. (*Id.* at p. 7.) Yang then discovers in Groomore's frontend code (publicly accessible) a Google Maps API key licensed to Moement. (*Id.*)

Next, Yang determined a Github configuration file could be downloaded from Groomore's frontend code. (*Id.* at p. 8.) The download provided Yang with a URL token. (*Id.*) Yang then tests that token to login to Zhang's Github repository registered to user "jz099."[3] (*Id.*) Once inside, Yang identified MoeGo v.1 and a commit log that showed Zhang making changes to the source code. (*Id.* at p. 9.) Yang then runs a comparison of MoeGo v.1 with the code changes Zhang was making and identified instances of him reprogramming the code to reference Groomore rather than MoeGo. (*Id.*)

Therefter, Yang repeated these steps before a notary in Shenzhen, China that certified the video recordings accurately showed Yang's steps to access Zhang's Github without altercation. (*Id.* at pp. 7-8.) These notarized recordings of the content described above form the Zhang Evidence. Moement obtained this evidence without the advice of counsel and prior to filing the instant action.

**B.    Production of the Zhang Evidence and Expert Analysis Thereof**

Once Moement's current counsel came onto the case, Moement employees disclosed they possessed the Zhang Evidence. After internal deliberation, Moement

---

[3] The fact that this token, which was accessible from Groomore's frontend code, enabled Yang to login to Zhang's Github registered to "jz099" is itself evidence that Zhang was working on Groomore projects. Notably, "jz099 is the same username Zhang used while working at Moement.

attempted to subpoena Github for the Zhang Evidence but was denied because the Stored Communications Act ("SCA") required the subpoena be in connection with a criminal matter to warrant disclosure, among other reasons. (Scandroli Dec., ¶ 5.)

After further deliberation, Moement's counsel disclosed the Zhang Evidence to Defendants and produced it while fact discovery remained open.[4] Thereafter, Defendants' counsel deposed Moement's founder and Chief Executive Officer Ethan Dong ("Dong") regarding the Zhang Evidence over the course of two days. Moement's software engineering expert, Dr. Craig Rosenberg (Rosenberg), analyzed this Zhang Evidence as part of his timely disclosed expert reports and concluded without qualification the changes being made were to remove references to MoeGo and enable the code base to run Groomore. Moement's computer forensics analyst analyzed the steps Yang took to access Zhang's Github and verified Yang's contemporaneous recordings of his access. Defendants also had occasion to depose both these experts on the Zhang Evidence.

**C.     The Groomore Source Code Produced Cannot Be Authenticated**

Moement's Requests for Production Nos. 1 through 5 call for *all* iterations of Groomore's code. In lieu of producing these iterations, Groomore opted to make its source code available for inspection but when Moement's expert arrived for inspection only one version of the website source code was available. There are several reasons to doubt the version of Groomore's source code made available for expert inspection was as the code existed between October 2020 through December 2020 (*i.e.*, when Groomore first launched).

First, Lin testified that he has no internal methodology for tracking modifications he makes to the code. Yet Lin also testified he made nearly daily updates to Groomore's code since the beta version launched in October 2020. Second, Lin testified that he has no repository for storing Groomore's code and therefore had no commit log that tracked the changes he made. Third, Lin testified

---

[4] (MOEMENT004044-004096, and MOEMENT004434-004672.)

DOCUMENT PREPARED ON RECYCLED PAPER

while he occasionally saved Groomore's code to enable him to determine the date of the code, he has yet to produce any evidence or response that would corroborate the date of the source code despite this being responsive to several discovery requests. Thus, Lin's word alone is all that 'corroborates' the date of the Groomore code.

Given Lin's word is questionable, Moement pursued discovery on the issue of which version of the Groomore source code was actually inspected. On June 25, 2024, Moement asked Defendants' counsel to either (1) supplement their discovery responses pursuant to Fed. R. Civ. P. 26(e) and produce additional versions of Groomore's source code; or (2) provide some reliable documentation to authenticate the date of the Groomore source code that was inspected. (Scandroli Dec., ¶ 6.) While Moement made attempts to confer with Defendants' counsel before the close of fact discovery to obtain this information, this offer was declined and ultimately a motion to compel seemed futile given Lin claims there is no verifiable way of confirming the source code date. (*Id*.)

While Defendants will point to the source code Rosenberg inspected to claim there are no similarities between MoeGo v.1 and Groomore's code, this does not rule out that Zhang's reprogrammed MoeGo v.1 was previously used in Groomore. Rosenberg will testify as to the implausible development time for Groomore's source code to be independently written in the time Lin claims without relying on Zhang's reprogrammed code. Moreover, Lin has admitted to using other Moement technologies when launching and operating Groomore. These facts strongly suggest that Groomore leveraged Zhang's access to MoeGo v.1.

While Lin disclaims having any knowledge of or involvement with Zhang's conduct, it still begs the question: why would Zhang be reprogramming MoeGo v.1 to reference Groomore if he was not working with Lin? Moement could not obtain an answer to this question from Zhang given his default in the action.

**D.   Grounds for Admitting the Zhang Evidence**

There are two competing interests at stake in deciding whether to admit the

DOCUMENT PREPARED ON RECYCLED PAPER

Zhang Evidence: (1) Moement's interest in having the case fairly decided on the merits; and (2) the Court's gatekeeping function to ensure evidence is not admitted that threatens judicial integrity.

As an initial matter, Defendants' interests are not implicated given the Zhang Evidence was (1) contemporaneously notarized to confirm authenticity; (2) disclosed during fact discovery; (3) covered during depositions; and (4) scrutinized by Moement's experts in their reports.  Notwithstanding the lack of prejudice, Defendants' counsel has made clear his intention to challenge the admissibility of the Zhang Evidence for a purported violation of the Computer Fraud and Abuse Act ("CFAA").  18 U.S.C. § 1030 et seq.  Assuming, *arguendo*, the elements of CFAA are present (something Moement does not concede),[5] Defendants have no standing to raise a CFAA violation.  Without cavil, it is the party that owns the computer or system that was unlawfully accessed and who suffered a loss as a result of the access who has standing to bring a CFAA claim.  *NovelPoster v. Javitch Canfield Group*, 140 F. Supp. 3d 954 960-61 (N.D. Cal. 2014); *see also* 18 U.S.C. § 1030(g) (provision establishing loss requirement to sustain a civil CFAA violation).

Here, Zhang is the registered owner of the Github account Yang accessed, and Defendants, both during depositions and in verified discovery responses, disavow having any relationship with Zhang or knowledge of his access to and reprogramming of MoeGo v.1.  Defendants will presumably argue the introduction of the Zhang Evidence at trial confers a form of third-party standing to raise the CFAA violation. On this point, federal courts rarely interpret a harm in the context of litigation as sufficient to confer standing absent an additional showing that the litigation conduct caused an actual loss or constitutional violation to the litigant.  *Nayab v. Capital One Bank (USA), N.A.*, 942 F.3d 480, 489-90 (9th Cir. 2019) (citing *Spokeo Inc. v. Robins*, 578 U.S. 330, 339 (2016)).  This is not applicable here.

---

[5] There are issues of proof given the nature of the access and the extraterritorial component, and the statute of limitations has ran on Yang's access in August 2021.

DOCUMENT PREPARED ON RECYCLED PAPER

All of this is said not to discount the potential CFAA implications of the Zhang Evidence. But what amounts to being self-help steps that Moement took to recover MoeGo v.1 from the person known to have stolen the code does not evince an intent to flout federal law, particularly since Yang is a Chinese citizen with no knowledge of said law. On the other hand, Moement's interest in admitting the Zhang Evidence is manifest: (1) evidence of Zhang's misappropriation of MoeGo v.1 is the essential evidentiary link in this case; (2) the Zhang Evidence has been and can be authenticated at trial; and (3) Moement did not obtain a verifiable version of the Groomore source code and had no means of obtaining the Zhang Evidence through the normal discovery process.

Thus, the sole inquiry is whether the admission of the Zhang Evidence threatens judicial integrity. While there is no *per se* exclusionary rule for improperly obtained evidence in civil cases, federal courts are still vested with inherent equitable authority to exclude improperly obtained evidence.[6] For example, in *Pure Power Boot Camp, Inc. v. Warrior Fitness Boot Camp, LLC*, the employer accessed a former employee's personal emails and this was deemed a violation of the SCA. 587 F. Supp. 2d 548, 552, 563 (S.D.N.Y. 2008). More specifically, the employer used the employee's credentials stored in the work computer to access one of his private email accounts, found credentials to a second account, and accessed a third account by making a "lucky guess." *Id.* at 552. The emails the employer accessed were virtually dispositive on the claims in dispute. *Id.*

On the question of admitting the emails, the court observed its "inherent equitable powers" to exclude unlawfully accessed evidence. *Id.* at 568. But the court

---

[6] Not to be confused with a sanction for discovery misconduct under Fed. R. Civ. P. 26(c), which the Ninth Circuit has effectively foreclosed as being the appropriate remedy for evidence obtained "*ex parte*" from a party. *See US v. Comco Management Corp.*, 2009 WL 4609595, at *2 (C.D. Cal. Dec. 1 2009) (declining to exclude evidence improperly obtained by government outside of normal discovery process based off a violation of Fed. R. Civ. P. 26) (citing *Kirshner v. Uniden Corp. of America*, 842 F.2d 1074, 1080 (9th Cir. 1988)).

also recognized exclusion was in tension with the court's interest to "not permit [the culpable defendant] or others to testify falsely, or open the door to a line of testimony that is contradicted by the e-mails, knowing that the e-mails could not be used to impeach or rebut their testimony." (*Id.* at 569.) Thus, as a prophylactic to the false testimony the defendant was certain to provide, the court ultimately allowed the unlawfully obtained emails to be used for impeachment purposes. (*Id.* at 571.)

On its face, the evidentiary dilemma in *Pure Power* is mostly analogous to the dilemma posed by admission of the Zhang Evidence, though, there are still several distinguishable facts that diminish the harm to judicial process should the Zhang Evidence be admitted. *Pure Power* rooted its exclusion of evidence obtained in violation of the SCA because the employee retained a privacy privilege in the emails the employer accessed, and one of the emails was subject to attorney-client privilege. (*Id.*) Thus, *Pure Power* found the employer violated Fed. R. Civ. P. 26(b)(5) (failure to return privileged information not intentionally produced results in non-admissibility), and that such a violation allowed for a discovery sanction in addition to the equitable grounds for exclusion. By contrast, Groomore cannot claim a privilege over source code Zhang unlawfully stole so there is no discovery sanction. Further, unlike the employer in *Pure Power*, who had no interest whatsoever in the emails accessed, Moement does have an ownership interest in what Yang found in Zhang's Github: MoeGo v.1.

With this in mind, the circumstances surrounding Yang's access to Zhang's Github lacks the culpability the employer in *Pure Power* who obtained privileged emails unlawfully and used it for a litigation advantage without discovery disclosure to the other party. Moement did produce the Zhang Evidence and Defendants were able to conduct discovery regarding it. Moreover, the obstacles Moement faced in obtaining discovery from the defaulted Zhang and Defendants, on balance, weighs in favor of admission. Indeed, Lin's credibility on (1) Zhang's lack of involvement; and (2) the version date of Groomore's code are the lynchpins for the jury finding for

the defense. Moement will be seriously prejudiced should the Zhang Evidence be excluded from trial, and for these reasons respectfully submits the Court should rule in favor of admission.

## II.  CONCLUSION

For the reasons set forth above, the Court should admit the Zhang Evidence showing source code misappropriation because its probative value substantially outweighs the any resulting prejudice under FRE 403. Alternatively, Moement respectfully requests the Court allow the Zhang Evidence to be used for extrinsic impeachment under FRE 613(b) given the nature of the evidence must be shown to Lin to effectively rebut Lin's false impression during trial.

*L.R. 11-6.1 Certification: the undersigned, counsel of record for Plaintiff, hereby certifies that this brief contains 2496 words, excluding captions, signature blocks and this certification, and is therefore under 2,500 word limit set by the Court's Standing Trial Order for motions in limine.*

Dated:     October 25, 2024

CHRISTOPHER PELHAM
**NORTON ROSE FULBRIGHT US LLP**

By: */s/ Christopher Pelham*
   CHRISTOPHER PELHAM
   ALEX SCANDROLI
   Attorneys for Plaintiff
   MOEMENT, INC.