CHRISTOPHER PELHAM (BAR NO. 241068)
ALEX SCANDROLI (BAR NO. 345278)
**NORTON ROSE FULBRIGHT US LLP**
555 South Flower Street
Forty-First Floor
Los Angeles, California  90071
Telephone:  (213) 892-9200
Facsimile:  (213) 892-9494
christopher.pelham@nortonrosefulbright.com
alex.scandroli@nortonrosefulbright.com

Attorneys for Plaintiff
MOEMENT, INC.

IN THE UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MOEMENT, INC., a Delaware corporation,<br><br>          Plaintiff,<br><br>     v.<br><br>GROOMORE, INC., a Delaware corporation, CHUNLIANG LIN, an individual, JIE ZHANG, an individual, and SONGYUN LIU, an individual,<br><br>          Defendant. | Case No. 2:22-cv-02871-WLH (JEMx)<br><br>*[Assigned to the Hon. Wesley L. Hsu; Courtroom 9B]*<br><br>**PLAINTIFF MOEMENT, INC.'S OPPOSITION TO DEFENDANTS' MOTION *IN LIMINE* NO. 1 TO EXCLUDE PLAINTIFF FROM OFFERING EXHIBITS OR TESTIMONY BASED ON FILES AND/OR DATA FROM A COMPUTER HARD DRIVE PLAINTIFF FAILED TO PRODUCE DURING DISCOVERY**<br><br>**<u>Final Pretrial Conference</u>**<br>Date:       November 22, 2024<br>Time:       1:30 p.m.<br>Courtroom: 9B<br><br>Action Filed: April 29, 2022<br>*In Limine* Deadline: October 25, 2024<br>Trial: December 9, 2024 |

Plaintiff Moement, Inc. ("Moement"), by and through its undersigned counsel, hereby submits its opposition to Defendants Groomore, Inc.'s ("Groomore") and Chunliang Lin's ("Lin") (together, "Defendants") Motion *In Limine* No. 1 ("Motion").

## MEMORANDUM OF POINTS AND AUTHORITIES

### I. INTRODUCTION

Since no later than June 20, 2024 (that is, over four months ago), Defendants have known that Moement possesses, and intends to use evidence gathered from, forensic imaging of a hard drive from a company laptop previously used by defaulting co-defendant Jie Zhang (the Zhang Drive).[1] In their Motion, Defendants do not contest that Moement identified the Zhang Drive in discovery responses before the close of fact discovery. Nor do Defendants explain any specific prejudice resulting from not inspecting the Zhang Drive—which Defendants never requested, or sought to inspect—prior to the close of fact or expert discovery.

Nevertheless, Defendants argue since Moement did not produce the physical data from the Zhang Drive, all evidence and expert testimony therefrom should be excluded from trial as a sanction for purported violations of Federal Rules of Civil Procedure ("FRCP") 26(a)(1)(A)(ii) (initial disclosure requirements), 26(e)(1)(A) (discovery supplementation requirements), and 26(a)(2)(B)(ii) (expert disclosure requirements). No such violations occurred.

First, as to initial disclosure requirements, Defendants gloss over the disjunctive language of FRCP 26(a)(1)(A)(ii) which plainly states Moement could provide either "a copy *or* a description by category" of the evidence it intends to rely on at trial. Moement satisfied this standard by supplementing its initial disclosures to describe the Zhang Drive as a category of evidence it intended to rely

---

[1] (Declaration of Christopher Pelham ("Pelham Dec."), ¶ 2; Exh. A, supplemental interrogatory responses first disclosing the Zhang Drive in June 2024.)

upon as proof of misappropriation.[2]

Second, with respect to discovery supplementation, Defendants incorrectly argue the voluminous data found in the Zhang Drive was responsive to written discovery requests first propounded nearly a year before expert discovery commenced. Defendants have cited no authority that FRCP 26(e)(1)(A) required Moement to produce all data from the Zhang Drive given such data required expert analysis to cull through and analyze for relevance.

Third, with respect to the expert disclosures, Moement's timely produced expert report of Willis McDonald discloses the relevant data from the Zhang Drive that will be relied upon at trial.

With this in mind, Defendants are not entitled to a discovery sanction because there is no discovery violation in the first instance. But even if Defendants' hyper-technical interpretation of the relevant FRCP provisions were correct (they are not), Moement's alleged non-compliance does not warrant the extreme remedy of excluding all evidence derived from the Zhang Drive as Defendants request.

What Defendants do not tell the Court is that Defendants' counsel deposed McDonald regarding the Zhang Drive and all data from his report that supports his opinions,[3] and had ample opportunity to request the Zhang Drive for its own expert inspection yet never sought to designate a rebuttal expert while expert discovery remained open. Thus, Defendants have not, and cannot, establish the requisite prejudice that would mandate exclusion. Respectfully, the Court should deny the Motion in full.

## II. DISCLOSURES OF THE ZHANG DRIVE DURING DISCOVERY

Moement has evidence, and intends to present and argue at trial, that

---

[2] (Pelham Dec., ¶ 3; Exh. B, supplemental initial disclosures.)

[3] (Pelham Dec., ¶ 4; Exh. C, McDonald transcript.)

DOCUMENT PREPARED ON RECYCLED PAPER

defaulting co-defendant Jie Zhang ("Zhang") helped Defendants misappropriate the Moego v.1 backend source code, defined in the Complaint as the Moement Trade Secrets ("MoeGo v.1"),[4] for use in Groomore's competing website platform and mobile application. Zhang, who had primary responsibility for developing MoeGo v.1, resigned from Moement in June 2020 just a month before co-defendant Lin did. (Compl., ¶¶ 6-7.) Before Zhang left, however, he "secretly downloaded from Moement's secure internal network a full copy of [MoeGo v.1]." (Compl., ¶ 42.)

During discovery,[5] Moement disclosed to Defendants it possesses the laptop Zhang used and intends to use evidence therefrom to connect Zhang to Defendants. What follows are the instances where Moement disclosed the Zhang Drive.

### A. Moement Supplemented Discovery Responses During Fact Discovery to Disclose the Zhang Drive

On June 19, 2024, Moement supplemented its responses to four of Groomore's interrogatories, first propounded on October 5, 2023, including interrogatory No. 11 which asked Moement to "describe all the occasions, including dates and the computer systems and files affected, when PERSONS YOU contend were working for GROOMORE accessed, crawled, and downloaded copyrighted materials from YOUR server in 2021." (Pelham Dec., ¶ 2; Exh. A.) In that supplemental response, Moement made clear (1) it possesses the laptop that Zhang used; and (2) intends to use evidence from said laptop to show that Zhang accessed MoeGo v.1 without authorization. (*Id.*)

Thereafter, on July 15, 2024, Moement supplemented its initial disclosures to add, as a category of tangible things in Moement's possession: "all data and other material that may be recovered *from one of the laptops that Zhang used while*

---

[4] Defined as "148 files consisting of 93,058 lines of confidential and proprietary computer scripts that took Moement at least 25,000 engineering hours to create and build." (Compl. ¶ 6.)

[5] For reference, fact discovery closed on July 17, 2024, (Dkt. 96), and expert discovery closed on August 30, 2024. (Dkt. 112.)

*working at Moement (in Moement's possession)*." (Pelham Decl. ¶ 3; Exh. B) (emphasis added.)

### B. Moement Identified the Relevant Data from the Zhang Drive During Expert Discovery

On July 31, 2024, Moement designated Willis C. McDonald, a forensic analyst of Nisos Holdings, Inc., to testify, among other topics, regarding the Zhang Drive. (Pelham Decl. ¶ 5; Exh. D, the Nisos Report.) In the Nisos Report, McDonald describes the chain of custody in receiving Zhang's laptop, and the forensic imaging taken from a solid state of the Zhang Drive. (*Id.*)

In addition, McDonald opines on several instances where the "the forensic imag[ing] showed client-proprietary data was stored [in third-party repositories]" used by Zhang. (*Id.* at pp. 3-4.) Specifically, "Nisos investigators, utilizing the files on [the forensic images,] uncovered Zhang's extensive use of [China-based third-party repositories] Gitee and Alibaba Cloud to store and share client-proprietary data with external entities." (*Id.* at p. 4.) Appendix E of the Nisos Report includes a detailed compendium listing the relevant data found on the Zhang Drive that demonstrates Zhang's unauthorized use of personal repositories to store MoeGo v.1. (*Id.* at pp. 21-46.)

### C. During Discovery, Defendants Did Not Raise any Discovery Deficiency or Demand Inspection of the Zhang Drive

Notwithstanding Defendants' awareness of the Zhang Drive, not once did Defendants' counsel raise the need to produce or inspect the physical data from the Zhang Drive. (Pelham Dec., ¶ 6.) Further, Defendants filed no discovery motion to extend discovery to designate a rebuttal expert to analyze the Zhang Drive, though, the parties stipulated to extend expert discovery for other reasons. (Dkt. 111.) In fact, the first and only time that Defendants have raised any issue regarding the Zhang Drive is in connection with this Motion.

Presumably, Defendants did not need the physical ESI on the Zhang Drive given they had the opportunity to depose two of Moement's witnesses regarding the authenticity of the evidence found on that drive and what that evidence showed. In particular, Defendants deposed Moement's CEO and 30(b)(6) witness, Ethan Dong, across two days, and later deposed McDonald concerning the data on the Zhang Drive. (Pelham Dec., ¶ 7.)

As to McDonald, in his August 28, 2024 deposition, he testified the Nisos Report "refer[red] to all of the evidence that [he] considered" as part of his forensic analysis of the laptop Zhang used. (Pelham Dec. ¶ 4; Exh. C at pp. 13-14.) Further, McDonald confirmed that Appendix E of the Nisos Report contained "all the logs that were in the [Zhang Drive]" that reference his use of third-party repositories. (*Id.* at pp. 39-40.) Defendants' counsel then extensively examined McDonald concerning the data in Appendix E and how it informed his expert conclusions.[6]

### III. DEFENDANTS HAVE NOT ESTABLISHED A DISCOVERY VIOLATION TO WARRANT EXCLUSION OR LESSER REMEDIES

#### A. Moement Complied With Initial Disclosure Requirements By Identifying the Zhang Drive as a Category of Evidence

Moement complied with the spirit and substance of FRCP 26(a)(1)(A)(ii) by describing the Zhang Drive as a category of evidence, disclosing Moement possesses the drive, and disclosing Moement intends to rely on the drive at trial. To manufacture a purported violation, Defendants misleadingly cite only <u>part</u> of the text of FRCP 26(a)(1)(A)(ii), which requires parties provide "a copy – *or a description by category and location*[.]" (*See* Defendants' Motion, p. 4:25.) Thus, "[a] party is not required by Rule 26(a)(1)(ii) to produce copies of the documents

---

[6] McDonald was specifically asked whether he "analyz[ed] the files that are listed in Appendix E to determine which ones were representing information going from the hard drive system to [third-party repositories]" Zhang was using. (*Id.* at pp. 62-63.)

identified in its initial disclosures." *Bonanza Beverage Co. v. MillersCoors, LLC*, 2019 WL 13210041, at *3 (D. Nev. 2019) (quoting FRCP Advisory Committee Notes to the 1993 amendments for FRCP 26).

Here, Defendants do not argue, as they cannot, that Moement's supplemental initial disclosure failed to "descr[ibe] by category and location" the Zhang Drive as a source of evidence. There is no violation of FRCP 26(a)(1)(A)(ii) to sanction.

### B. MOEMENT OWED NO DUTY TO SUPPLEMENT ITS PRODUCTION GIVEN THE DATA FROM THE ZHANG DRIVE WAS ADDUCED THROUGH EXPERT DISCOVERY

Defendants have cited no authority to support the proposition that the onus was on Moement to have offered the Zhang Drive for inspection during discovery despite Defendants' counsel never making such a request. Instead, Defendants claim the Zhang Drive is responsive to several broadly framed contention requests asking for "any and all documents" such that Moement owed a duty under FRCP 26(e) to supplement its production with the physical data from the drive.

Once again, Defendants ignore the language of the relevant procedural rule. Because Defendants' purported FRCP 26(e) violation stems from not supplementing a prior request for production, FRCP 26(e)(1)(A) provides the test for whether supplementation was required. That subdivision triggers an affirmative duty to supplement once "the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional corrective information has not otherwise been made known to the other parties during the discovery process or in writing." *See, e.g., Laboratory Skin Care, Inc. v. Limited Brands, Inc.*, 661 F. Supp. 2d 473, 476–477 (D. Del. 2009) (explaining the inquiry for purposes of supplementation compliance is "whether a party has provided adequate notice of its legal contentions and corresponding evidentiary bases); *1st Circuit Neural Magic, Inc. v. Meta Platforms, Inc.*, 659 F. Supp. 3d 138, 161 (D.

Mass. 2023) (explaining supplementation is required only if additional corrective information has not otherwise been made known through other disclosures). Neither of the prongs of FRCP 26(e)(1)(A) are present here.

As to the first prong (Moement's knowledge regarding the completeness of its prior production), it was only through McDonald's expert analysis that Moement identified the exact data points from the Zhang Drive which supports liability for Defendants or Zhang.  As to the second prong, Defendants have not, and cannot, credibly claim that Moement did not provide "additional corrective information" by "making known" the relevant data from the Zhang Drive.  The Nisos Report fully discloses the relevant forensic imaging and exact activity on the Zhang Drive that is evidence of Defendants' misconduct.  Further, the data points cited in Appendix E describe the precise file pathways, dates, and computer commands on the Zhang Drive that McDonald relies upon in forming his opinions.[7]

Indeed, the practical implications of producing the Zhang Drive to satisfy a prior request for production demonstrates why Moement owed no duty to supplement.  To comply with Defendants' theory of supplementation would require production of the of the entire Zhang Drive, which necessarily contains Moement's trade secret, other confidential information, and a host of unknown materials not germane to the dispute.  *See* 71 Am. Jur. Trials § 111 (2024) (explaining these problems arise when producing physical computer technology without expert analysis); *see also Covad Communications Co. v. Revonet, Inc.*, 267 F.R.D. 14 (D.D.C. 2010) (finding production of ESI in native format with metadata, at late stage of litigation, was unnecessary given information had already been disclosed in hard copy).

At bottom, Defendants have the hard copy format of the relevant data from the Zhang Drive vis-à-vis the Nisos Report.  Said differently, even if a duty to

---

[7]

supplement production arose (it did not), the duty was satisfied by the corrective disclosure of the Nisos Report.  There is no violation of FRCP26(e).

### C. MOEMENT COMPLIED WITH EXPERT DISCLOSURE REQUIREMENTS BY IDENTIFYING THE RELEVANT DATA FROM THE ZHANG DRIVE

For the same reasons explained *supra*, § III.C, Moement complied with its expert disclosure requirements under FRCP 26(a)(2)(B)(ii), which requires only "the facts or data considered by the [expert] witness in forming [the expert opinions]."  While Defendants conflate the disclosure requirements of FRCP 26(a)(2)(B)(ii) with a production requirement, this is not what the rule requires.   To reiterate, the Nisos Report lists all "the facts or data" McDonald relied upon in forming his expert opinions regarding the evidence found on the Zhang Drive. (Pelham Dec., ¶ 4; Exh. C.)  There is no violation of the expert disclosure requirements.

### D. DEFENDANTS ARE NOT ENTITLED TO EVIDENTIARY SANCTIONS

Defendants have failed to establish a discovery violation on any of the grounds cited in their Motion.  But even assuming a violation occurred (it did not), Defendants are still not entitled to FRCP 37 sanction.  It is well-established that FRCP 37(c) exclusion is not appropriate where, as here, the discovery violation was harmless. *Hoffman v. Construction Protective Services, Inc*., 541 F. 3d 1175, 1179 (9th Cir. 2008) ("Rule 37(c)(1) provides that a party failing to provide information required by Rule 26(a) or (e) is not allowed to use that information . . . at trial, unless the failure was substantially justified or is harmless.").

Here, the harmlessness is manifest given Defendants (1) had sufficient notice of the Zhang Drive; and (2) fully examined Moement's witnesses concerning the Zhang Drive during depositions.  If Defendants needed to inspect the Zhang Drive

using their own expert, they could have requested to do so as early as June 19, 2024 (when the Zhang Drive was first disclosed) and as late as August 31, 2024 (when expert discovery closed). Defendants declined to do so, and cannot now feign they need to verify the authenticity of the ESI data when they did not pursue this issue during discovery. There is no prejudice to mandate exclusion.

      **E.    DEFENDANTS ARE NOT ENTITLED TO REOPENING EXPERT DISCOVERY WEEKS BEFORE TRIAL**

In the alternative to exclusion, Defendants request the Court order Moement to produce the physical ESI from the Zhang Drive (even though that data is already compiled in the Nisos Report) and "allow Defendants sufficient opportunity to take follow up discovery" and "to notice an expert witness without any restrictions." (Motion, p. 2:10-15.)

Defendants' alternative request is tantamount to a motion to reopen expert discovery, but without offering a scintilla of good cause to warrant such an extreme remedy within five weeks from trial. Such a request will implode the trial date and all related trial briefings, many of which are already filed based on a closed record. Respectfully, this extremely prejudicial request should be rejected out of hand.

## IV. CONCLUSION

For the reasons set forth above, Moement respectfully requests the Court deny the Motion to exclude the Zhang Drive, and also deny the alternative request to reopen expert discovery.

*L.R. 11-6.1 Certification: the undersigned, counsel of record for Plaintiff, hereby certifies that this brief contains 2,457 words, excluding captions, signature blocks and this certification, and is therefore under 2,500 word limit set by the Court's Standing Trial Order for motions in limine.*

Dated: November 1, 2024

CHRISTOPHER PELHAM
**NORTON ROSE FULBRIGHT US LLP**

By: /s/ Christopher Pelham
 CHRISTOPHER PELHAM
 ALEX SCANDROLI
 Attorneys for Plaintiff
 MOEMENT, INC.