1 | CHRISTOPHER PELHAM (BAR NO. 241068)
ALEX SCANDROLI (BAR NO. 345278)
2 | **NORTON ROSE FULBRIGHT US LLP**
555 South Flower Street
3 | Forty-First Floor
Los Angeles, California  90071
4 | Telephone:   (213) 892-9200
Facsimile:    (213) 892-9494
5 | christopher.pelham@nortonrosefulbright.com
alex.scandroli@nortonrosefulbright.com
6 |
7 | Attorneys for Plaintiff
MOEMENT, INC.

8 | IN THE UNITED STATES DISTRICT COURT

9 | FOR THE CENTRAL DISTRICT OF CALIFORNIA

10 |

| | |
|---|---|
| 11 MOEMENT, INC., a Delaware corporation, | Case No. 2:22-cv-02871-WLH (JEMx) |
| 12 | *[Assigned to the Hon. Wesley L. Hsu; Courtroom 9B]* |
| 13 Plaintiff, v. | **DECLARATION OF ALEX SCANDROLI IN SUPPORT OF PLAINTIFF MOEMENT, INC.'S OPPOSITION TO DEFENDANTS' MOTION *IN LIMINE* NO. 2** |
| 14 GROOMORE, INC., a Delaware corporation, CHUNLIANG LIN, an individual, JIE ZHANG, an individual, and SONGYUN LIU, an individual, | |
| 15 | |
| 16 | |
| 17 Defendant. | Action Filed: April 29, 2022 |
| 18 | In Limine Deadline: October 25, 2024 |
| 19 | Final Pretrial Conference: Nov. 22, 2024 Trial: December 9, 2024 |

20 |
21 |
22 |
23 |
24 |
25 |
26 |
27 |
28 |

DOCUMENT PREPARED ON RECYCLED PAPER

DECLARATION OF ALEX SCANDROLI IN SUPPORT OF PLAINTIFF'S OPPOSITION

## **DECLARATION OF ALEX SCANDROLI**

I, Alex Scandroli, declare:

1.      I am an attorney admitted to practice in the State of California and before this Court, and I am an associate at the law firm of Norton Rose Fulbright US LLP, counsel of record for Plaintiff Moement, Inc. ("Plaintiff").  I make this declaration in support of

2.      Attached hereto as **Exhibit A** is a true and correct copy of select excerpts from the deposition of Moement's Chief Executive Officer Ethan Dong.

3.      Attached hereto as **Exhibit B** is a true and correct copy of select excerpts from the deposition of Defendants' 30(b)(6) deponent, Chunliang Lin.

4.      Attached hereto as **Exhibit C** is a true and correct copy of select excerpts from the deposition of Defendant Chunliang Lin.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed this 1st day of November 2024, at Los Angeles, California.


                                        */s/ Alex Scandroli*
                                        Alex Scandroli

Exhibit A

# In the Matter Of:

MOEMENT INC. vs GROOMORE, INC.,

2:22-cv-02871-WLH-KS

---

## YI  DONG

July 23, 2024

---



IN THE UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

MOEMENT, INC., a Delaware )
corporation, )
)
            Plaintiffs, )
)
   vs. )  Case No.
)  2:22-cv-02871-WLH-KS
GROOMORE, INC., a Delaware )
corporation, CHUNLIANG LIN, )
an individual, JIE ZHANG, )
an individual, and )
SONGYUN LIU, an individual, )
)
            Defendants. )
_____)

**CERTIFIED COPY**

VIDEOCONFERENCE DEPOSITION OF

PERSON MOST KNOWLELDGEABLE FROM MOEMENT, INC.

YI DONG

TUESDAY, JULY 23, 2024

Reported by:

Michele Watson
CSR No. 8359

JOB NO. 210599

```
 1                  IN THE UNITED STATES DISTRICT COURT

 2              FOR THE CENTRAL DISTRICT OF CALIFORNIA

 3

 4   MOEMENT, INC., a Delaware      )
     corporation,                   )
 5                                  )
                 Plaintiffs,        )
 6                                  )
        vs.                         )   Case No.
 7                                  )   2:22-cv-02871-WLH-KS
     GROOMORE, INC., a Delaware     )
 8   corporation, CHUNLIANG LIN,    )
     an individual, JIE ZHANG,      )
 9   an individual, and            )
     SONGYUN LIU, an individual,    )
10                                  )
                 Defendants.        )
11   _____)

12

13

14

15

16

17        DEPOSITION OF YI DONG taken on behalf of the

18   Defendants, via Zoom, commencing on Thursday,

19   July 23, 2024, reported by Michele Watson,

20   CSR No. 8359, a Certified shorthand Reporter in

21   and for the State of California.

22

23

24

25
```

Coalition Court Reporters | 213.471.2966 | www.ccrola.com

MOEMENT INC. vs GROOMORE, INC.,                                                    YI  DONG
2:22-cv-02871-WLH-KS,  07/23/2024          CERTIFIED COPY                          Page 3

```
 1    APPEARANCES (VIA REMOTE)

 2   For Plaintiff:

 3           NORTON, ROSE & FULBRIGHT
             BY:  ALEX SCANDROLI, ESQ.
 4           555 South Flower Street, 41st Floor
             Los Angeles, California  90071
 5           (213) 892-9200
             alex.scandroli@nortonrosefulbright.com
 6

 7   For the Defendants:

 8           LESOWITZ GEBELIN, LLP
             BY:  STEVEN T. GEBELIN, ESQ.
 9           8383 Wilshire Boulevard, Suite 800
             Beverly Hills, California 90211
10           (310) 341-3072
             steven@lawbylg.com
11

12   Also Present:  Kim Benedict, Videographer
                    Chunliang Lin
13

14

15

16

17

18

19

20

21

22

23

24

25
```

1     A.    Based on the log what?

2     Q.    How did they know deletions were being made

3   at that time?

4     A.    It's very clear.  Everything related to Moego

5   has been transformed because there were a lot of Moego

6   words in their code base and a lot of lines were

7   deleted.  I think it might be migrated.

8     Q.    I'm sorry, what was that word?

9     A.    A lot of lines -- code lines were deleted.

10    Q.    And then you said it might be --

11    A.    I think that's a stop.

12    Q.    Okay.  All right.  So how was Peng Cheng Cai

13  able to identify the contents of the GitHub repository

14  as being a copy of Moement's Moego v.1 backend source

15  code?

16    A.    So when we did an authorization, we had a

17  conversion.

18    Q.    So all the evidence -- sorry.

19    A.    When Zhang left the company, he was the only

20  backend developer and so he was basically taking over

21  where Zhang left.  And then when we discovered this

22  case when we did the notarization and Jun Bao and Peng

23  Cheng Cai worked together to do the comparison of our

24  base source code and the Groomore source code.

25    Q.    So at the time Peng Cheng Cai accessed this

 1    personal GitHub repository that didn't belong to him

 2    or to Moement, how did Peng Cheng Cai know that all

 3    the code in that repository was the same as Moego

 4    v.1's backend code?

 5        A.    Because we did a comparison in our

 6    organization.  It's almost the same.

 7        Q.    And who did that comparison?

 8        A.    I was not in the event, so I don't know who

 9    exactly does that.

10        Q.    All right.  Who, on behalf of Moement,

11    participated in that identification?

12        A.    I think Jun Bao Yang and Peng Cheng Cai.

13        Q.    And during that identification they provided

14    a copy of the Moego backend source code?

15        A.    Yes.

16        Q.    For comparison purpose?

17        A.    Yeah.

18        Q.    And they also provided access to the code in

19    the GitHub repository?

20        A.    No.  We don't provide the access to them.  We

21    just show we access the code, I guess, and then show

22    that to the notary officials.  They got to be in

23    person to really verify whatever we presented.

24        Q.    Prior to his leaving the company, did

25    Defendant Zhang ever make copies of either the

1   entirety or portions of the Moego backend source code

2   to his personal GitHub repository as part of his work

3   for Moement?

4       A.   I think there might be some evidence.  We saw

5   some evidence he uploaded part of the code to Gitee

6   account.  I think last time I mentioned.  And

7   throughout discovery we know something more from their

8   hardware, the activities Zhang has done.  But up to

9   today I have no full context about what the discovery

10  outcome was.  There might be more than that.  So

11  activities Zhang uploaded to outside third party

12  library or use his own hardware.

13      Q.   Okay.  Did Moement create a full history of

14  all of the uploads and downloads that Mr. Zhang made

15  to Moement's GitHub repository?

16      A.   Yeah.  I think we'll show this through expert

17  discovery.  They're still ongoing, yeah.

18      Q.   So that doesn't quite answer the question.

19           So Moement did create some sort of record of

20  all of Mr. Zhang's activity on Moement's GitHub

21  repository?

22      A.   Both Moement's GitHub repository and also

23  company's computer.

24      Q.   And the company's computer?

25      A.   Yes.

1

2                        CERTIFICATE

3          I, the undersigned, a Certified Shorthand

4    Reporter of the State of California, do hereby

5    certify:

6          That the foregoing proceedings were taken

7    before me at the time and place herein set forth; that

8    any witnesses in the foregoing proceedings, prior to

9    testifying, were placed under oath; that a verbatim

10   record of the proceedings was made by me using machine

11   shorthand which was thereafter transcribed under my

12   direction; further, that the foregoing is an accurate

13   transcription thereof.

14        I further certify that I am neither

15   financially interested in the action nor a relative or

16   employee of any attorney of any of the parties.

17        IN WITNESS WHEREO WHEREOF, I have this 12th day of

18   August 2024 subscribed my name

19

20

21   _____

22   MICHELE WATSON, CSR
     CSR No. 8359

23

24

25

Exhibit B

1              UNITED STATES DISTRICT COURT

2          FOR THE CENTRAL DISTRICT OF CALIFORNIA

3

4    MOEMENT, INC., A DELAWARE      ) CASE NO.:

5    CORPORATION,                   ) 2:22-CV-02871-WLH JEMX

6            PLAINTIFF,             )

     v.                             )

7    GROOMORE, INC., A DELAWARE     )

8    CORPORATION; CHUNLIANG LIN,    )

9    AN INDIVIDUAL; JIE ZHANG,      )

10   AN INDIVIDUAL; AND SONGYUN LIU, )

11   AN INDIVIDUAL,                 )

12           DEFENDANTS.            )

     _____)

13

14

15       VIDEOTAPED 30(B)(6) DEPOSITION OF CHUNLIANG LIN

16               TUESDAY, JULY 9, 2024

17                   HONG KONG

18                   VOLUME I

19

20

21   REPORTED BY

22   MARK McCLURE, CRR, CAL CSR 12203

23   JOB 6788268

24

25   PAGES 1 - 110

                                              Page 1

```
 1    VIDEOTAPED 30(B)(6) DEPOSITION OF CHUNLIANG LIN,
 2    8:01 A.M., TUESDAY, JULY 9, 2024, NORTON ROSE FULBRIGHT
 3    LLP, 38/F JARDINE HOUSE, 1 CONNAUGHT PLACE, CENTRAL,
 4    HONG KONG, VIA VERITEXT REMOTE TECHNOLOGY, BEFORE MARK
 5    McCLURE, C.S.R. #12203, CERTIFIED SHORTHAND REPORTER IN
 6    AND FOR THE STATE OF CALIFORNIA.
 7
 8    APPEARANCES OF COUNSEL:
 9
      FOR THE PLAINTIFF, MOEMENT, INC., A DELAWARE
10    CORPORATION:
                (APPEARING BY VIDEOCONFERENCE)
11              NORTON ROSE FULBRIGHT US LLP
                BY:  CHRISTOPHER PELHAM, ESQ.
12              555 SOUTH FLOWER STREET, 41ST FLOOR
                LOS ANGELES, CALIFORNIA 90071-2452
13              213.892.9221
                CHRISTOPHER.PELHAM@NORTONROSEFULBRIGHT.COM
14
      FOR THE DEFENDANT, GROOMORE, INC., A DELAWARE
15    CORPORATION:
16              (APPEARING BY VIDEOCONFERENCE)
                LESOWITZ GEBELIN LLP
17              BY:  STEVEN GEBELIN, ESQ.
                8383 WILSHIRE BOULEVARD, SUITE 800
18              BEVERLY HILLS, CALIFORNIA 90211-2440
                310.341.3072
19              STEVEN@LAWBYLG.COM
20
21    ALSO PRESENT:
                (APPEARING BY VIDEOCONFERENCE)
22              YI YI (EVA) JOHNSON, MANDARIN INTERPRETER,
23              THE INTERPRETER
                (APPEARING BY VIDEOCONFERENCE)
24              JOEY METZ, THE VIDEOGRAPHER
                (APPEARING BY VIDEOCONFERENCE)
25              ZACH SPARKS, THE CONCIERGE
```

Page  2

```
 1              MR. PELHAM:  Okay.                        08:16:20

 2    BY MR. PELHAM:

 3        Q.   So, Mr. Lin, I'm going to switch to the   08:16:39

 4    deposition for yourself personally.  What I'll do is  08:16:42

 5    I'll take this exhibit down, but we'll still keep it  08:16:45

 6    marked as Exhibit 1, and we're going to switch over to  08:16:48

 7    your personal capacity deposition.                 08:16:52

 8              MR. GEBELIN:  Chris, just to pop in.  I think  08:17:00

 9    you marked that as Exhibit 2.  You called that 2.  08:17:15

10              MR. PELHAM:  Sorry, I meant 1.  I'll do them  08:17:20

11    in numerical order.                                08:17:22

12              So, Mark, let's mark that one as Exhibit 1,  08:17:24

13    and 1 for the record.                              08:17:26

14    BY MR. PELHAM:

15        Q.   Mr. Lin, in preparation for your personal  08:17:43

16    deposition today, have you had any discussions with  08:17:46

17    anyone apart from your attorneys in this case?     08:17:49

18        A.   No.                                       08:18:07

19        Q.   Did you review any documents in preparation  08:18:08

20    for today's deposition, again, in your personal    08:18:13

21    capacity.                                          08:18:18

22        A.   Yes.                                       08:18:37

23        Q.   Okay.  Without telling me any of your     08:18:37

24    discussions with your attorney, can you please tell us  08:18:39

25    what documents you reviewed in preparation for today's  08:18:41
```

Page 12

```
 1   deposition?                                              08:18:43

 2       A.   I took a look at some of the points in time     08:19:10

 3   when I registered for my company GrooMore.               08:19:15

 4       Q.   Okay.  Anything else other than documents       08:19:19

 5   relating to the registration of GrooMore?                08:19:22

 6       A.   Other documents?                                08:19:24

 7            No other documents.                             08:19:40

 8       Q.   I can't remember if I asked this.               08:19:50

 9            Did you speak to anyone other than counsel in   08:19:53

10   preparation for today's deposition?                      08:19:56

11            MR. GEBELIN:  Objection.  Asked and answered.   08:19:57

12            THE WITNESS:  I remember that was the first     08:20:29

13   question you asked me.                                   08:20:31

14   BY MR. PELHAM:

15       Q.   I'm sorry, was the answer "no"?  Was the        08:20:35

16   answer "no" to that question?                            08:20:38

17            MR. GEBELIN:  Objection.  Asked and answered.   08:20:40

18            Go ahead.                                       08:20:43

19            THE WITNESS:  So I would need to answer this    08:21:07

20   question, is that right?                                 08:21:09

21   BY MR. PELHAM:                                           08:21:10

22       Q.   Yes, unless your attorney tells you not to.     08:21:10

23            MR. GEBELIN:  You can go ahead and give the     08:21:19

24   same answer again.                                       08:21:21

25            THE WITNESS:  Just now, I answered yes, not     08:21:28
```

Veritext Legal Solutions
Calendar-CA@veritext.com 866-299-5127

| | | |
|---|---|---|
| 1 | or function modules. | 08:38:02 |
| 2 | Q.   I was asking more broadly, Mr. Lin. | 08:38:05 |
| 3 | When you said you worked on back-end | 08:38:08 |
| 4 | development, for those of us without a lot of software | 08:38:09 |
| 5 | background, what does that mean when you say that? | 08:38:14 |
| 6 | A.   I also wrote some software that run on the | 08:38:16 |
| 7 | servers. | 08:38:46 |
| 8 | Q.   Was this the first time that you had worked on | 08:38:54 |
| 9 | back-end development for software?  Was the first time | 08:38:57 |
| 10 | with Le TV? | 08:39:02 |
| 11 | A.   No.  I have written some other smaller | 08:39:04 |
| 12 | projects for friends at some other time. | 08:39:32 |
| 13 | Q.   Okay.  At this time, when you were working | 08:39:41 |
| 14 | with Le TV, what programming language were you -- or did | 08:39:45 |
| 15 | you have experience in writing back-end -- | 08:39:51 |
| 16 | THE INTERPRETER:  Christopher, your voice is | 08:39:59 |
| 17 | experiencing -- "writing back-end" and what? | 08:40:01 |
| 18 | MR. PELHAM:  Sorry, I'll repeat. | 08:40:03 |
| 19 | My question was:  At this time, when you were | 08:40:05 |
| 20 | working with Le TV, what programming language were you | 08:40:08 |
| 21 | most comfortable with in back-end software development? | 08:40:12 |
| 22 | MR. GEBELIN:  Objection.  Vague. | 08:40:35 |
| 23 | THE WITNESS:  So the language I used is called | 08:41:00 |
| 24 | Golang, G-o-l-a-n-g.  The "lang" is the short for | 08:41:02 |
| 25 | language. | 08:41:10 |

Page 20

```
 1   BY MR. PELHAM:

 2       Q.   Okay.  So, Mr. Lin, how long did you work at     08:41:12

 3   Le TV?                                                    08:41:15

 4       A.   About a year and a half.                         08:41:16

 5       Q.   Do you remember when you left?                   08:41:28

 6       A.   It should be in 2017, but I don't remember       08:41:31

 7   exactly which month.                                      08:41:47

 8       Q.   And where did you work after you left Le TV?     08:41:50

 9       A.   After I left, I went to Moement.                 08:41:56

10       Q.   And did you start at Moement in 2017?            08:42:09

11       A.   That's right.                                    08:42:13

12       Q.   And were you recruited to Moement from          08:42:20

13   somebody at the company?                                 08:42:26

14            MR. GEBELIN:  Objection.  Vague.                 08:42:35

15            THE WITNESS:  Yes.                               08:42:42

16   BY MR. PELHAM:

17       Q.   Do you remember who at Moement recruited you?   08:42:43

18       A.   Songyun Liu.                                     08:42:47

19            THE INTERPRETER:  The interpreter will spell

20   the name.  The first name, S-o-n-g-y-u-n.  Last name,

21   L-i-u.

22   BY MR. PELHAM:                                            08:43:11

23       Q.   When you went to work for Moement, Mr. Lin,     08:43:11

24   what was your title?                                      08:43:14

25       A.   Android senior R&D engineer.                    08:43:15
```

Page 21

| | | |
|---|---|---|
| 1 | Q.    And when you went to work for Moement, were | 08:43:35 |
| 2 | you working in Shenzhen? | 08:43:38 |
| 3 | A.    Yes. | 08:43:45 |
| 4 | Q.    Is this where Moement's office was located? | 08:43:48 |
| 5 | A.    Yes. | 08:43:52 |
| 6 | Q.    About how many people worked at Moement when | 08:43:58 |
| 7 | you first started there? | 08:44:01 |
| 8 | A.    Three people. | 08:44:11 |
| 9 | Q.    Besides the person you mentioned earlier, | 08:44:12 |
| 10 | Mr. Liu, who else was there?  Besides you and Mr. Liu, | 08:44:16 |
| 11 | who else worked there? | 08:44:21 |
| 12 | A.    There is another iOS development engineer. | 08:44:29 |
| 13 | I will have to give you the name, right? | 08:44:46 |
| 14 | His name is Mingmao Chen. | 08:44:48 |
| 15 | THE INTERPRETER:  The interpreter will spell | 08:44:... |
| 16 | it.  First name, M-i-n-g-m-a-o.  Last name, C-h-e-n. | |
| 17 | BY MR. PELHAM: | 08:45:04 |
| 18 | Q.    Was there an individual at Moement by the name | 08:45:04 |
| 19 | of Ethan Dong, or Dong Yi? | 08:45:08 |
| 20 | A.    Yes, but he's not in Shenzhen. | 08:45:25 |
| 21 | Q.    I see.  Okay. | 08:45:30 |
| 22 | Where was Mr. Dong located when you were | 08:45:33 |
| 23 | working in Shenzhen? | 08:45:35 |
| 24 | A.    Oh, he's in the United States, but he never | 08:45:49 |
| 25 | mentioned exactly where in the U.S. | 08:45:54 |

Page 22

| | | |
|---|---|---|
| 1 | being deleted in November 2020? | 11:45:16 |
| 2 | A.   No. | 11:45:18 |
| 3 | Q.   Okay. | 11:45:31 |
| 4 | MR. PELHAM:  Let me mark as Exhibit 11 what is | 11:45:35 |
| 5 | going to be another discovery response.  I'll share | 11:45:45 |
| 6 | screen. | 11:46:11 |
| 7 | (Exhibit 11 marked for identification.) | |
| 8 | BY MR. PELHAM: | 11:46:17 |
| 9 | Q.   You see, it's titled "GrooMore, Inc.'s, | 11:46:17 |
| 10 | Responses to Moement, Inc.'s, First Set of | 11:46:21 |
| 11 | Interrogatories." | 11:46:26 |
| 12 | A.   Yes, I see it. | 11:46:26 |
| 13 | Q.   And just as we had discussed before, Mr. Lin, | 11:46:39 |
| 14 | do you recall assisting GrooMore with putting together | 11:46:45 |
| 15 | these discovery responses, specifically with respect to | 11:46:50 |
| 16 | GrooMore's response to Moement's first set of | 11:46:57 |
| 17 | interrogatories? | 11:47:01 |
| 18 | A.   Yes, I remember. | 11:47:01 |
| 19 | Q.   Okay.  I'm going to call your attention to | 11:47:28 |
| 20 | what is Interrogatory No. 16. | 11:47:35 |
| 21 | MR. PELHAM:  And Eva, I'm only going to ask | 11:47:50 |
| 22 | you to translate certain parts of the question and | 11:47:53 |
| 23 | answer. | 11:47:56 |
| 24 | For the record, on page 10 of the exhibit, | 11:47:56 |
| 25 | lines 8 to 10, the question is:  "Describe all facts and | 11:47:59 |

Page 73

| | | |
|---|---|---|
| 1 | circumstances relating to any analysis, investigation or | 11:48:03 |
| 2 | inquiry conducted by you or on your behalf concerning | 11:48:06 |
| 3 | whether your software used any of Moement's trade | 11:48:10 |
| 4 | secrets, API key and APN certificate." | 11:48:14 |
| 5 | Then I'll just read part of the answer into | 11:49:13 |
| 6 | the record.  Starting on line 24, page 10, it says: | 11:49:15 |
| 7 | "Upon first learning of Moement's allegations when he | 11:49:20 |
| 8 | was served with the complaint in this litigation, | 11:49:23 |
| 9 | Chunliang Lin, acting as responding party, personally | 11:49:28 |
| 10 | audited the source code for GrooMore's applications and | 11:49:31 |
| 11 | confirmed that all code was original code written by | 11:49:34 |
| 12 | Chunliang Lin for use in the GrooMore application, and | 11:49:38 |
| 13 | confirmed that the APN certificate and Google API key | 11:49:43 |
| 14 | used in the software were issued to GrooMore." | 11:49:46 |
| 15 | Go ahead, Eva. | 11:49:49 |
| 16 | BY MR. PELHAM: | |
| 17 | Q.    So do you recall providing that answer on | 11:50:44 |
| 18 | behalf of GrooMore in response to this question, | 11:50:48 |
| 19 | Mr. Lin? | 11:50:51 |
| 20 | A.    Yes. | 11:50:52 |
| 21 | Q.    Okay.  Did you, as the answer indicates, audit | 11:51:03 |
| 22 | GrooMore's source code and confirm that all that code | 11:51:12 |
| 23 | was written by yourself? | 11:51:16 |
| 24 | A.    Yes. | 11:51:18 |
| 25 | Q.    First of all, what did that audit involve? | 11:51:37 |

Page 74

| | | |
|---|---|---|
| 1 | What steps did you take in order to conduct that audit? | 11:51:44 |
| 2 | A.   I just read the codes. | 11:51:47 |
| 3 | Q.   When you say you read the code, what does that | 11:52:12 |
| 4 | mean in particular?  How did reading the code assure you | 11:52:14 |
| 5 | that this was all code that you had written? | 11:52:21 |
| 6 | A.   Let me take a look. | 11:52:23 |
| 7 | Well, if the codes were written by myself, | 11:53:04 |
| 8 | then I would have impression about it, and also I would | 11:53:10 |
| 9 | have my own habits. | 11:53:14 |
| 10 | Q.   When you did this audit, Mr. Lin, at the time | 11:53:18 |
| 11 | that you did this audit, was GrooMore's source code -- | 11:53:25 |
| 12 | and specifically with reference to GrooMore's web | 11:53:31 |
| 13 | application, had that code been authored by anyone other | 11:53:35 |
| 14 | than yourself? | 11:53:38 |
| 15 | A.   No. | 11:54:08 |
| 16 | Q.   So if you were the sole author of the GrooMore | 11:54:09 |
| 17 | source code, the source code for GrooMore's web | 11:54:18 |
| 18 | application at the time of the audit, why did you need | 11:54:21 |
| 19 | to conduct an audit at all? | 11:54:23 |
| 20 | A.   Mainly, I had to see about those keys, and | 11:54:25 |
| 21 | also the APN files that we mentioned earlier to make | 11:54:55 |
| 22 | sure if they were the right ones. | 11:54:59 |
| 23 | Q.   But the answer indicates that your audit | 11:55:02 |
| 24 | confirmed that all code was original code, written by | 11:55:06 |
| 25 | Chunliang Lin for use in the GrooMore application. | 11:55:11 |

Page 75

```
 1              My question is:  If you were the only person    11:55:15

 2    who had written the code, the source code for GrooMore's   11:55:16

 3    web application at the time of this audit, why did you     11:55:20

 4    need to conduct an audit to confirm that you were the      11:55:22

 5    one who wrote the code?                                    11:55:26

 6              MR. GEBELIN:  Objection.  Asked and answered.    11:55:28

 7              THE WITNESS:  So that means I don't have to      11:56:11

 8    answer this question, right?                               11:56:13

 9    BY MR. PELHAM:

10        Q.   You do need to answer the question.             11:56:16

11              MR. GEBELIN:  The objection remains.            11:56:24

12              THE WITNESS:  I'm sorry?                        11:56:27

13              MR. GEBELIN:  The objection remains.            11:56:29

14              Go ahead and answer.                            11:56:31

15              THE WITNESS:  Oh, well, it's just like you      11:56:49

16    take an exam, you have to review it.  Even if the codes    11:56:51

17    that you wrote yourself, by reviewing it, it's helpful.    11:56:56

18    BY MR. PELHAM:

19        Q.   In what way would it be helpful to review        11:57:01

20    something you wrote?                                       11:57:04

21        A.   To see if those keys were correctly used --      11:57:16

22    keys and the APN files.                                    11:57:21

23        Q.   So, to be clear, Mr. Lin, I'm not referring to   11:57:26

24    that part of the response, I'm only referring to the       11:57:29

25    confirmation that the code was written by you.  You        11:57:33
```

Page 76

| | | |
|---|---|---|
| 1 | Q.   Okay.  So what did you know about Mr. Zhang's | 13:39:16 |
| 2 | separation before it took place? | 13:39:20 |
| 3 | A.   When he proposed it, it should be because of | 13:39:22 |
| 4 | the treatment. | 13:39:41 |
| 5 | Q.   When you say "the treatment," what are you | 13:39:44 |
| 6 | referring to? | 13:39:49 |
| 7 | A.   It's about a salary, because Ethan previously | 13:39:49 |
| 8 | promised he would give him a raise, but he didn't. | 13:40:04 |
| 9 | Q.   And did Mr. Zhang talk to you about this | 13:40:10 |
| 10 | before he notified the company that he wanted to | 13:40:14 |
| 11 | separate from them? | 13:40:19 |
| 12 | A.   Yes, he talked about the treatment. | 13:40:21 |
| 13 | Q.   Was there anything else that Mr. Zhang was | 13:40:36 |
| 14 | referring to -- when you say "the treatment," was there | 13:40:38 |
| 15 | anything else that Mr. Zhang was referring to other than | 13:40:41 |
| 16 | the salary issue? | 13:40:47 |
| 17 | A.   He didn't mention about anything else. | 13:40:49 |
| 18 | Q.   Did you speak -- have you spoken with | 13:41:08 |
| 19 | Mr. Zhang since he separated from Mengshi/Moement? | 13:41:12 |
| 20 | A.   No more conversations. | 13:41:31 |
| 21 | Q.   So are you saying, Mr. Lin, that you have had | 13:41:39 |
| 22 | no contact, no communications with Mr. Zhang since he | 13:41:42 |
| 23 | left Moement/Mengshi? | 13:41:46 |
| 24 | A.   That's right. | 13:41:50 |
| 25 | Q.   Have you had any contact outside of this | 13:42:03 |

Page 100

```
 1   lawsuit -- apart from this lawsuit, have you had any        13:42:06

 2   contact with anybody else from Mengshi or Moement since     13:42:09

 3   you separated from the company?                             13:42:13

 4          Sorry, let me rephrase that because I know you       13:42:22

 5   did some part-time work.                                    13:42:26

 6          So I should say, after you stopped doing             13:42:27

 7   part-time work with Emma, have you had any contact with     13:42:31

 8   anybody else at Mengshi or Moement, separate from the       13:42:35

 9   lawsuit?                                                    13:42:40

10      A.   I don't know for sure.                              13:42:40

11      Q.   How are you not sure if you have had contact        13:43:17

12   with anybody at Mengshi or Moement?                         13:43:19

13      A.   It's like a holiday, when you send a mass text      13:43:45

14   message, would that count?                                  13:43:51

15          If it doesn't count, there's no other               13:43:54

16   communications.                                             13:43:58

17      Q.   Okay.  Before the two of you separated from         13:43:58

18   Moement/Mengshi, did you and Mr. Zhang talk about your      13:44:07

19   plan for -- I shouldn't say "plan" -- did the two of you    13:44:13

20   talk about your interests in setting up a company in the    13:44:19

21   pet care business?                                          13:44:25

22      A.   No.                                                 13:44:28

23      Q.   If you could broadly estimate, Mr. Lin, about       13:45:00

24   how many hours would you say that you spent developing      13:45:05

25   the first version of GrooMore's web-based source code?      13:45:12
```

Page 101

```
1              CERTIFICATE OF READER-INTERPRETER

2

3       I, _____, whose address
4                   (Please print)

5

6   is _____, a person
7                   (Please print)
8   who speaks the language of the deponent, namely,
9   Mandarin, do hereby certify that on the _____ day of
10  _____, 20_____, I did translate the
11  foregoing deposition from the English language into the
12  Mandarin language, reading same to the deponent in his
13  native tongue, to the best of my ability;
14       That all corrections and changes requested by the
15  deponent were made and initialed by the deponent;
16       That, upon completion of said reading, the deponent
17  did confirm to me that she had understood the reading.
18       IN WITNESS WHEREOF, I have this date
19  subscribed my name.
20       Dated: _____, 20_____.

21

22

23

24       _____

25              READER-INTERPRETER
```

Page 108

Exhibit C

```
 1              UNITED STATES DISTRICT COURT
 2          FOR THE CENTRAL DISTRICT OF CALIFORNIA
 3
 4   MOEMENT, INC., A DELAWARE      ) CASE NO.:
     CORPORATION,                   ) 2:22-CV-02871-WLH JEMX
 5                                  )
            PLAINTIFF,              )
 6                                  )
     v.                             )
 7                                  )
     GROOMORE, INC., A DELAWARE     )
 8   CORPORATION; CHUNLIANG LIN,    )
     AN INDIVIDUAL; JIE ZHANG,      )
 9   AN INDIVIDUAL; AND SONGYUN LIU,)
     AN INDIVIDUAL,                 )
10                                  )
            DEFENDANTS.             )
11   _____)
12
13
14
15
16      VIDEOTAPED 30(B)(6) DEPOSITION OF CHUNLIANG LIN
17             WEDNESDAY, JULY 10, 2024
18                     HONG KONG
19                     VOLUME II
20
21
22
23
     FILE  CA 6788268
24
     REPORTED BY  MARK McCLURE, CRR
25             CAL CSR 12203

                                        Page 1
```

```
 1    VIDEOTAPED 30(B)(6) DEPOSITION OF CHUNLIANG LIN, 8:31
 2    A.M., WEDNESDAY, JULY 10, 2024, NORTON ROSE FULBRIGHT
 3    LLP, 38/F JARDINE HOUSE, 1 CONNAUGHT PLACE, CENTRAL,
 4    HONG KONG, VIA VERITEXT REMOTE TECHNOLOGY, BEFORE MARK
 5    McCLURE, C.S.R. #12203, CERTIFIED SHORTHAND REPORTER IN
 6    AND FOR THE STATE OF CALIFORNIA.
 7
 8    APPEARANCES OF COUNSEL:
 9    FOR THE PLAINTIFF, MOEMENT, INC., A DELAWARE
      CORPORATION:
10
              (APPEARING BY VIDEOCONFERENCE)
11            NORTON ROSE FULBRIGHT US LLP
              BY:  CHRISTOPHER PELHAM, ESQ.
12            555 SOUTH FLOWER STREET, 41ST FLOOR.
              LOS ANGELES, CALIFORNIA 90071-2452
13            213.892.9221.
              CHRISTOPHER.PELHAM@NORTONROSEFULBRIGHT.COM
14
      FOR THE DEFENDANT, GROOMORE, INC., A DELAWARE
15    CORPORATION; AND THE DEPONENT, CHUNLIANG LIN:
16            (APPEARING BY VIDEOCONFERENCE)
              LESOWITZ GEBELIN LLP
17            BY:  STEVEN GEBELIN, ESQ.
              8383 WILSHIRE BOULEVARD, SUITE 800
18            BEVERLY HILLS, CALIFORNIA 90211-2440
              310.341.3072
19            STEVEN@LAWBYLG.COM
20    ALSO PRESENT:
21            (APPEARING BY VIDEOCONFERENCE)
              YI YI (EVA) JOHNSON, MANDARIN INTERPRETER,
22            THE INTERPRETER
23            (APPEARING BY VIDEOCONFERENCE)
              JOEY METZ, THE VIDEOGRAPHER
24
              (APPEARING BY VIDEOCONFERENCE)
25            ZACH SPARKS, THE CONCIERGE
```

                                                    Page  2

| | | |
|---|---|---|
| 1 | back-end source code or the front-end source code? | 09:14:07 |
| 2 | A.   No. | 09:14:11 |
| 3 | Q.   Okay.  Were you aware, Mr. Lin, of -- let me | 09:14:36 |
| 4 | step back. | 09:14:45 |
| 5 | Yesterday, we talked about one of your | 09:14:45 |
| 6 | co-workers at Moement, Mr. Jie Zhang. | 09:14:48 |
| 7 | Were you aware, Mr. Lin, of Mr. Zhang | 09:14:55 |
| 8 | uploading a copy of the MoeGo back-end source code to a | 09:14:58 |
| 9 | GitHub account to which Mr. Zhang had access? | 09:15:04 |
| 10 | A.   I don't know about this. | 09:15:11 |
| 11 | Q.   Were you aware, Mr. Lin, of Mr. Zhang editing | 09:15:42 |
| 12 | a copy of the Moement Version 1 back-end source code -- | 09:15:47 |
| 13 | web application back-end source code on a GitHub | 09:15:53 |
| 14 | account? | 09:15:57 |
| 15 | A.   I don't know about that either. | 09:15:57 |
| 16 | Q.   And I know you'd indicated -- we talked | 09:16:25 |
| 17 | yesterday, Mr. Lin, about whether or not you had contact | 09:16:28 |
| 18 | with Mr. Zhang after he left Moement for Mengshi. | 09:16:31 |
| 19 | Did Mr. Zhang tell you at any time that he had | 09:16:42 |
| 20 | uploaded a copy of the MoeGo source code, back-end | 09:16:48 |
| 21 | source code onto a GitHub account? | 09:16:54 |
| 22 | A.   No. | 09:16:57 |
| 23 | Q.   Okay.  And did you ever become aware, Mr. Lin, | 09:17:25 |
| 24 | either from talking to Mr. Zhang or from some other | 09:17:31 |
| 25 | source, that Mr. Zhang had edited a copy of the MoeGo | 09:17:36 |

Page 19

```
 1    back-end source code on a GitHub account to include      09:17:44

 2    references to GrooMore?                                  09:17:46

 3            MR. GEBELIN:  Objection.  Objection.  Assumes    09:17:48

 4    facts not in evidence.                                   09:18:35

 5            Go ahead.                                        09:18:39

 6            THE WITNESS:  I don't know about that either.    09:18:49

 7    BY MR. PELHAM:

 8        Q.   I know you'd mentioned earlier, Mr. Zhang       09:18:54

 9    (sic), that you did not use an outside repository for    09:18:57

10    the GrooMore source code.                                09:19:02

11            Do you recall ever editing the GrooMore source   09:19:04

12    code in a GitHub repository?                             09:19:08

13            THE INTERPRETER:  Counsel, the interpreter       09:19:16

14    heard "Mr. Zhang."                                       09:19:17

15            Did you mean "Mr. Lin"?                          09:19:19

16            MR. PELHAM:  Oops, sorry.  Let me re-ask it.     09:19:23

17    BY MR. PELHAM:

18        Q.   Mr. Lin, did you ever edit the GrooMore source  09:19:28

19    code while it was in a GitHub repository?                09:19:36

20        A.   No, no.                                         09:20:00

21        Q.   Do you recall, Mr. Lin -- well, let me strike   09:20:07

22    that.                                                    09:20:14

23            Mr. Lin, you earlier had referenced an expert    09:20:15

24    code review of the GrooMore source code.                 09:20:22

25            Were you the person responsible for preparing    09:20:31
```

Page 20

```
 1   STATE OF CALIFORNIA       )

 2   COUNTY OF SANTA BARBARA  )    SS.

 3

 4        I, Mark McClure, C.S.R. No. 12203, in and for

 5   the State of California, do hereby certify:

 6        That prior to being examined, the witness

 7   named in the foregoing deposition was by me duly sworn

 8   to testify to the truth, the whole truth, and nothing

 9   but the truth;

10        That said deposition was taken down by me in

11   shorthand at the time and place therein named and

12   thereafter reduced to typewriting under my direction,

13   and the same is a true, correct, and complete transcript

14   of said proceedings;

15        That if the foregoing pertains to the original

16   transcript of a deposition in a Federal Case, before

17   completion of the proceedings, review of the transcript

18   { } was { } was not required.

19        I further certify that I am not interested in

20   the event of the action.

21        Witness my hand this 24th day of July, 2024.

22

23

24        Certified Shorthand Reporter

          State of California

25        CSR No. 12203
```

Page 76