CHRISTOPHER PELHAM (BAR NO. 241068)
ALEX SCANDROLI (BAR NO. 345278)
**NORTON ROSE FULBRIGHT US LLP**
555 South Flower Street
Forty-First Floor
Los Angeles, California 90071
Telephone: (213) 892-9200
Facsimile: (213) 892-9494
christopher.pelham@nortonrosefulbright.com
alex.scandroli@nortonrosefulbright.com

Attorneys for Plaintiff
MOEMENT, INC.

## IN THE UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MOEMENT, INC., a Delaware corporation, <br><br> Plaintiff, <br><br> v. <br><br> GROOMORE, INC., a Delaware corporation, CHUNLIANG LIN, an individual, JIE ZHANG, an individual, and SONGYUN LIU, an individual, <br><br> Defendant. | Case No. 2:22-cv-02871-WLH (JEMx) <br><br> *[Assigned to the Hon. Wesley L. Hsu; Courtroom 9B]* <br><br> **PLAINTIFF MOEMENT, INC.'S NOTICE OF INTENT TO SEEK INJUNCTIVE RELIEF AND REQUEST TO CALENDAR TRIAL** <br><br> Complaint Filed: April 29, 2022 <br> Pretrial Conference: Nov. 22, 2024 <br> Trial Status Conference: Jan. 10, 2025 <br> Trial Readiness Conference: March 14, 2025 |

DOCUMENT PREPARED ON RECYCLED PAPER

Plaintiff Moement, Inc. ("Plaintiff" or "Moement") hereby notifies the Court and Defendants Groomore, Inc. ("Groomore") and Chunliang Lin ("Lin") (together, "Defendants") of its intent to request certain forms of injunctive relief upon findings that Defendants are liable for (1) Violation of Defend Trade Secrets Act ("DTSA"), 18 U.S.C. § 1831, *et seq.* (the "Trade Secret Claim"); (2) Copyright Infringement (the "Copyright Claim"); (3) Breach of Contract (as to Lin); and (4) Violation of California Bus. & Prof. Code, § 17200 (the "Unfair Competition Claim").

The injunctive relief described in this notice is preliminary and this notice is not intended to be binding on Plaintiff. Plaintiff expressly reserves the right to modify, amend, withdraw, or add forms of injunctive relief upon its formal submission to the Court for injunctive relief at trial or as otherwise ordered.

## NOTICE OF INTENT TO SEEK INJUNCTIVE RELIEF AND REQUEST TO CALENDAR TRIAL

### I.    FORMS OF INJUNCTIVE RELIEF SOUGHT

As prayed for in Plaintiff's Complaint, (Dkt. 1, pp. 19-20), Plaintiff seeks forward looking injunctive remedies against Defendants, and "any persons in active concert or participation with Defendant[s]," to protect against future violations of Plaintiff's rights. In particular, the Complaint seeks to enjoin the following:

- Defendants are prohibited from "obtaining, retaining, using transmitting, or disseminating, or disclosing the Moement Trade Secrets."

- Defendants must immediately "return all [Plaintiff's] intangible materials and information that remain in Defendants' possession, custody, or control."

- Defendants must "identify, and turn over, any property in their possession, custody, or control containing or reflecting the "Moement Trade Secrets," including hard copy documents or

DOCUMENT PREPARED ON RECYCLED PAPER

any form of electronic storage media."

- Defendants must "identify any other persons, entities, or locations not within their possession, custody, or control, to which Defendants have transmitted, disseminated, disclosed, or stored any Moement Trade Secrets."

- Defendants must "render a full and complete accounting to [Plaintiff] for their profits, gains, advantages, or the value of business opportunities received from" the acts of copyright infringement.

- Other appropriate injunctive relief the Court deems appropriate.

Plaintiff will be entitled to the injunctive remedies prayed for upon prevailing on the Trade Secret Claim,[1] and by extension, the Unfair Competition Claim.  To prepare for that contingency, and promote trial economy, Plaintiff now specifies the injunctive order[s] it will request from the Court upon a verdict for these claims:

| Injunctive Relief on Trade Secret Claim | Injunctive Relief on Unfair Comp. Claim |
| --- | --- |
| 1.  Defendants Groomore and Lin, and their employees, agents, directors, officers, servants, and those persons in active concert or participation with them, are immediately enjoined from: using, disclosing, exploiting, transmitting, copying, or accessing, either directly or indirectly, any of | 1. Within 10 days of the verdict, Defendants Groomore and Lin, and their employees, agents, directors, officers, servants, and those persons in active concert or participation with them, are ordered to post notice[s] on Groomore's website, mobile application, and social media forums of |

---

[1] The equitable remedies sought under the Copyright Claim are the same as the Trade Secret Claim because the trade-secret-in-dispute is also Plaintiff's copyright. References hereafter to the remedies sought in connection with the Trade Secret Claim are intended to encompass the Copyright Claim.  As for breach, specific performance of Lin's contractual duty to return or destroy Plaintiff's confidential information is likewise encompassed by the injunctive remedies sought in connection with the Trade Secret Claim.  *See E\*Trade Financial Corp. v. Eaton*, 305 F. Supp. 3d 1029, 1040 (D. Ariz. 2018) (granting specific performance to return or destroy confidential information after finding contract imposed this duty on employee).

| | |
|---|---|
| Plaintiff's confidential, proprietary, and/or Trade Secret Information (as further defined below) in any way, regardless of where stored or copied, and are enjoined from disclosing or revealing to other persons, parties, or entities any information learned of or derived from Defendants' possession, custody, or control of such materials. | the findings from any verdict against Defendants at trial. |
| 2. Within 30 days of the order, Defendants Groomore and Lin, and their employees, agents, directors, officers, servants, and those persons in active concert or participation with them, certify to Plaintiff in a sworn declaration that no aspects of Groomore implements, contains, or makes reference to information derived from Plaintiff's Trade Secret Information or any other confidential information or technologies belonging to Plaintiff. | 1.a (in the alternative to 1) Within 10 days of the verdict, Defendants Groomore and Lin, and their employees, agents, directors, officers, servants, and those persons in active concert or participation with them, are ordered to notify all Groomore customers whom Defendants communicated with or otherwise contacted through accessing or possessing Plaintiff's Trade Secret Information of the findings from any verdict against Defendants at trial. |
| 3. Within 30 days of the order, Defendants Groomore and Lin, and their employees, agents, directors, officers, servants, and those persons in active concert or participation with them, certify to Plaintiff in a sworn declaration that any materials or information in Defendants' possession relating to Plaintiff's Trade Secret Information, or any other confidential information and/or technologies belonging to Plaintiff, have either been returned to Plaintiff or destroyed in a manner that makes said materials no longer in the possession of Defendants. | 3. Plaintiff is immediately permitted to post notice[s] on its website, mobile application, and private social media forums, of the findings from any verdict against Defendants. |
| 4. Within 30 days of the order, Defendants Groomore and Lin, and | 4. Within 30 days of the order, Defendants Groomore and Lin identify |

PLAINTIFF'S NOTICE OF INTENT TO SEEK INJUNCTIVE RELIEF AND REQUEST TO CALENDAR TRIAL

| | |
|---|---|
| their employees, agents, directors, officers, servants, and those persons in active concert or participation with them, certify to Plaintiff in a sworn declaration that they have requested Defendant Jie Zhang shut down the Github account registered to user "JZ099" such that Plaintiff's Trade Secret Information stored or being stored in that account is no longer accessible to any person. | to Plaintiff in writing any customer of either Plaintiff or Groomore whom Defendants communicated with or otherwise contacted through accessing or possessing Plaintiff's Trade Secret Information. |
| 5. Within 30 days of the order, Defendants Groomore and Lin, and their employees, agents, directors, officers, servants, and those persons in active concert or participation with them, certify to Plaintiff in a sworn declaration that they have requested any third-party contractors or entities in receipt of Plaintiff's Trade Secret Information, or other confidential information and technologies, to either return such materials to Plaintiff or certify they have destroyed those materials in a manner that makes them no longer in the possession of these third-parties, and that Defendants have requested these third-parties provide a certification to Defendants confirming the return or destruction. | 5. Within 30 days of the order, Defendants Groomore and Lin provide an accounting to Plaintiff in a sworn declaration listing any and all tangible or intangible benefit they, or any persons acting on their behalf, have gained or derived from having access to or possession of Plaintiff's Trade Secret Information, including but not limited to monetary benefits, revenues, profits, interests, costs savings, research and development, customer accounts, technical know how, business or investment opportunities (including any future business or investment opportunities stemming from the use of Plaintiff's Trade Secret Information), deals, contracts, employment offers, or derivative works created or modeled off of Plaintiff's Trade Secret Information |
| 6. Within 30 days of the order, Defendants Groomore and Lin, and their employees, agents, directors, officers, servants, and those persons in active concert or participation with them, certify to Plaintiff in a sworn declaration that they have searched all local servers, external repositories, cloud storage, backup systems, and any | |

PLAINTIFF'S NOTICE OF INTENT TO SEEK INJUNCTIVE RELIEF AND REQUEST TO CALENDAR TRIAL

offsite or "Shadow IT" repositories, used by Defendants to store any of its information, and that such locations do not (or no longer) contain any information or materials belonging to Plaintiff (without regard for whether this information or materials is a trade secret).

7. Within 30 days of the order, Defendants Groomore and Lin, and their employees, agents, directors, officers, servants, and those persons in active concert or participation with them, certify to Plaintiff in a sworn declaration that they have searched all employees' devices, including but not limited to smartphones, tablets, and laptops, who may have had access to materials or information belonging to Plaintiff, and such devices do not (or no longer) contain any information or materials belonging to Plaintiff (without regard for whether this information or materials is a trade secret).

8. Within 30 days of the order, Defendants Groomore and Lin, and their employees, agents, directors, officers, servants, and those persons in active concert or participation with them, are to provide Plaintiff an inventory of all local servers, external repositories, cloud storage, backup systems, or any offsite or "Shadow IT" repositories, that contain (or formerly contained any materials or information belonging to Plaintiff (without regard for whether this information or materials is a trade secret).

DOCUMENT PREPARED ON RECYCLED PAPER

PLAINTIFF'S NOTICE OF INTENT TO SEEK INJUNCTIVE RELIEF AND REQUEST TO CALENDAR TRIAL

9. Within 30 days of the order, Defendants Groomore and Lin, and their employees, agents, directors, officers, servants, and those persons in active concert or participation with them, are to provide Plaintiff an inventory of all devices, including but not limited to laptops, tablets, and smartphones, whether used for work or personal purposes, that contain (or formerly contained any materials or information belonging to Plaintiff (without regard for whether this information or materials is a trade secret).

10. Within 30 days of the order, Defendants Groomore and Lin, and their employees, agents, directors, officers, servants, and those persons in active concert or participation with them, are to provide Plaintiff a chain of custody log for any materials or information belonging to Plaintiff (without regard for whether this information or materials is a trade secret), which documents how these materials were returned to Plaintiff or otherwise destroyed.

11. Defendants Groomore and Lin, and their employees, agents, directors, officers, servants, and those persons in active concert or participation with them, are to provide Plaintiff notice if any information or materials belonging to Plaintiff is subsequently discovered to still be in the possession of Defendants, or third-parties affiliated with Defendants, after the 30-day

DOCUMENT PREPARED ON RECYCLED PAPER

PLAINTIFF'S NOTICE OF INTENT TO SEEK INJUNCTIVE RELIEF AND REQUEST TO CALENDAR TRIAL

compliance period of this order has lapsed.

## II.    GROUNDS FOR PLAINTIFF'S REQUESTED INJUNCTIVE RELIEF

In this action, the Trade Secret Claim, Breach of Contract Claim, and Unfair Competition Claim provide for Plaintiff's equitable entitlement and, as explained below, the facts and law support the specific injunctive orders Plaintiff will request.

### A.    Factual Grounds for Plaintiff's Requested Injunctive Relief

The evidence at trial will show the necessity for Plaintiff's requested injunctive relief. This is a trade secret dispute between two software companies in the mobile pet grooming industry. (Dkt. 1 (Complaint), ¶¶ 3, 11). Plaintiff's software is MoeGo and Defendants' software is Groomore, launched by Defendant Lin (Plaintiff's former employee). (*Id.*) Both MoeGo and Groomore help mobile pet grooming businesses make appointments, map routes to customer homes, and allow businesses to communication with customers through instant messages, among other functions. (*Id.* at ¶¶ 11, 23.)

At trial, Plaintiff will prove Defendant Groomore and Defendant Lin worked together with Lin's former co-worker and defaulted co-defendant, Jie Zhang ("Zhang"), to misappropriate Plaintiff's (1) proprietary and bespoke source code that runs MoeGo's technologies; (2) other confidential and proprietary materials belonging to Plaintiff; and (3) Plaintiff's compiled customer information (hereafter, "Plaintiff's Trade Secret Information"). (*See* Dkt. 172, Plaintiff's Trial Brief setting forth evidence in support of misappropriation). In turn, Lin and Zhang used Plaintiff's Trade Secret Information to launch Groomore and solicit MoeGo's customers, thus allowing Groomore to unjustly earn a profit and compete with Plaintiff's mobile pet grooming platform. (*Id.*)

PLAINTIFF'S NOTICE OF INTENT TO SEEK INJUNCTIVE RELIEF AND REQUEST TO CALENDAR TRIAL

1    In support, Plaintiff will present the jury with irrefutable evidence that

2    Plaintiff's Trade Secret Information appears in aspects of Groomore's technologies,

3    and that either Lin or Zhang stored said information on local servers or third-party

4    repositories which Plaintiff does not own or control.  In particular, Plaintiff's

5    technicians found an access token for a Github account with a handle of "jz099,"

6    the same initials as Zhang.  (*See* Trial Exhibit Ex. 159 (access token found in

7    Groomore's front end code)).[2]  Plaintiff's technicians used that access token to

8    access the GitHub account and saw that the user of the Github had the email

9    address "zhang.jije@163.com."  (*See* Trial Exhibit 178 (showing first commit log

10   for "jz099" Github in June 2020 by account user zhang.jije@163.com)).  Plaintiff

11   knew this to be Zhang's email address, not least because it is the same email

12   address Zhang listed on his employment records when he worked for Plaintiff.  (*See*

13   Trial Exhibit 122 (employment records showing Zhang's email)).

14   Once inside, Plaintiff's technicians observed that Zhang's GitHub account

15   was established a few days after Zhang separated from Plaintiff.  (*See* Trial Exhibit

16   178).  Stored within Zhang's Github account, Plaintiff found Plaintiff's Trade

17   Secret Information, including (1) a clone copy of its backend source code that runs

18   MoeGo and; (2) Plaintiff's customer information.   (*See* Trial Exhibit 149

19   (customer data found in Github), and Trial Exhibit 161 (comparisons of code found

20   in Github)).  When comparing the code in the Github account with Plaintiff's

21   bespoke source code, the only significant difference is key phrases and words in the

22   Github code were being changed to remove references to MoeGo and instead

23   reference Groomore.  (*Id.*)  As to Plaintiff's customer information, Plaintiff will

24   present evidence that Defendants solicited MoeGo's customers in the early days of

25   Groomore using this information.  In other words, direct evidence that Defendants

26

27   [2] Trial exhibits were lodged with the Court on January 8, 2025, and submitted to
28   chambers on a thumb drive that same day.

DOCUMENT PREPARED
ON RECYCLED PAPER

possessed and used Plaintiff's Trade Secret Information will be presented at trial.[3]

Further, it is uncontested that Lin made use of other proprietary and licensed materials belonging to Plaintiff when launching Groomore.  For example, Lin admits that when Groomore was nascent, it could not qualify for its own Google Maps license, so Lin simply used the one assigned to MoeGo.  (*See* Dkt. 142 (attaching testimony)).  Plaintiff did not give Lin permission to use Plaintiff's Google Maps API key.  And while this key is not a trade secret (since Plaintiff did not program it, it was assigned by Google, and Plaintiff stored it in the MoeGo frontend source code), regardless, Defendants' possession of the key proves that Lin did not return or destroy all materials belonging to Plaintiff upon his exit from the company (as he was required to do by contract).  (*See* Trial Exhibits 22, 24, and 26 (Lin's contracts with Plaintiff)).  Thus, injunctive relief to ensure that Defendants and its affiliated third-parties no longer have access to *any* of Plaintiff's confidential or proprietary materials is necessary in this case.

On these facts, should Plaintiff prevail on the Trade Secret Claim, an order from the Court requiring Defendants certify to Plaintiff the following is appropriate: (1) certifying Defendants have returned or destroyed all of Plaintiff's information or materials in their possession; (2) certifying Defendants have requested any third-parties in receipt of Plaintiff's information or materials to return of destroy; (3) certifying that any of Defendants' local servers or external repositories that housed or continues to house Plaintiff's information and materials have been shut down; and (4) certifying that no aspect of Groomore's technology, contains, makes use of, or references Plaintiff's Trade Secret Information.

This is the upshot of the injunctive relief Plaintiff seeks in connection with its Trade Secret Claim, (*see supra*, **§ I** (remedies chart)), and these forms of equitable

---

[3] The Court has already ruled this evidence admissible in denying Defendants' motion *in limine* to exclude evidence obtained from Zhang's Github and granting Plaintiff's motion *in limine* to admit that same evidence.  (Dkt. 175).

DOCUMENT PREPARED
ON RECYCLED PAPER

remedies are routinely ordered upon liability for trade secret misappropriation to prevent future harm to the trade-secret-plaintiff (as explained below).

### B.    Legal Grounds for Plaintiff's Requested Injunctive Relief

Broadly speaking, the injunctive relief Plaintiff seeks can be characterized as: (1) certifications relating to Defendants' possession of Plaintiff's property; (2) accounting relating to the misappropriation of Plaintiff's Trade Secret Information; and (3) disclosures to customers regarding the misappropriation of Plaintiff's Trade Secret. The case law allows for these forward-looking remedies should Plaintiff prevail on the Trade Secret Claim, and by extension, the Unfair Competition Claim.

On that latter point, success on the Trade Secret Claim also spells success on the Unfair Competition Claim (which is to be decided by the Court).[4] That is because a violation for trade secret misappropriation satisfies the unlawful prong of California's unfair competition framework. *DJO Glob., Inc. v. Glader*, 2016 WL 11622009, at *8 (S.D. Cal. Dec. 22, 2016) ("it is well-settled that misappropriation of trade secrets in violation of [California's Uniform Trade Secret Act ("CUTSA")] can form the predicate for an unfair competition claim under the [California's unfair competition law].").[5]

Accordingly, the injunctive remedies allowed for under both claims are available to Plaintiff and are explored herein.

---

[4] The California Supreme Court has held there is no right to a jury trial on an Unfair Competition claim. *Nationwide Biweekly Administration, Inc. v. Sup. Ct. of Alameda County*, 9 Cal. App. 5th 279, 334 (2020). Plaintiff therefore submitted this claim to the Court in recognition that a verdict for trade secret misappropriation would provide the necessary findings for the Court to favorably rule on the claim. (Dkt. 167).

[5] Plaintiff intends to try its DTSA claim and CUTSA claim as one claim given they turn on the same elements of proof. *See Genasys Inc. v. Vector Acoustics, LLC*, 638 F. Supp. 3d 1135, 1150-51 (S.D. Cal. Nov. 1, 2022) (explaining same). Strictly speaking, it is CUTSA that will satisfy the unlawful prong of the Unfair Competition Claim. *Id.* For purposes of this notice, Plaintiff intends the term "Trade Secret Claim" to also reference CUTSA.

DOCUMENT PREPARED ON RECYCLED PAPER

(1)    *Certifications Relating to Defendants' Possession of Plaintiff's Property*

The plain text of DTSA contemplates that a trade-secret-plaintiff is entitled to any equitable relief necessary to prevent the actual or threatened misappropriation of trade secrets.  18 U.S.C.A. § 1836(a)(b)(3).  To achieve this, the District Court's injunctive authority includes ordering affirmative actions be taken by the trade-secret-defendant to prevent future injury to the plaintiff, such as certifying the return or destruction of misappropriated information still in the defendant's possession.  S*ee Masimo Corp. v. True Wearables, Inc.*, 2022 WL 2173073, at  3 (C.D. Cal. May 17, 2022) (explaining, upon proof of misappropriation, the most practical way of protecting trade secret information is to order the trade-secret-defendant return such information to plaintiff).

Where, as here, a competitor is proven to have possessed the trade secret, this type of relief is necessary to prevent 'irreparable harm' given a defendant still in possession of a trade secret makes it all the more probable it will continue to use the secret to its advantage.  *See Pac. Aerospace & Elec., Inc. v. Taylor,* 295 F. Supp. 2d 1188, 1198 (E.D. Wash. 2003) (explaining irreparable harm necessarily established when the defendant has trade secret information).  With this in mind, it is not reasonably disputable that Plaintiff is entitled to certifications from Defendants that they are no longer misappropriating any aspect of Plaintiff's source code to run Groomore's technologies.  Yet, in this case, the scope of injunctive relief goes beyond merely ordering Defendants confirm that Plaintiff's source code is no longer in use.

More specifically, the evidence in support of liability on the Trade Secret Claim will show that Defendants wrongfully accessed (and then used) other confidential materials belonging to Plaintiff when Defendants absconded with MoeGo's source code.  This includes confidential and proprietary information such

as Plaintiff's customer information and licensed keys.[6]  It is therefore proper to order Defendants to certify the return or destruction of any and all records or documents, whether original, copied, or computerized, within their possession which belong to Plaintiff.  *See*, *e.g.*, *Fire Security Electronics & Comm. Inc. v. Nye*, 2024 WL 620813, at \*8 (D. Ariz. Feb. 14, 2024) (ordering return of both confidential information and trade secret information upon proof of misappropriation); *Shakey's USA, Inc. v. Tutto's Pizza Corp.*, 2009 WL 3211027, at \*7 (E.D. Cal. Sept. 30, 2009) (ordering return of materials related to the trade secret, such as business practices, know how, and manuals or policies).

Further, the evidence will show that purported third-parties, such as Zhang, possessed Plaintiff's Trade Secret Information and stored said information on third-party repositories (though Defendants claim to have no control or ownership of this account).  It also stands to reason that contractors and third-parties which Defendants claim to have hired may have had access to such information when working with Defendants' technologies.  Thus, it is appropriate to order Defendants to certify their affiliates, contractors, employees, agents, or any other persons acting on their behalf, including Zhang, have scrubbed Plaintiff's materials from their servers, or alternatively, have shut down any repositories that housed or continue to house those materials.

Only through such injunctive orders will the "actual or threatened misappropriation of trade secrets" caused by Defendants' possession of Plaintiff's confidential and trade secret information be eliminated.  18 U.S.C.A. § 1836(a)(b)(3).

///

///

---

[6] This evidence will be dispositive on the breach claim as it proves Lin failed to comply with his confidentiality obligations (in addition to breaching his non-compete.

DOCUMENT PREPARED
ON RECYCLED PAPER

(2)    *Accounting Relating to Defendants' Misappropriation of Plaintiff's Trade Secret Information*

In addition to ordering certifications, Defendants should be ordered to account for any direct or indirect benefit they obtained from possessing Plaintiff's Trade Secret Information, including any customer they solicited or services through having such information.

Generally, when the misappropriating conduct involves solicitation of a former employer's customers using the employer's information, this is sufficient to establish irreparable harm for purposes of injunctive relief. *See, e.g.*, *Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d 832, 841 (9th Cir. 2001) ("[e]vidence of threatened loss of prospective customers or goodwill certainly supports a finding of the possibility of irreparable harm"); *MAI Systems Corp. v. Peal Comput., Inc.*, 991 F.2d 511, 521 (9th Cir. 1993) (soliciting of customers of former firm constituted trade secret misappropriation); *Richmond Techs., Inc. v. Aumtech Bus. Sols.*, 2011 WL 2607158, at *22 (N.D. Cal. July 1, 2011) ("to the extent that Defendants are using Plaintiff's trade secrets to compete with Plaintiff and to encourage Plaintiff's customers to switch their accounts ... the Court agrees that Plaintiff has shown a likelihood of irreparable harm.").

Here, the accounting relief is not intended solely to calculate Defendants' restitution or disgorgement, which would overlap with Plaintiff's compensatory damages claim. *Oculus Innovative Sciences, Inc. v. Prodinnv, S.A. de C.V.*, 2010 WL 4774659, at *5 (N.D. Cal. Nov. 16, 2010) (explaining the overlap between restitution under California's unfair competition law and money damages for trade secret claim). Rather, this accounting is required to ensure that Plaintiff can (1) identify third-parties that may have had access to Plaintiff's Trade Secret Information; and (2) notify both former customers and/or prospective customers that Defendants solicited or serviced while misappropriating Plaintiff's Trade Secret Information.

- 14 -    2:22-cv-02871-WLH

On the latter point, Plaintiff requires these notices (whether they come from Plaintiff or from Defendants) to remediate the reputational harm and loss of goodwill caused by Defendants' misappropriating acts and misrepresentations concerning those acts.

(3)     _Disclosures to Customers Regarding Defendants' Misconduct_

Plaintiff is entitled to injunctive remedies in the form of disclosures to customers regarding Defendants' misconduct because Defendants' misappropriating acts have misled customers in the pet grooming market.

Under California's unfair competition law, the state legislature "intended. . . to permit courts to enjoin ongoing wrongful business conduct in whatever context such activity might occur." *Barquis v. Merchants Collection Ass'n*, 7 Cal. App. 3d 94, 111, 101 CR 745, 757; *see also Committee on Children's Television, Inc. v. General Foods Corp.*, 35 Cal. App. 3d 197, 210 (1983). California courts have even entered mandatory injunctions under §§ 17200 and 17500—usually frowned upon—to make up for past misleading statements. *See Consumers Union of U.S., Inc. v. Alta-Dena Certified Dairy*, 4 Cal. App. 4th 963, 972-974 (1992).

For example, *In Consumers Union of U.S., Inc. v. Alta-Dena Certified Dairy*, the court of appeals affirmed a trial court's order of injunction that required a dairy found liable for false advertising to correct prior misrepresentations to consumers regarding the effects of milk pasteurization. 4 Cal. App. 4th 963, 972-974 (1992). *Alta-Dena* held the court's equitable authority derived from California's unfair competition law includes the power to order the liable party to make affirmative disclosures to consumers. *Id.*

Here, while not a case of false advertising, inherent in a finding that Defendants misappropriated Plaintiff's Trade Secret Information is a finding that Groomore has mislead its customers. In particular, Groomore has held itself out as a competitor to MoeGo that offers separate technologies and services that provide for a different user experience than MoeGo. In truth, at least for a period of time,

- 15 -     2:22-cv-02871-WLH

Groomore ran on MoeGo's technologies.  Further, both prior to and during this litigation, Defendants have publicly represented on social media forums for mobile pet groomers that there is no merit to Plaintiff's claims.  In both senses, a remedy at law would be insufficient to fully disgorge Defendants of the benefit of their misconduct because its customers are entitled to know the truth concerning Groomore's unscrupulous and unfair business practices (*i.e.*, theft of a former employer's trade secret and confidential information).

Accordingly, if adjudicated liable for trade secret misappropriation, Defendants should be ordered to post notices to all of Groomore's customers of that judgment, or at a minimum, customers Defendants gained through accessing Plaintiff's Trade Secret Information.  This is the equitable result given Defendants pirated Plaintiff's customer information when building its business, and created false impressions concerning Plaintiff that, if left uncorrected, will continue to harm Plaintiff's standing in the mobile pet grooming community.

## III.    THE COURT SHOULD CALENDAR THE CASE FOR TRIAL ON LIABILITY TO DECIDE PLAINTIFF'S EQUITABLE ENTITLEMENT AGAINST DEFENDANTS

The Court previously vacated trial due to Defendant Groomore filing for bankruptcy two court days before trial was set to commence.  (Dkt. 193).  Following that ruling, Plaintiff sought relief from the automatic stay in the bankruptcy proceeding so the parties can proceed to trial in this case (as Plaintiff was and is prepared to do).  *In re Groomore, Inc.*, Case No.: 1:25-bk-10018 (B.R. D. Del. Jan. 9, 2025) (Bankr. Dkt. 31).

On February 12, 2025, the presiding judge in the bankruptcy proceeding, the Hon. Craig T. Goldblatt, issued a preliminary ruling that he would grant relief from the automatic stay for the "sole purpose of addressing the question of [Plaintiff]'s entitlement to injunctive relief."  (*See* Bankr. Dkt. 70, pp. 5-6, attached hereto as Exhibit A).  Judge Goldblatt cabined his denial of stay relief to calculating and

DOCUMENT PREPARED
ON RECYCLED PAPER

assigning damages only, finding such procedures are "reserved for the claims allowance process" in the bankruptcy proceedings.  (*Id.*)

The net effect of this relief is this Court may now "set the case for trial" on the questions of liability that will enable the Court to rule on Plaintiff's equitable entitlement.  (*Id.*)  In fact, Judge Goldblatt's preliminary ruling indicates this Court has already agreed to "set the case for trial within a reasonable period of time" if "[the Bankruptcy Court] were to lift the stay to permit the case to proceed against the debtor solely for the purpose of determining [Plaintiff]'s entitlement to injunctive relief."[7]  (*Id.*)

On February 19, 2025, Judge Goldblatt issued his order granting Plaintiff relief from the stay as contemplated in his preliminary ruling.  (*See* Bankr. Dkt. 80, attached hereto as Exhibit B).  That order lifts the stay "for the purpose of permitting the District Court to determine Moement's entitlement to injunctive relief for the purpose of protecting against ongoing or future violations of its rights, by GrooMore, with respect to Moement's trade secrets, intellectual property, and other similar interest."[8]  (*Id.* at p. 2).  Importantly, Judge Goldblatt reserved for this Court to decide all questions as to the proceedings necessary "to grant such forward-looking [injunctive] relief."  (*Id.*)

Yet proceedings to determine Plaintiff's equitable entitlement against both Lin and Groomore necessarily requires a trial on liability.  It is black letter law that a federal court cannot rule on permanent injunctive relief without the jury first making findings on liability for the underlying claims.  *Teutscher v. Woodson*, 835 F.3d 936, 944 (9th Cir. 2016) (in "a case where legal claims are tried by a jury and

---

[7] This Court also noted that it had spoken with Judge Goldblatt regarding his forthcoming order to lift the stay "as to [Plaintiff]'s claims against Groomore for injunctive relief, only."  (Dkt. 201, fn. 1).

[8] As explained *supra*, § II, the injunctive relief Plaintiff seeks against Groomore is necessary to "protect against any ongoing or future violations" of Plaintiff's interests in its trade secret, copyright, or related proprietary information.

equitable claims are tried by a judge, and [those] claims are based on the same facts, the trial judge must follow the jury's implicit or explicit factual determinations in deciding the equitable claims.").  This sequence is necessary to avoid impairing the jury's role and to ensure that the court's equitable rulings are consistent with the jury's factual findings.  *See Lytle v. Household Mfg., Inc.*, 494 U.S. 545, 550 (1990) (explaining Seventh Amendment implications).

Here, the jury must first resolve Defendants contested issues before the Court's equitable rulings issue.  In particular, Defendants (1) contest that MoeGo v.1 is a trade secret; (2) contest that Groomore ever possessed or made use of MoeGo v.1; (3) deny using Plaintiff's customer information to solicit customers; (4) disavow any affiliation to or connection with Zhang; and (5) deny knowledge that Zhang possessed MoeGo v.1 and was reprogramming it to run Groomore.[9]

Absent stipulation on these contested issues of liability, there is no conceivable way for the Court to rule on the injunctive relief without a trial.  Accordingly, Plaintiff respectfully requests the Court calendar the proceedings specified below to resolve this action as to Lin and rule on the injunctive relief as to Groomore.

## IV.   **NEXT STEPS**

The Court stated at the January 10, 2025 trial status conference that, should stay relief be granted, "[Plaintiff] can just tell [the Court]" and it "will put [the parties] back on calendar for the first available trial date that's convenient[]."  (Dkt. 196 (Transcript of January 10, 2025 proceedings).  Now that the Bankruptcy Court has modified the automatic stay, Plaintiff hopes to proceed to a trial at the earliest available date so the Court may decide Plaintiff's equitable entitlement.  To that end, Plaintiff will request at the March 14, 2025 Trial Readiness Conference the Court calendar the following proceedings:

---

[9] (*See* Bankr. Dkt. 37 (Plaintiff's motion to lift stay detailing the contested issues), pp. 16-18).

- A trial for all causes of action against Defendants Groomore and Lin, since all of causes of action support injunctive relief;
- As part of that trial, the jury will make findings on liability as to both Defendants but will be instructed to only assign damages for Defendant Lin (in compliance with Judge Goldblatt's order);
- The Court set a post-verdict hearing to rule on Plaintiff's equitable entitlement in light of the findings of liability made by the jury as to both Defendants; and
- The Court set a post-trial status conference for the parties to update on when a hearing to rule on Groomore's damages can occur (*i.e.*, once the Groomore bankruptcy is resolved).

In addition to these requests, Plaintiff will update the Court on the status of the expedited fact discovery the Court granted Plaintiff. (Dkt. 201).

*L.R. 11-6.1 Certification: the undersigned, counsel of record for Plaintiff, hereby certifies that this brief contains 4,925 words, which is under the limit set by local rule.*

Dated:  February 20, 2025

**NORTON ROSE FULBRIGHT US LLP**

By: */s/ Alex Scandroli*
      CHRISTOPHER PELHAM
      ALEX SCANDROLI

      Attorneys for Plaintiff
      MOEMENT, INC.

# EXHIBIT A

# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF DELAWARE

**CRAIG T. GOLDBLATT**
**JUDGE**



**824 N. MARKET STREET**
**WILMINGTON, DELAWARE**
**(302) 252-3832**

February 12, 2025

<u>**VIA CM/ECF**</u>

     Re:   *In re GrooMore, Inc.*, No. 25-10018

Dear Counsel:

     GrooMore, the debtor in this bankruptcy case, is a company that operates a software app for pet groomers.[1]  It filed this bankruptcy case on January 9, 2025 under subchapter V of chapter 11.  Subchapter V was enacted to facilitate the rehabilitation of small businesses.

     The debtor explained, in a declaration that was filed on the first day of the bankruptcy case, that it was a defendant in a lawsuit pending in the Central District of California, captioned *Moement, Inc. v. Groomore, et al.,* Case No. 2:22-cv-02871 (C.D. Cal.).  The plaintiff in that action accuses the debtor of, among other things, trade secret misappropriation and trademark infringement.[2]  The lawsuit also names

---

[1] D.I. 5 ¶ 5.  Debtor GrooMore, Inc. is referred to as the "debtor" or "GrooMore."

[2] The plaintiff, Moement, Inc., is referred to as "Moement."  The complaint in that action is docketed here at D.I. 38-1.

*In re GrooMore Inc.*, No. 25-10018
February 12, 2025
Page 2 of 6

a number of individuals.  The complaint seeks both an injunction against future violations as well as damages for alleged past violations.

On the debtor's telling of events, while it denies the claims asserted in the litigation, it concluded that in light of the cost of the litigation, it made more sense to remove the allegedly infringing aspects of its app than to continue litigating.  As the debtor's first-day declaration explains, "GrooMore has gone to great lengths to remedy the purported allegations of trade secret misappropriation and copyright infringement by Moement, including, but not limited to, re-coding GrooMore's backend code, changing GrooMore's app and website interface to assure that GrooMore was not using Moement's branding colors or theme styles, and purchasing new licensing/keys to ensure GrooMore has full ownership of the licenses it uses."[3]

The debtor's basic contention is that the actions it has taken have effectively mooted Moement's claims for injunctive relief.  The only issue left in the Moement litigation, the debtor argues, is the question of how much (if any) damages it owes on account of its alleged past violations.  Accordingly, the debtor asserts that it is entitled to seek to reorganize its business in bankruptcy.  On this theory, while Moement's damages claims against it will ultimately need to be liquidated, that is not an urgent matter.  Whatever claims Moement may have as a creditor will be paid, after GrooMore confirms a plan of reorganization, in accordance with the Bankruptcy Code's priority scheme and the terms of GrooMore's plan.

---

[3] D.I. 5 ¶ 13.

*In re GrooMore Inc.*, No. 25-10018
February 12, 2025
Page 3 of 6

That story is fine as far as it goes.  The problem with it, however, is that Moement disputes the assertion that GrooMore has fixed its app so that it no longer uses Moement's trade secrets and intellectual property (assuming, for this purpose, that it previously did).  And that is of critical importance.  Chapter 11 is intended to facilitate the reorganization of a business that is otherwise a sensible one but is saddled with the problem of too much debt.  On a post-petition basis, a debtor is required to conduct its business in compliance with applicable state and federal law.[4] And as much as the automatic stay in bankruptcy is intended to offer a debtor a breathing spell from the cost of litigation, it does not mean that a debtor can operate its business on a post-petition basis without having to face litigation (whether filed before or after the bankruptcy filing) alleging that the debtor's post-petition operations are unlawful.  Dealing with that kind of claim is simply a cost of doing business that must be borne even by a company in chapter 11.

Moement moved for relief from stay for the purpose of continuing its lawsuit in the Central District of California.[5]  It points out that the bankruptcy case was filed on the eve of trial and suggests that the bankruptcy filing is an improper effort to

---

[4] *See In re Cracked Egg, LLC*, 624 B.R. 84, 88 (Bankr. W.D. Pa. 2021) ("The mere fact that a debtor has filed for bankruptcy protection does not obviate the requirement that a debtor abide by applicable law."); 28 U.S.C. § 959(b) ("a debtor in possession, shall manage and operate the property in his possession as such trustee, receiver or manager according to the requirements of the valid laws of the State in which such property is situated, in the same manner that the owner or possessor thereof would be bound to do if in possession thereof.").

[5] D.I. 37.

*In re GrooMore Inc.*, No. 25-10018
February 12, 2025
Page 4 of 6

obtain strategic advantage in that lawsuit.[6]   And Moement takes issue with GrooMore's assertion that it has cleansed its operations of the use of Moement's trade secrets and intellectual property.

The Court held a hearing on the lift-stay motion on February 7, 2025.  At that hearing, the Court suggested that the question whether the debtor had cleansed itself of any alleged violation of Moement's trade secrets and intellectual property was something of a gating issue.  If so, the debtor was entitled to try to reorganize its business in bankruptcy.  In that event, the questions about Moement's claim arising out of alleged prepetition violations could be dealt with later.

If not, however, the debtor should not be entitled to operate its business on a post-petition basis in violation of Moement's rights.  And because that question had to be resolved by someone, the Court suggested that, in view of the fact that the District Court for the Central District of California had been presiding over that case for some time, it might make sense to lift the stay to allow that court to resolve this issue, so long as it could be done within a reasonable timeframe.[7]  If that court were

---

[6] *Id.* at 23-25.

[7] Under 11 U.S.C. § 362(d)(1), a court may grant stay relief for "cause."  That standard is commonly described as "flexible" and providing for a "case by case" assessment of the facts and circumstances.  *See generally, In re Rexene Prods. Co.*, 141 B.R. 574, 576 (Bankr. D. Del. 1992); *In re The SCO Group, Inc.*, 395 B.R. 852, 856 (Bankr. D. Del. 2007).  In addition, there is at least a question whether a lawsuit seeking only an injunction against post-petition violations is even subject to the automatic stay.  *See* 11 U.S.C. § 362(a).  Because, for the reasons described below, this Court is inclined to grant stay relief even if the stay applies, there is no need to address that question further.

*In re GrooMore Inc.*, No. 25-10018
February 12, 2025
Page 5 of 6

unable to address that dispute within a reasonable timeframe, however, the same issue could of course be resolved in an adversary proceeding in this Court.

The Moement litigation pending in the Central District of California is before Judge Wesley Hsu. At the February 7 hearing, the Court asked the parties if either party would object to the Court reaching out to Judge Hsu to puzzle through which court was in a better position to move forward to address the question whether GrooMore had cleansed itself of the alleged use of Moement's trade secrets and intellectual property. Both parties consented to that.

The undersigned judge spoke yesterday with Judge Hsu. Judge Hsu reported that he has familiarity with the case from having presided over it. He said that if this Court were to lift the stay to permit the case to proceed against the debtor solely for the purpose of determining Moement's entitlement to injunctive relief, he would be able to set the case for trial within a reasonable period of time. In light of that fact, this Court is inclined to grant Moement's motion for relief from stay, solely for the purpose of addressing the question of Moement's entitlement to injunctive relief.

The question of the damages (if any) owed to Moement by the debtor shall be reserved for the claims allowance process. Counsel for Moement suggested during the February 7 hearing that if the Court were to grant stay relief for this purpose, principles of judicial economy would counsel in favor of allowing the claim to be fully liquidated in the district court. The Court is inclined to deny that request. While it is not clear to the Court how much (if at all) the estate will benefit from not being required to litigate damages, to the extent that the debtor seeks to reserve that issue

*In re GrooMore Inc.*, No. 25-10018
February 12, 2025
Page 6 of 6

for the claims allowance process, the Court believes that the debtor is entitled to do so.

The Court is aware that the Moement litigation also involves claims against individuals.  Those claims are not subject to the automatic stay.[8]  As a matter of his own discretion, Judge Hsu stayed the claims against the individuals while awaiting a decision of this Court on Moement's motion for relief from stay.  To the extent this Court lifts the stay to permit the case to proceed as to Moement, the question of whether and how to proceed to trial against the individuals (including the question whether that trial should include an assessment of damages, if any, against the individuals) is a matter left for Judge Hsu in the exercise of his discretion.

For the foregoing reasons, the Court is inclined to grant Moement's motion in part, providing that the automatic stay shall be lifted solely with respect to its claim for injunctive relief.  If the parties believe that this letter ruling provides them with sufficient guidance, they are directed to settle a form of order so providing.  To the extent that either party believes that a further status conference is necessary, the parties may reach out to chambers to schedule such a status conference.

Sincerely,

Craig T. Goldblatt
United States Bankruptcy Judge

---

[8] *See McCartney v. Integra Nat'l Bank North*, 106 F.3d 506, 509 (3d Cir. 1997) (stating that it is a well-established principle that the automatic stay generally only stays an action against a "debtor").

# EXHIBIT B

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 (subchapter V) |
| GROOMORE, INC., | Case No. 25-10018 (CTG) |
| Debtor. | **Related Docket No. 37** |

## ORDER GRANTING RELIEF FROM STAY

In a letter opinion dated February 12, 2025, this Court explained that it intended to grant relief from stay for the purpose of permitting the U.S. District Court for the Central District of California to determine whether plaintiff Moement, Inc. was entitled to injunctive relief running against debtor GrooMore, Inc.[1] The letter opinion directed the parties to settle an order so providing, and stated that if the parties were unable to agree, that the Court would conduct a status conference to resolve any dispute.

The parties sought such a status conference, which the Court conducted today. The disagreement between the parties is over whether the stay should be lifted for the purpose of permitting Moement to seek any and all relief against debtor GrooMore that may be described as "injunctive," or should be more limited to preventing present or future violations of Moement's rights.[2]

---

[1] D.I. 70. The U.S. District Court for the Central District of California (the "District Court") is presiding over litigation between the parties that is captioned *Moement, Inc. v. GrooMore, et al.,* Case No. 2:22-cv-02871 (C.D. Cal.).

[2] Debtor GrooMore, Inc. is referred to as the "debtor" or "GrooMore." The plaintiff, Moement, Inc., is referred to as "Moement."

On the one hand, this Court does not believe it appropriate to micromanage the proceedings that may take place in the District Court. On the other, to the extent that Moement may seek relief that might be described as "injunctive" or "equitable," but is unrelated to protecting against either ongoing or future violations of Moement's rights in trade secrets, intellectual property, and other similar interests (such as, for example, seeking the remedy of disgorgement), this Court does not intend to lift the stay for that purpose.

One specific question on which the parties disagree is whether the District Court would be required to make a finding with respect to prior violations in order to grant forward-looking injunctive relief. So long as the relief sought is forward looking only, this Court will leave to the District Court all questions regarding the conduct of the proceeding that relate to whether or not to grant such forward-looking relief.

Accordingly, Moement's motion for relief from stay is GRANTED IN PART. The automatic stay provided in 11 U.S.C. § 362(a) is hereby lifted for the purpose of permitting the District Court to determine Moement's entitlement to injunctive relief for the purpose of protecting against ongoing or future violations of its rights, by GrooMore, with respect to Moement's trade secrets, intellectual property, and other similar interests. The automatic stay shall remain in place with respect to Moement's entitlement to compensation for any action GrooMore may have taken, prior to the filing of this bankruptcy case, that may have violated those rights.

Dated: February 19, 2025

_____
CRAIG T. GOLDBLATT
UNITED STATES BANKRUPTCY JUDGE

2