**LESOWITZ GEBELIN LLP**
Steven T. Gebelin (SBN 261507)
steven@lawbylg.com
8383 Wilshire Boulevard, Suite 800
Beverly Hills, CA 90211
Telephone: (310) 341-3072
Facsimile: (310) 341-3070
Attorneys for Defendants
*Groomore, Inc. and Chunliang Lin*

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| Moement, Inc.,<br>        Plaintiff,<br><br>v.<br><br>Groomore, Inc., *et al*.,<br>        Defendants. | Case No. 2:22-cv-02871-WLH-KS<br><br>[Assigned to the Hon. Wesley L. Hsu; Courtroom 9B]<br><br>**NOTICE OF FILING RELATING TO BANKRUPTCY AUTOMATIC STAY** |

　　　　**PLEASE BE ADVISED** that on March 4, 2025 Groomore, Inc., (the "Debtor") filed a letter request to the United States Bankruptcy Court for the District of Delaware in Debtor's Chapter 11 Case before The Honorable Craig T. Goldblatt, United States Bankruptcy Judge.

　　　　In its letter, Debtor Groomore requested a status conference related to the Bankruptcy Court's February 19, 2025 order granting Moement, Inc. limited relief from the automatic stay (the "Order") due to statements made by Plaintiff Moement, Inc. ("Moement") in its February 20, 2025 filing in this Court following the Bankruptcy Court's Order regarding the relief it intends to seek against Debtor in this action.

　　　　Debtor requested that such conference in the Bankruptcy action occur prior to the currently scheduled status conference in this case, and alternatively requested that the status conference be

held in connection with a previously scheduled status conference required by Section 1188 of the Bankruptcy Code, which is set for hearing on March 10, 2025 at 10:00 a.m. (ET).

A true and correct copy of the Debtor's letter to the Bankruptcy Court (the "Letter") is attached hereto as **Exhibit A**.

**PLEASE BE FURTHER ADVISED** that within the Letter Debtor asserted that "Moement's requests in the [February 20, 2025] Notice related to the California District Court holding a full liability trial and seeking many forms of injunctive relief that are not based on protecting Moement against ongoing or future violations are contrary to the Order [of the Bankruptcy Court] and are intentional violations of the automatic stay by Moement." Debtor reserved "all rights to seek sanctions and other relief against Moement for violation of the automatic stay," but noted that it had already "expended significant time and expense addressing Moement's request for relief from the automatic stay."

Dated: March 4, 2025          _____/s/ Steven T. Gebelin_____
                              Steven Gebelin
                              Lesowitz Gebelin LLP,
                              Counsel for Defendants *Groomore, Inc. and Chunliang Lin*

1

## **<u>EXHIBIT A</u>**

2

Debtor's March 4, 2025 Letter to The Honorable Craig T. Goldblatt in the Chapter 11 Case

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28



<strong>Richard W. Riley</strong><br/>
Counsel<br/>
824 North Market Street<br/>
Suite 800<br/>
Wilmington, DE 19801<br/>
Direct: 302.327.6790<br/>
Fax: 201.488.5556<br/>
rriley@pashmanstein.com

March 4, 2025

<u>**Via ECF**</u>
The Honorable Craig T. Goldblatt
United States Bankruptcy Court
For the District of Delaware
824 North Market Street
3rd Floor, Courtroom 7
Wilmington, DE 19801

Re: <em>In re Groomore, Inc., Case No. 25-10018 (CTG)</em>

Dear Judge Goldblatt:

This firm represents the Debtor, Groomore, Inc. (the "<u>**Debtor**</u>"), in the above-captioned matter. I write to bring to the Court's attention a filing by Moement, Inc. ("<u>**Moement**</u>") in its lawsuit against the Debtor captioned <em>Moement, Inc. v. Groomore, Inc., et al.</em>, No. 2:22-CV-02871-WLH (C.D. Cal.) (the "<u>**Trade Secret Litigation**</u>") pending in the United States District Court for the Central District of California (the "<u>**California District Court**</u>") and to request the scheduling of a status conference regarding such filing.

On January 24, 2025, Moement filed the <em>Motion of Moement, Inc. for Entry of an Order Granting Stay Relief and Related Relief</em> [D.I. 37] (the "<u>**Motion**</u>"). On February 12, 2025, the Court entered its letter opinion regarding the Motion [D.I. 70] (the "<u>**Opinion**</u>"). In the Opinion, the Court stated, "that the question whether the debtor had cleansed itself of any alleged violation of Moement's trade secrets and intellectual property was something of a gating issue." The Court concluded that the Court "is inclined to grant Moement's motion in part, providing that the automatic stay shall be lifted solely with respect to its claim for injunctive relief." The Opinion directed the parties to settle an order and stated that if the parties were unable to agree on such an order, that the Court would conduct a status conference to resolve any dispute. When the parties could not reach agreement on a form of order, the Court scheduled a status conference on February 19, 2025 (the "<u>**Status Conference**</u>"). Following the Status Conference, the Court entered its February 19, 2025 <em>Order Granting Relief from Stay</em> [D.I. 80] (the "<u>**Order**</u>"). A copy of the Order is attached hereto as <u>**Exhibit A**</u>. Pursuant to the Order, the Court ruled that:

> "[t]he automatic stay provided in 11 U.S.C. § 362(a) is hereby lifted for the purpose of permitting the District Court to determine Moement's entitlement to injunctive relief for the purpose of protecting against ongoing or future violations of its rights, by GrooMore, with respect to Moement's trade secrets, intellectual property, and other similar interests.



March 4, 2025
Page 2

*See* Exhibit A at p. 2.

The Court further ruled in the Order that:

> "to the extent that Moement may seek relief that might be described as "injunctive" or "equitable," but is unrelated to protecting against either ongoing or future violations of Moement's rights in trade secrets, intellectual property, and other similar interests (such as, for example, seeking the remedy of disgorgement), this Court does not intend to lift the stay for that purpose."

*Id*.

On February 20, 2025 (one day after the Status Conference and the entry of the Order), Moement filed *Plaintiff Moement, Inc.'s Notice of Intent to Seek Injunctive Relief and Request to Calendar Trial* [D.I. 202] (the "**Notice**") in the Trade Secret Litigation. A copy of the Notice is attached hereto as **Exhibit B**.

In the Notice, Moement is requesting a full trial on liability against the Debtor. For example, Moement states that the "net effect" of Your Honor's Order is that "[the California District Court] may now "set the case for trial" on the questions of liability that will enable the Court to rule on Plaintiff's equitable entitlement." *See* Exhibit B at page 17. Moement further states that:

> "proceedings to determine Plaintiff's equitable entitlement against both Lin and Groomore necessarily requires a trial on liability. It is black letter law that a federal court cannot rule on permanent injunctive relief without the jury first making findings on liability for the underlying claims." (citations omitted)

*Id*.

In the Notice, Moement also states that it will request that the California District Court calendar, among other things:

> "• A trial for all causes of action against Defendants Groomore and Lin, since all of causes of action support injunctive relief;
>
> • As part of that trial, the jury will make findings on liability as to both Defendants but will be instructed to only assign damages for Defendant Lin (in compliance with Judge Goldblatt's order)."

At the Status Conference, Your Honor had an exchange with Christopher Pelham, Moement's trial counsel in the Trade Secret Litigation, about whether a full liability trial against the Debtor was necessary, and Your Honor stated "[t]hat doesn't make any sense to me at all":



March 4, 2025
Page 3

MR. PELHAM: Understood, Your Honor.

And all I will submit there is that I don't think that Judge Hsu can grant that equitable relief without determining liability, and I think that's the sticking point. I think that Judge Hsu will need to determine if there's a basis –

THE COURT: That doesn't make any sense to me at all, Mr. Pelham.

Let me ask you this question. Imagine that you -- there was, in fact, a violation that took place in the past, for which damages would be available, but there is no ongoing -- there was a complete cleanse and no ongoing violation. Then why do you need to decide whether there was or wasn't a violation in order to determine whether the cleanse was successful, such that the claim for injunctive relief has been mooted by the change?

MR. PELHAM: Because I believe, Your Honor, that that's a gating issue. The District Court must first determine whether or not the act, the defendant's act that led to the violation of the status quo occurred in the first instance. I think, here, Judge Hsu would have to determine whether or not GrooMore did take intellectual property from Moement; and then, if it did, whether or not Moement is entitled to have relief in the form of --

THE COURT: All right.

MR. PELHAM: -- (indiscernible)

THE COURT: So, look, I'm going to grant stay relief for the purpose of determining whether injunctive relief is or isn't appropriate, and how Judge Hsu wants to go about making that decision is up to Judge Hsu.

*See* Transcript of Status Conference, attached hereto as **Exhibit C** (the "**Transcript**") at pages 10-11.

In addition, in the Notice, Moement states it will request various forms of injunctive relief from the Court that go well beyond the relief from the automatic stay granted by the Order, and that are based on alleged past acts of misappropriation or unfair competition. For example, on pages 3-7 of the Notice, Moement states it will request, among other injunctive relief:

"1. Within 10 days of the verdict, Defendants Groomore and Lin … are ordered to post notice[s] on Groomore's website, mobile application, and social media forums of the findings from any verdict against Defendants at trial."



> "4. Within 30 days of the order, Defendants Groomore and Lin identify to Plaintiff in writing any customer of either Plaintiff or Groomore whom Defendants communicated with or otherwise contacted through accessing or possessing Plaintiff's Trade Secret Information."

> "5. Within 30 days of the order, Defendants Groomore and Lin provide an accounting to Plaintiff in a sworn declaration listing any and all tangible or intangible benefit they, or any persons acting on their behalf, have gained or derived from having access to or possession of Plaintiff's Trade Secret Information, including but not limited to monetary benefits, revenues, profits, interests, costs savings, research and development, customer accounts, technical know-how, business or investment opportunities (including any future business or investment opportunities stemming from the use of Plaintiff's Trade Secret Information), deals, contracts, employment offers, or derivative works created or modeled off of Plaintiff's Trade Secret Information"

> "9. Within 30 days of the order, Defendants Groomore and Lin … are to provide Plaintiff an inventory of all devices, including but not limited to laptops, tablets, and smartphones, whether used for work or personal purposes, that contain (or formerly contained any materials or information belonging to Plaintiff (without regard for whether this information or materials is a trade secret)."

*See* Exhibit B at pages 3-7.

The Debtor acknowledges that the Court stated in the Order:

> "So long as the relief sought is forward looking only, this Court will leave to the District Court all questions regarding the conduct of the proceeding that relate to whether or not to grant such forward-looking relief."

*See* Order at page 2.

However, the Court also stated in the Order:

> "On the one hand, this Court does not believe it appropriate to micromanage the proceedings that may take place in the District Court. On the other, to the extent that Moement may seek relief that might be described as "injunctive" or "equitable," but is unrelated to protecting against either ongoing or future violations of Moement's rights in trade secrets, intellectual property, and other similar interests (such as, for example, seeking the remedy of disgorgement), this Court does not intend to lift the stay for that purpose."

*Id.*



March 4, 2025
Page 5

Moement's request for the California District Court to schedule a full liability trial against the Debtor and many of the requested forms of injunctive relief are clearly not forward-looking relief. Moreover, many of the requested forms of "injunctive remedies" are unrelated to protecting Moement from ongoing or future violations of Moement's rights in trade secrets and intellectual property.

It is the Debtor's position that pursuant to the Opinion, the Status Conference and the Order, the Court did not intend to lift the automatic stay, and the Court has not lifted the automatic stay, for the California District Court to hold a full liability trial against the Debtor. In addition, the Debtor's position is that Court did not lift the automatic stay for the California District Court to grant injunctive relief for alleged past acts by the Debtors and that is not meant to protect Moement against ongoing or future violations by the Debtor. Moreover, it is the Debtor's position that Moement's requests in the Notice related to the California District Court holding a full liability trial and seeking many forms of injunctive relief that are not based on protecting Moement against ongoing or future violations are contrary to the Order and are intentional violations of the automatic stay by Moement. The Debtor reserves all rights to seek sanctions and other relief against Moement for violation of the automatic stay. However, the Debtor has already expended significant time and expense addressing Moement's request for relief from the automatic stay and additional motion practice before the Court related to Moement's Notice filed in the Trade Secret Litigation will only add to such time and expense.

It is my understanding that there is Trial Readiness Conference scheduled for March 14, 2025 in the Trade Secret Litigation and that Moement intends to make the requests in the Notice at that conference.

The Debtor therefore respectfully request that the Court schedule a further status conference prior to March 14, 2025 to address Moement's Notice filed in the Trade Secret Litigation. Alternatively, the Status Conference required by Section 1188 of the Bankruptcy Code is already scheduled for March 10, 2025 at 10:00 a.m. (ET), and the Debtor respectfully requests that Moement's Notice filed in the Trade Secret Litigation be addressed at the Status Conference.

Respectfully submitted,

*/s/ Richard W. Riley*

Richard W. Riley

cc (via e-mail): Bryan Hall, counsel to Moement
                Christopher Pelham, counsel to Moement
                Jeffery Schwendeman, Subchapter V Trustee
                Jonathan W. Lipshie, Office of the U.S. Trustee

**Exhibit A**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 (subchapter V) |
| GROOMORE, INC., | Case No. 25-10018 (CTG) |
| Debtor. | **Related Docket No. 37** |

## <u>ORDER GRANTING RELIEF FROM STAY</u>

In a letter opinion dated February 12, 2025, this Court explained that it intended to grant relief from stay for the purpose of permitting the U.S. District Court for the Central District of California to determine whether plaintiff Moement, Inc. was entitled to injunctive relief running against debtor GrooMore, Inc.[1] The letter opinion directed the parties to settle an order so providing, and stated that if the parties were unable to agree, that the Court would conduct a status conference to resolve any dispute.

The parties sought such a status conference, which the Court conducted today. The disagreement between the parties is over whether the stay should be lifted for the purpose of permitting Moement to seek any and all relief against debtor GrooMore that may be described as "injunctive," or should be more limited to preventing present or future violations of Moement's rights.[2]

---

[1] D.I. 70. The U.S. District Court for the Central District of California (the "District Court") is presiding over litigation between the parties that is captioned *Moement, Inc. v. GrooMore, et al.,* Case No. 2:22-cv-02871 (C.D. Cal.).

[2] Debtor GrooMore, Inc. is referred to as the "debtor" or "GrooMore." The plaintiff, Moement, Inc., is referred to as "Moement."

On the one hand, this Court does not believe it appropriate to micromanage the proceedings that may take place in the District Court. On the other, to the extent that Moement may seek relief that might be described as "injunctive" or "equitable," but is unrelated to protecting against either ongoing or future violations of Moement's rights in trade secrets, intellectual property, and other similar interests (such as, for example, seeking the remedy of disgorgement), this Court does not intend to lift the stay for that purpose.

One specific question on which the parties disagree is whether the District Court would be required to make a finding with respect to prior violations in order to grant forward-looking injunctive relief. So long as the relief sought is forward looking only, this Court will leave to the District Court all questions regarding the conduct of the proceeding that relate to whether or not to grant such forward-looking relief.

Accordingly, Moement's motion for relief from stay is GRANTED IN PART. The automatic stay provided in 11 U.S.C. § 362(a) is hereby lifted for the purpose of permitting the District Court to determine Moement's entitlement to injunctive relief for the purpose of protecting against ongoing or future violations of its rights, by GrooMore, with respect to Moement's trade secrets, intellectual property, and other similar interests. The automatic stay shall remain in place with respect to Moement's entitlement to compensation for any action GrooMore may have taken, prior to the filing of this bankruptcy case, that may have violated those rights.

Dated: February 19, 2025

CRAIG T. GOLDBLATT
UNITED STATES BANKRUPTCY JUDGE

2

**Exhibit B**

CHRISTOPHER PELHAM (BAR NO. 241068)
ALEX SCANDROLI (BAR NO. 345278)
**NORTON ROSE FULBRIGHT US LLP**
555 South Flower Street
Forty-First Floor
Los Angeles, California 90071
Telephone: (213) 892-9200
Facsimile: (213) 892-9494
christopher.pelham@nortonrosefulbright.com
alex.scandroli@nortonrosefulbright.com

Attorneys for Plaintiff
MOEMENT, INC.

IN THE UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MOEMENT, INC., a Delaware corporation, <br><br> Plaintiff, <br><br> v. <br><br> GROOMORE, INC., a Delaware corporation, CHUNLIANG LIN, an individual, JIE ZHANG, an individual, and SONGYUN LIU, an individual, <br><br> Defendant. | Case No. 2:22-cv-02871-WLH (JEMx) <br><br> *[Assigned to the Hon. Wesley L. Hsu; Courtroom 9B]* <br><br> **PLAINTIFF MOEMENT, INC.'S NOTICE OF INTENT TO SEEK INJUNCTIVE RELIEF AND REQUEST TO CALENDAR TRIAL** <br><br> Complaint Filed: April 29, 2022 <br> Pretrial Conference: Nov. 22, 2024 <br> Trial Status Conference: Jan. 10, 2025 <br> Trial Readiness Conference: March 14, 2025 |

DOCUMENT PREPARED
ON RECYCLED PAPER

Plaintiff Moement, Inc. ("Plaintiff" or "Moement") hereby notifies the Court and Defendants Groomore, Inc. ("Groomore") and Chunliang Lin ("Lin") (together, "Defendants") of its intent to request certain forms of injunctive relief upon findings that Defendants are liable for (1) Violation of Defend Trade Secrets Act ("DTSA"), 18 U.S.C. § 1831, *et seq.* (the "Trade Secret Claim"); (2) Copyright Infringement (the "Copyright Claim"); (3) Breach of Contract (as to Lin); and (4) Violation of California Bus. & Prof. Code, § 17200 (the "Unfair Competition Claim").

The injunctive relief described in this notice is preliminary and this notice is not intended to be binding on Plaintiff. Plaintiff expressly reserves the right to modify, amend, withdraw, or add forms of injunctive relief upon its formal submission to the Court for injunctive relief at trial or as otherwise ordered.

## NOTICE OF INTENT TO SEEK INJUNCTIVE RELIEF AND REQUEST TO CALENDAR TRIAL

### I. FORMS OF INJUNCTIVE RELIEF SOUGHT

As prayed for in Plaintiff's Complaint, (Dkt. 1, pp. 19-20), Plaintiff seeks forward looking injunctive remedies against Defendants, and "any persons in active concert or participation with Defendant[s]," to protect against future violations of Plaintiff's rights. In particular, the Complaint seeks to enjoin the following:

- Defendants are prohibited from "obtaining, retaining, using transmitting, or disseminating, or disclosing the Moement Trade Secrets."

- Defendants must immediately "return all [Plaintiff's] intangible materials and information that remain in Defendants' possession, custody, or control."

- Defendants must "identify, and turn over, any property in their possession, custody, or control containing or reflecting the "Moement Trade Secrets," including hard copy documents or

DOCUMENT PREPARED ON RECYCLED PAPER

any form of electronic storage media."

- Defendants must "identify any other persons, entities, or locations not within their possession, custody, or control, to which Defendants have transmitted, disseminated, disclosed, or stored any Moement Trade Secrets."

- Defendants must "render a full and complete accounting to [Plaintiff] for their profits, gains, advantages, or the value of business opportunities received from" the acts of copyright infringement.

- Other appropriate injunctive relief the Court deems appropriate.

Plaintiff will be entitled to the injunctive remedies prayed for upon prevailing on the Trade Secret Claim,[1] and by extension, the Unfair Competition Claim. To prepare for that contingency, and promote trial economy, Plaintiff now specifies the injunctive order[s] it will request from the Court upon a verdict for these claims:

| Injunctive Relief on Trade Secret Claim | Injunctive Relief on Unfair Comp. Claim |
| --- | --- |
| 1. Defendants Groomore and Lin, and their employees, agents, directors, officers, servants, and those persons in active concert or participation with them, are immediately enjoined from: using, disclosing, exploiting, transmitting, copying, or accessing, either directly or indirectly, any of | 1. Within 10 days of the verdict, Defendants Groomore and Lin, and their employees, agents, directors, officers, servants, and those persons in active concert or participation with them, are ordered to post notice[s] on Groomore's website, mobile application, and social media forums of |

---

[1] The equitable remedies sought under the Copyright Claim are the same as the Trade Secret Claim because the trade-secret-in-dispute is also Plaintiff's copyright. References hereafter to the remedies sought in connection with the Trade Secret Claim are intended to encompass the Copyright Claim. As for breach, specific performance of Lin's contractual duty to return or destroy Plaintiff's confidential information is likewise encompassed by the injunctive remedies sought in connection with the Trade Secret Claim. *See E\*Trade Financial Corp. v. Eaton*, 305 F. Supp. 3d 1029, 1040 (D. Ariz. 2018) (granting specific performance to return or destroy confidential information after finding contract imposed this duty on employee).

| | |
|---|---|
| Plaintiff's confidential, proprietary, and/or Trade Secret Information (as further defined below) in any way, regardless of where stored or copied, and are enjoined from disclosing or revealing to other persons, parties, or entities any information learned of or derived from Defendants' possession, custody, or control of such materials. | the findings from any verdict against Defendants at trial. |
| 2. Within 30 days of the order, Defendants Groomore and Lin, and their employees, agents, directors, officers, servants, and those persons in active concert or participation with them, certify to Plaintiff in a sworn declaration that no aspects of Groomore implements, contains, or makes reference to information derived from Plaintiff's Trade Secret Information or any other confidential information or technologies belonging to Plaintiff. | 1.a (in the alternative to 1) Within 10 days of the verdict, Defendants Groomore and Lin, and their employees, agents, directors, officers, servants, and those persons in active concert or participation with them, are ordered to notify all Groomore customers whom Defendants communicated with or otherwise contacted through accessing or possessing Plaintiff's Trade Secret Information of the findings from any verdict against Defendants at trial. |
| 3. Within 30 days of the order, Defendants Groomore and Lin, and their employees, agents, directors, officers, servants, and those persons in active concert or participation with them, certify to Plaintiff in a sworn declaration that any materials or information in Defendants' possession relating to Plaintiff's Trade Secret Information, or any other confidential information and/or technologies belonging to Plaintiff, have either been returned to Plaintiff or destroyed in a manner that makes said materials no longer in the possession of Defendants. | 3. Plaintiff is immediately permitted to post notice[s] on its website, mobile application, and private social media forums, of the findings from any verdict against Defendants. |
| 4. Within 30 days of the order, Defendants Groomore and Lin, and | 4. Within 30 days of the order, Defendants Groomore and Lin identify |

DOCUMENT PREPARED ON RECYCLED PAPER

PLAINTIFF'S NOTICE OF INTENT TO SEEK INJUNCTIVE RELIEF AND REQUEST TO CALENDAR TRIAL

| | |
|---|---|
| their employees, agents, directors, officers, servants, and those persons in active concert or participation with them, certify to Plaintiff in a sworn declaration that they have requested Defendant Jie Zhang shut down the Github account registered to user "JZ099" such that Plaintiff's Trade Secret Information stored or being stored in that account is no longer accessible to any person. | to Plaintiff in writing any customer of either Plaintiff or Groomore whom Defendants communicated with or otherwise contacted through accessing or possessing Plaintiff's Trade Secret Information. |
| 5. Within 30 days of the order, Defendants Groomore and Lin, and their employees, agents, directors, officers, servants, and those persons in active concert or participation with them, certify to Plaintiff in a sworn declaration that they have requested any third-party contractors or entities in receipt of Plaintiff's Trade Secret Information, or other confidential information and technologies, to either return such materials to Plaintiff or certify they have destroyed those materials in a manner that makes them no longer in the possession of these third-parties, and that Defendants have requested these third-parties provide a certification to Defendants confirming the return or destruction. | 5. Within 30 days of the order, Defendants Groomore and Lin provide an accounting to Plaintiff in a sworn declaration listing any and all tangible or intangible benefit they, or any persons acting on their behalf, have gained or derived from having access to or possession of Plaintiff's Trade Secret Information, including but not limited to monetary benefits, revenues, profits, interests, costs savings, research and development, customer accounts, technical know how, business or investment opportunities (including any future business or investment opportunities stemming from the use of Plaintiff's Trade Secret Information), deals, contracts, employment offers, or derivative works created or modeled off of Plaintiff's Trade Secret Information |
| 6. Within 30 days of the order, Defendants Groomore and Lin, and their employees, agents, directors, officers, servants, and those persons in active concert or participation with them, certify to Plaintiff in a sworn declaration that they have searched all local servers, external repositories, cloud storage, backup systems, and any | |

PLAINTIFF'S NOTICE OF INTENT TO SEEK INJUNCTIVE RELIEF AND REQUEST TO CALENDAR TRIAL

| | |
|---|---|
| 1 | offsite or "Shadow IT" repositories, used by Defendants to store any of its information, and that such locations do not (or no longer) contain any information or materials belonging to Plaintiff (without regard for whether this information or materials is a trade secret). |
| 7 | 7. Within 30 days of the order, Defendants Groomore and Lin, and their employees, agents, directors, officers, servants, and those persons in active concert or participation with them, certify to Plaintiff in a sworn declaration that they have searched all employees' devices, including but not limited to smartphones, tablets, and laptops, who may have had access to materials or information belonging to Plaintiff, and such devices do not (or no longer) contain any information or materials belonging to Plaintiff (without regard for whether this information or materials is a trade secret). |
| 18 | 8. Within 30 days of the order, Defendants Groomore and Lin, and their employees, agents, directors, officers, servants, and those persons in active concert or participation with them, are to provide Plaintiff an inventory of all local servers, external repositories, cloud storage, backup systems, or any offsite or "Shadow IT" repositories, that contain (or formerly contained any materials or information belonging to Plaintiff (without regard for whether this information or materials is a trade secret). |

DOCUMENT PREPARED ON RECYCLED PAPER

PLAINTIFF'S NOTICE OF INTENT TO SEEK INJUNCTIVE RELIEF AND REQUEST TO CALENDAR TRIAL

9. Within 30 days of the order, Defendants Groomore and Lin, and their employees, agents, directors, officers, servants, and those persons in active concert or participation with them, are to provide Plaintiff an inventory of all devices, including but not limited to laptops, tablets, and smartphones, whether used for work or personal purposes, that contain (or formerly contained any materials or information belonging to Plaintiff (without regard for whether this information or materials is a trade secret).

10. Within 30 days of the order, Defendants Groomore and Lin, and their employees, agents, directors, officers, servants, and those persons in active concert or participation with them, are to provide Plaintiff a chain of custody log for any materials or information belonging to Plaintiff (without regard for whether this information or materials is a trade secret), which documents how these materials were returned to Plaintiff or otherwise destroyed.

11. Defendants Groomore and Lin, and their employees, agents, directors, officers, servants, and those persons in active concert or participation with them, are to provide Plaintiff notice if any information or materials belonging to Plaintiff is subsequently discovered to still be in the possession of Defendants, or third-parties affiliated with Defendants, after the 30-day

PLAINTIFF'S NOTICE OF INTENT TO SEEK INJUNCTIVE RELIEF AND REQUEST TO CALENDAR TRIAL

compliance period of this order has lapsed.

## II.  GROUNDS FOR PLAINTIFF'S REQUESTED INJUNCTIVE RELIEF

In this action, the Trade Secret Claim, Breach of Contract Claim, and Unfair Competition Claim provide for Plaintiff's equitable entitlement and, as explained below, the facts and law support the specific injunctive orders Plaintiff will request.

### A.  Factual Grounds for Plaintiff's Requested Injunctive Relief

The evidence at trial will show the necessity for Plaintiff's requested injunctive relief. This is a trade secret dispute between two software companies in the mobile pet grooming industry. (Dkt. 1 (Complaint), ¶¶ 3, 11). Plaintiff's software is MoeGo and Defendants' software is Groomore, launched by Defendant Lin (Plaintiff's former employee). (*Id.*) Both MoeGo and Groomore help mobile pet grooming businesses make appointments, map routes to customer homes, and allow businesses to communication with customers through instant messages, among other functions. (*Id.* at ¶¶ 11, 23.)

At trial, Plaintiff will prove Defendant Groomore and Defendant Lin worked together with Lin's former co-worker and defaulted co-defendant, Jie Zhang ("Zhang"), to misappropriate Plaintiff's (1) proprietary and bespoke source code that runs MoeGo's technologies; (2) other confidential and proprietary materials belonging to Plaintiff; and (3) Plaintiff's compiled customer information (hereafter, "Plaintiff's Trade Secret Information"). (*See* Dkt. 172, Plaintiff's Trial Brief setting forth evidence in support of misappropriation). In turn, Lin and Zhang used Plaintiff's Trade Secret Information to launch Groomore and solicit MoeGo's customers, thus allowing Groomore to unjustly earn a profit and compete with Plaintiff's mobile pet grooming platform. (*Id.*)

PLAINTIFF'S NOTICE OF INTENT TO SEEK INJUNCTIVE RELIEF AND REQUEST TO CALENDAR TRIAL

In support, Plaintiff will present the jury with irrefutable evidence that Plaintiff's Trade Secret Information appears in aspects of Groomore's technologies, and that either Lin or Zhang stored said information on local servers or third-party repositories which Plaintiff does not own or control. In particular, Plaintiff's technicians found an access token for a Github account with a handle of "jz099," the same initials as Zhang. (*See* Trial Exhibit Ex. 159 (access token found in Groomore's front end code)).[2] Plaintiff's technicians used that access token to access the GitHub account and saw that the user of the Github had the email address "zhang.jije@163.com." (*See* Trial Exhibit 178 (showing first commit log for "jz099" Github in June 2020 by account user zhang.jije@163.com)). Plaintiff knew this to be Zhang's email address, not least because it is the same email address Zhang listed on his employment records when he worked for Plaintiff. (*See* Trial Exhibit 122 (employment records showing Zhang's email)).

Once inside, Plaintiff's technicians observed that Zhang's GitHub account was established a few days after Zhang separated from Plaintiff. (*See* Trial Exhibit 178). Stored within Zhang's Github account, Plaintiff found Plaintiff's Trade Secret Information, including (1) a clone copy of its backend source code that runs MoeGo and; (2) Plaintiff's customer information. (*See* Trial Exhibit 149 (customer data found in Github), and Trial Exhibit 161 (comparisons of code found in Github)). When comparing the code in the Github account with Plaintiff's bespoke source code, the only significant difference is key phrases and words in the Github code were being changed to remove references to MoeGo and instead reference Groomore. (*Id.*) As to Plaintiff's customer information, Plaintiff will present evidence that Defendants solicited MoeGo's customers in the early days of Groomore using this information. In other words, direct evidence that Defendants

---

[2] Trial exhibits were lodged with the Court on January 8, 2025, and submitted to chambers on a thumb drive that same day.

- 9 -    2:22-cv-02871-WLH

DOCUMENT PREPARED ON RECYCLED PAPER

possessed and used Plaintiff's Trade Secret Information will be presented at trial.[3]

Further, it is uncontested that Lin made use of other proprietary and licensed materials belonging to Plaintiff when launching Groomore. For example, Lin admits that when Groomore was nascent, it could not qualify for its own Google Maps license, so Lin simply used the one assigned to MoeGo. (*See* Dkt. 142 (attaching testimony)). Plaintiff did not give Lin permission to use Plaintiff's Google Maps API key. And while this key is not a trade secret (since Plaintiff did not program it, it was assigned by Google, and Plaintiff stored it in the MoeGo frontend source code), regardless, Defendants' possession of the key proves that Lin did not return or destroy all materials belonging to Plaintiff upon his exit from the company (as he was required to do by contract). (*See* Trial Exhibits 22, 24, and 26 (Lin's contracts with Plaintiff)). Thus, injunctive relief to ensure that Defendants and its affiliated third-parties no longer have access to <u>*any*</u> of Plaintiff's confidential or proprietary materials is necessary in this case.

On these facts, should Plaintiff prevail on the Trade Secret Claim, an order from the Court requiring Defendants certify to Plaintiff the following is appropriate: (1) certifying Defendants have returned or destroyed all of Plaintiff's information or materials in their possession; (2) certifying Defendants have requested any third-parties in receipt of Plaintiff's information or materials to return of destroy; (3) certifying that any of Defendants' local servers or external repositories that housed or continues to house Plaintiff's information and materials have been shut down; and (4) certifying that no aspect of Groomore's technology, contains, makes use of, or references Plaintiff's Trade Secret Information.

This is the upshot of the injunctive relief Plaintiff seeks in connection with its Trade Secret Claim, (*see supra*, **§ I** (remedies chart)), and these forms of equitable

---

[3] The Court has already ruled this evidence admissible in denying Defendants' motion *in limine* to exclude evidence obtained from Zhang's Github and granting Plaintiff's motion *in limine* to admit that same evidence. (Dkt. 175).

remedies are routinely ordered upon liability for trade secret misappropriation to prevent future harm to the trade-secret-plaintiff (as explained below).

### B. Legal Grounds for Plaintiff's Requested Injunctive Relief

Broadly speaking, the injunctive relief Plaintiff seeks can be characterized as: (1) certifications relating to Defendants' possession of Plaintiff's property; (2) accounting relating to the misappropriation of Plaintiff's Trade Secret Information; and (3) disclosures to customers regarding the misappropriation of Plaintiff's Trade Secret. The case law allows for these forward-looking remedies should Plaintiff prevail on the Trade Secret Claim, and by extension, the Unfair Competition Claim.

On that latter point, success on the Trade Secret Claim also spells success on the Unfair Competition Claim (which is to be decided by the Court).[4] That is because a violation for trade secret misappropriation satisfies the unlawful prong of California's unfair competition framework. *DJO Glob., Inc. v. Glader*, 2016 WL 11622009, at *8 (S.D. Cal. Dec. 22, 2016) ("it is well-settled that misappropriation of trade secrets in violation of [California's Uniform Trade Secret Act ("CUTSA")] can form the predicate for an unfair competition claim under the [California's unfair competition law].").[5]

Accordingly, the injunctive remedies allowed for under both claims are available to Plaintiff and are explored herein.

---

[4] The California Supreme Court has held there is no right to a jury trial on an Unfair Competition claim. *Nationwide Biweekly Administration, Inc. v. Sup. Ct. of Alameda County*, 9 Cal. App. 5th 279, 334 (2020). Plaintiff therefore submitted this claim to the Court in recognition that a verdict for trade secret misappropriation would provide the necessary findings for the Court to favorably rule on the claim. (Dkt. 167).

[5] Plaintiff intends to try its DTSA claim and CUTSA claim as one claim given they turn on the same elements of proof. *See Genasys Inc. v. Vector Acoustics, LLC*, 638 F. Supp. 3d 1135, 1150-51 (S.D. Cal. Nov. 1, 2022) (explaining same). Strictly speaking, it is CUTSA that will satisfy the unlawful prong of the Unfair Competition Claim. *Id.* For purposes of this notice, Plaintiff intends the term "Trade Secret Claim" to also reference CUTSA.

DOCUMENT PREPARED ON RECYCLED PAPER

(1)  *Certifications Relating to Defendants' Possession of Plaintiff's Property*

The plain text of DTSA contemplates that a trade-secret-plaintiff is entitled to any equitable relief necessary to prevent the actual or threatened misappropriation of trade secrets.  18 U.S.C.A. § 1836(a)(b)(3).  To achieve this, the District Court's injunctive authority includes ordering affirmative actions be taken by the trade-secret-defendant to prevent future injury to the plaintiff, such as certifying the return or destruction of misappropriated information still in the defendant's possession.  S*ee Masimo Corp. v. True Wearables, Inc.*, 2022 WL 2173073, at  3 (C.D. Cal. May 17, 2022) (explaining, upon proof of misappropriation, the most practical way of protecting trade secret information is to order the trade-secret-defendant return such information to plaintiff).

Where, as here, a competitor is proven to have possessed the trade secret, this type of relief is necessary to prevent 'irreparable harm' given a defendant still in possession of a trade secret makes it all the more probable it will continue to use the secret to its advantage.  *See Pac. Aerospace & Elec., Inc. v. Taylor,* 295 F. Supp. 2d 1188, 1198 (E.D. Wash. 2003) (explaining irreparable harm necessarily established when the defendant has trade secret information).  With this in mind, it is not reasonably disputable that Plaintiff is entitled to certifications from Defendants that they are no longer misappropriating any aspect of Plaintiff's source code to run Groomore's technologies.  Yet, in this case, the scope of injunctive relief goes beyond merely ordering Defendants confirm that Plaintiff's source code is no longer in use.

More specifically, the evidence in support of liability on the Trade Secret Claim will show that Defendants wrongfully accessed (and then used) other confidential materials belonging to Plaintiff when Defendants absconded with MoeGo's source code.  This includes confidential and proprietary information such

DOCUMENT PREPARED
ON RECYCLED PAPER

as Plaintiff's customer information and licensed keys.[6]  It is therefore proper to order Defendants to certify the return or destruction of any and all records or documents, whether original, copied, or computerized, within their possession which belong to Plaintiff.  *See*, *e.g.*, *Fire Security Electronics & Comm. Inc. v. Nye*, 2024 WL 620813, at *8 (D. Ariz. Feb. 14, 2024) (ordering return of both confidential information and trade secret information upon proof of misappropriation); *Shakey's USA, Inc. v. Tutto's Pizza Corp.*, 2009 WL 3211027, at *7 (E.D. Cal. Sept. 30, 2009) (ordering return of materials related to the trade secret, such as business practices, know how, and manuals or policies).

Further, the evidence will show that purported third-parties, such as Zhang, possessed Plaintiff's Trade Secret Information and stored said information on third-party repositories (though Defendants claim to have no control or ownership of this account).  It also stands to reason that contractors and third-parties which Defendants claim to have hired may have had access to such information when working with Defendants' technologies.  Thus, it is appropriate to order Defendants to certify their affiliates, contractors, employees, agents, or any other persons acting on their behalf, including Zhang, have scrubbed Plaintiff's materials from their servers, or alternatively, have shut down any repositories that housed or continue to house those materials.

Only through such injunctive orders will the "actual or threatened misappropriation of trade secrets" caused by Defendants' possession of Plaintiff's confidential and trade secret information be eliminated.  18 U.S.C.A. § 1836(a)(b)(3).

///

///

---

[6] This evidence will be dispositive on the breach claim as it proves Lin failed to comply with his confidentiality obligations (in addition to breaching his non-compete.

DOCUMENT PREPARED ON RECYCLED PAPER

(2)  *Accounting Relating to Defendants' Misappropriation of Plaintiff's Trade Secret Information*

In addition to ordering certifications, Defendants should be ordered to account for any direct or indirect benefit they obtained from possessing Plaintiff's Trade Secret Information, including any customer they solicited or services through having such information.

Generally, when the misappropriating conduct involves solicitation of a former employer's customers using the employer's information, this is sufficient to establish irreparable harm for purposes of injunctive relief.  *See*, *e.g.*, *Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d 832, 841 (9th Cir. 2001) ("[e]vidence of threatened loss of prospective customers or goodwill certainly supports a finding of the possibility of irreparable harm"); *MAI Systems Corp. v. Peal Comput., Inc.*, 991 F.2d 511, 521 (9th Cir. 1993) (soliciting of customers of former firm constituted trade secret misappropriation); *Richmond Techs., Inc. v. Aumtech Bus. Sols.*, 2011 WL 2607158, at *22 (N.D. Cal. July 1, 2011) ("to the extent that Defendants are using Plaintiff's trade secrets to compete with Plaintiff and to encourage Plaintiff's customers to switch their accounts ... the Court agrees that Plaintiff has shown a likelihood of irreparable harm.").

Here, the accounting relief is not intended solely to calculate Defendants' restitution or disgorgement, which would overlap with Plaintiff's compensatory damages claim.  *Oculus Innovative Sciences, Inc. v. Prodinnv, S.A. de C.V.*, 2010 WL 4774659, at *5 (N.D. Cal. Nov. 16, 2010) (explaining the overlap between restitution under California's unfair competition law and money damages for trade secret claim).  Rather, this accounting is required to ensure that Plaintiff can (1) identify third-parties that may have had access to Plaintiff's Trade Secret Information; and (2) notify both former customers and/or prospective customers that Defendants solicited or serviced while misappropriating Plaintiff's Trade Secret Information.

On the latter point, Plaintiff requires these notices (whether they come from Plaintiff or from Defendants) to remediate the reputational harm and loss of goodwill caused by Defendants' misappropriating acts and misrepresentations concerning those acts.

### (3)    *Disclosures to Customers Regarding Defendants' Misconduct*

Plaintiff is entitled to injunctive remedies in the form of disclosures to customers regarding Defendants' misconduct because Defendants' misappropriating acts have misled customers in the pet grooming market.

Under California's unfair competition law, the state legislature "intended. . . to permit courts to enjoin ongoing wrongful business conduct in whatever context such activity might occur." *Barquis v. Merchants Collection Ass'n*, 7 Cal. App. 3d 94, 111, 101 CR 745, 757; *see also Committee on Children's Television, Inc. v. General Foods Corp.*, 35 Cal. App. 3d 197, 210 (1983). California courts have even entered mandatory injunctions under §§ 17200 and 17500—usually frowned upon—to make up for past misleading statements. *See Consumers Union of U.S., Inc. v. Alta-Dena Certified Dairy*, 4 Cal. App. 4th 963, 972-974 (1992).

For example, *In Consumers Union of U.S., Inc. v. Alta-Dena Certified Dairy*, the court of appeals affirmed a trial court's order of injunction that required a dairy found liable for false advertising to correct prior misrepresentations to consumers regarding the effects of milk pasteurization. 4 Cal. App. 4th 963, 972-974 (1992). *Alta-Dena* held the court's equitable authority derived from California's unfair competition law includes the power to order the liable party to make affirmative disclosures to consumers. *Id.*

Here, while not a case of false advertising, inherent in a finding that Defendants misappropriated Plaintiff's Trade Secret Information is a finding that Groomore has mislead its customers. In particular, Groomore has held itself out as a competitor to MoeGo that offers separate technologies and services that provide for a different user experience than MoeGo. In truth, at least for a period of time,

- 15 -        2:22-cv-02871-WLH

Groomore ran on MoeGo's technologies.  Further, both prior to and during this litigation, Defendants have publicly represented on social media forums for mobile pet groomers that there is no merit to Plaintiff's claims.  In both senses, a remedy at law would be insufficient to fully disgorge Defendants of the benefit of their misconduct because its customers are entitled to know the truth concerning Groomore's unscrupulous and unfair business practices (*i.e.*, theft of a former employer's trade secret and confidential information).

Accordingly, if adjudicated liable for trade secret misappropriation, Defendants should be ordered to post notices to all of Groomore's customers of that judgment, or at a minimum, customers Defendants gained through accessing Plaintiff's Trade Secret Information.  This is the equitable result given Defendants pirated Plaintiff's customer information when building its business, and created false impressions concerning Plaintiff that, if left uncorrected, will continue to harm Plaintiff's standing in the mobile pet grooming community.

## III.  THE COURT SHOULD CALENDAR THE CASE FOR TRIAL ON LIABILITY TO DECIDE PLAINTIFF'S EQUITABLE ENTITLEMENT AGAINST DEFENDANTS

The Court previously vacated trial due to Defendant Groomore filing for bankruptcy two court days before trial was set to commence.  (Dkt. 193).  Following that ruling, Plaintiff sought relief from the automatic stay in the bankruptcy proceeding so the parties can proceed to trial in this case (as Plaintiff was and is prepared to do).  *In re Groomore, Inc.*, Case No.: 1:25-bk-10018 (B.R. D. Del. Jan. 9, 2025) (Bankr. Dkt. 31).

On February 12, 2025, the presiding judge in the bankruptcy proceeding, the Hon. Craig T. Goldblatt, issued a preliminary ruling that he would grant relief from the automatic stay for the "sole purpose of addressing the question of [Plaintiff]'s entitlement to injunctive relief."  (*See* Bankr. Dkt. 70, pp. 5-6, attached hereto as Exhibit A).  Judge Goldblatt cabined his denial of stay relief to calculating and

DOCUMENT PREPARED ON RECYCLED PAPER

assigning damages only, finding such procedures are "reserved for the claims
allowance process" in the bankruptcy proceedings.  (*Id.*)

The net effect of this relief is this Court may now "set the case for trial" on
the questions of liability that will enable the Court to rule on Plaintiff's equitable
entitlement.  (*Id.*)  In fact, Judge Goldblatt's preliminary ruling indicates this Court
has already agreed to "set the case for trial within a reasonable period of time" if
"[the Bankruptcy Court] were to lift the stay to permit the case to proceed against
the debtor solely for the purpose of determining [Plaintiff]'s entitlement to
injunctive relief."[7]  (*Id.*)

On February 19, 2025, Judge Goldblatt issued his order granting Plaintiff
relief from the stay as contemplated in his preliminary ruling.  (*See* Bankr. Dkt. 80,
attached hereto as Exhibit B).  That order lifts the stay "for the purpose of
permitting the District Court to determine Moement's entitlement to injunctive
relief for the purpose of protecting against ongoing or future violations of its rights,
by GrooMore, with respect to Moement's trade secrets, intellectual property, and
other similar interest."[8]  (*Id.* at p. 2).  Importantly, Judge Goldblatt reserved for this
Court to decide all questions as to the proceedings necessary "to grant such
forward-looking [injunctive] relief."  (*Id.*)

Yet proceedings to determine Plaintiff's equitable entitlement against both
Lin and Groomore necessarily requires a trial on liability.  It is black letter law that
a federal court cannot rule on permanent injunctive relief without the jury first
making findings on liability for the underlying claims.  *Teutscher v. Woodson*, 835
F.3d 936, 944 (9th Cir. 2016) (in "a case where legal claims are tried by a jury and

---

[7] This Court also noted that it had spoken with Judge Goldblatt regarding his
forthcoming order to lift the stay "as to [Plaintiff]'s claims against Groomore for
injunctive relief, only."  (Dkt. 201, fn. 1).

[8] As explained *supra*, § II, the injunctive relief Plaintiff seeks against Groomore is
necessary to "protect against any ongoing or future violations" of Plaintiff's
interests in its trade secret, copyright, or related proprietary information.

- 17 -          2:22-cv-02871-WLH

DOCUMENT PREPARED
ON RECYCLED PAPER

equitable claims are tried by a judge, and [those] claims are based on the same facts, the trial judge must follow the jury's implicit or explicit factual determinations in deciding the equitable claims.").  This sequence is necessary to avoid impairing the jury's role and to ensure that the court's equitable rulings are consistent with the jury's factual findings.  *See Lytle v. Household Mfg., Inc.*, 494 U.S. 545, 550 (1990) (explaining Seventh Amendment implications).

Here, the jury must first resolve Defendants contested issues before the Court's equitable rulings issue.  In particular, Defendants (1) contest that MoeGo v.1 is a trade secret; (2) contest that Groomore ever possessed or made use of MoeGo v.1; (3) deny using Plaintiff's customer information to solicit customers; (4) disavow any affiliation to or connection with Zhang; and (5) deny knowledge that Zhang possessed MoeGo v.1 and was reprogramming it to run Groomore.[9]

Absent stipulation on these contested issues of liability, there is no conceivable way for the Court to rule on the injunctive relief without a trial.  Accordingly, Plaintiff respectfully requests the Court calendar the proceedings specified below to resolve this action as to Lin and rule on the injunctive relief as to Groomore.

## IV.  <u>NEXT STEPS</u>

The Court stated at the January 10, 2025 trial status conference that, should stay relief be granted, "[Plaintiff] can just tell [the Court]" and it "will put [the parties] back on calendar for the first available trial date that's convenient[]."  (Dkt. 196 (Transcript of January 10, 2025 proceedings).  Now that the Bankruptcy Court has modified the automatic stay, Plaintiff hopes to proceed to a trial at the earliest available date so the Court may decide Plaintiff's equitable entitlement.  To that end, Plaintiff will request at the March 14, 2025 Trial Readiness Conference the Court calendar the following proceedings:

---

[9] (*See* Bankr. Dkt. 37 (Plaintiff's motion to lift stay detailing the contested issues), pp. 16-18).

- 18 -       2:22-cv-02871-WLH

DOCUMENT PREPARED ON RECYCLED PAPER

- A trial for all causes of action against Defendants Groomore and Lin, since all of causes of action support injunctive relief;
- As part of that trial, the jury will make findings on liability as to both Defendants but will be instructed to only assign damages for Defendant Lin (in compliance with Judge Goldblatt's order);
- The Court set a post-verdict hearing to rule on Plaintiff's equitable entitlement in light of the findings of liability made by the jury as to both Defendants; and
- The Court set a post-trial status conference for the parties to update on when a hearing to rule on Groomore's damages can occur (*i.e.*, once the Groomore bankruptcy is resolved).

In addition to these requests, Plaintiff will update the Court on the status of the expedited fact discovery the Court granted Plaintiff. (Dkt. 201).

*L.R. 11-6.1 Certification: the undersigned, counsel of record for Plaintiff, hereby certifies that this brief contains 4,925 words, which is under the limit set by local rule.*

Dated: February 20, 2025

**NORTON ROSE FULBRIGHT US LLP**

By: */s/ Alex Scandroli*
    CHRISTOPHER PELHAM
    ALEX SCANDROLI

    Attorneys for Plaintiff
    MOEMENT, INC.

DOCUMENT PREPARED ON RECYCLED PAPER

EXHIBIT A

# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF DELAWARE

**CRAIG T. GOLDBLATT**
**JUDGE**



**824 N. MARKET STREET**
**WILMINGTON, DELAWARE**
**(302) 252-3832**

February 12, 2025

**VIA CM/ECF**

      Re:    *In re GrooMore, Inc.*, No. 25-10018

Dear Counsel:

      GrooMore, the debtor in this bankruptcy case, is a company that operates a software app for pet groomers.[1]  It filed this bankruptcy case on January 9, 2025 under subchapter V of chapter 11.  Subchapter V was enacted to facilitate the rehabilitation of small businesses.

      The debtor explained, in a declaration that was filed on the first day of the bankruptcy case, that it was a defendant in a lawsuit pending in the Central District of California, captioned *Moement, Inc. v. Groomore, et al.,* Case No. 2:22-cv-02871 (C.D. Cal.).  The plaintiff in that action accuses the debtor of, among other things, trade secret misappropriation and trademark infringement.[2]  The lawsuit also names

---

[1] D.I. 5 ¶ 5.  Debtor GrooMore, Inc. is referred to as the "debtor" or "GrooMore."

[2] The plaintiff, Moement, Inc., is referred to as "Moement."  The complaint in that action is docketed here at D.I. 38-1.

*In re GrooMore Inc.*, No. 25-10018
February 12, 2025
Page 2 of 6

a number of individuals. The complaint seeks both an injunction against future violations as well as damages for alleged past violations.

On the debtor's telling of events, while it denies the claims asserted in the litigation, it concluded that in light of the cost of the litigation, it made more sense to remove the allegedly infringing aspects of its app than to continue litigating. As the debtor's first-day declaration explains, "GrooMore has gone to great lengths to remedy the purported allegations of trade secret misappropriation and copyright infringement by Moement, including, but not limited to, re-coding GrooMore's backend code, changing GrooMore's app and website interface to assure that GrooMore was not using Moement's branding colors or theme styles, and purchasing new licensing/keys to ensure GrooMore has full ownership of the licenses it uses."[3]

The debtor's basic contention is that the actions it has taken have effectively mooted Moement's claims for injunctive relief. The only issue left in the Moement litigation, the debtor argues, is the question of how much (if any) damages it owes on account of its alleged past violations. Accordingly, the debtor asserts that it is entitled to seek to reorganize its business in bankruptcy. On this theory, while Moement's damages claims against it will ultimately need to be liquidated, that is not an urgent matter. Whatever claims Moement may have as a creditor will be paid, after GrooMore confirms a plan of reorganization, in accordance with the Bankruptcy Code's priority scheme and the terms of GrooMore's plan.

---

[3] D.I. 5 ¶ 13.

*In re GrooMore Inc.*, No. 25-10018
February 12, 2025
Page 3 of 6

That story is fine as far as it goes. The problem with it, however, is that Moement disputes the assertion that GrooMore has fixed its app so that it no longer uses Moement's trade secrets and intellectual property (assuming, for this purpose, that it previously did). And that is of critical importance. Chapter 11 is intended to facilitate the reorganization of a business that is otherwise a sensible one but is saddled with the problem of too much debt. On a post-petition basis, a debtor is required to conduct its business in compliance with applicable state and federal law.[4] And as much as the automatic stay in bankruptcy is intended to offer a debtor a breathing spell from the cost of litigation, it does not mean that a debtor can operate its business on a post-petition basis without having to face litigation (whether filed before or after the bankruptcy filing) alleging that the debtor's post-petition operations are unlawful. Dealing with that kind of claim is simply a cost of doing business that must be borne even by a company in chapter 11.

Moement moved for relief from stay for the purpose of continuing its lawsuit in the Central District of California.[5] It points out that the bankruptcy case was filed on the eve of trial and suggests that the bankruptcy filing is an improper effort to

---

[4] *See In re Cracked Egg, LLC*, 624 B.R. 84, 88 (Bankr. W.D. Pa. 2021) ("The mere fact that a debtor has filed for bankruptcy protection does not obviate the requirement that a debtor abide by applicable law."); 28 U.S.C. § 959(b) ("a debtor in possession, shall manage and operate the property in his possession as such trustee, receiver or manager according to the requirements of the valid laws of the State in which such property is situated, in the same manner that the owner or possessor thereof would be bound to do if in possession thereof.").

[5] D.I. 37.

*In re GrooMore Inc.*, No. 25-10018
February 12, 2025
Page 4 of 6

obtain strategic advantage in that lawsuit.[6]   And Moement takes issue with GrooMore's assertion that it has cleansed its operations of the use of Moement's trade secrets and intellectual property.

The Court held a hearing on the lift-stay motion on February 7, 2025.  At that hearing, the Court suggested that the question whether the debtor had cleansed itself of any alleged violation of Moement's trade secrets and intellectual property was something of a gating issue.  If so, the debtor was entitled to try to reorganize its business in bankruptcy.  In that event, the questions about Moement's claim arising out of alleged prepetition violations could be dealt with later.

If not, however, the debtor should not be entitled to operate its business on a post-petition basis in violation of Moement's rights.  And because that question had to be resolved by someone, the Court suggested that, in view of the fact that the District Court for the Central District of California had been presiding over that case for some time, it might make sense to lift the stay to allow that court to resolve this issue, so long as it could be done within a reasonable timeframe.[7]  If that court were

---

[6] *Id.* at 23-25.

[7] Under 11 U.S.C. § 362(d)(1), a court may grant stay relief for "cause."  That standard is commonly described as "flexible" and providing for a "case by case" assessment of the facts and circumstances.  *See generally, In re Rexene Prods. Co.*, 141 B.R. 574, 576 (Bankr. D. Del. 1992); *In re The SCO Group, Inc.*, 395 B.R. 852, 856 (Bankr. D. Del. 2007).  In addition, there is at least a question whether a lawsuit seeking only an injunction against post-petition violations is even subject to the automatic stay.  *See* 11 U.S.C. § 362(a).  Because, for the reasons described below, this Court is inclined to grant stay relief even if the stay applies, there is no need to address that question further.

*In re GrooMore Inc.*, No. 25-10018
February 12, 2025
Page 5 of 6

unable to address that dispute within a reasonable timeframe, however, the same issue could of course be resolved in an adversary proceeding in this Court.

The Moement litigation pending in the Central District of California is before Judge Wesley Hsu. At the February 7 hearing, the Court asked the parties if either party would object to the Court reaching out to Judge Hsu to puzzle through which court was in a better position to move forward to address the question whether GrooMore had cleansed itself of the alleged use of Moement's trade secrets and intellectual property. Both parties consented to that.

The undersigned judge spoke yesterday with Judge Hsu. Judge Hsu reported that he has familiarity with the case from having presided over it. He said that if this Court were to lift the stay to permit the case to proceed against the debtor solely for the purpose of determining Moement's entitlement to injunctive relief, he would be able to set the case for trial within a reasonable period of time. In light of that fact, this Court is inclined to grant Moement's motion for relief from stay, solely for the purpose of addressing the question of Moement's entitlement to injunctive relief.

The question of the damages (if any) owed to Moement by the debtor shall be reserved for the claims allowance process. Counsel for Moement suggested during the February 7 hearing that if the Court were to grant stay relief for this purpose, principles of judicial economy would counsel in favor of allowing the claim to be fully liquidated in the district court. The Court is inclined to deny that request. While it is not clear to the Court how much (if at all) the estate will benefit from not being required to litigate damages, to the extent that the debtor seeks to reserve that issue

*In re GrooMore Inc.*, No. 25-10018
February 12, 2025
Page 6 of 6

for the claims allowance process, the Court believes that the debtor is entitled to do so.

The Court is aware that the Moement litigation also involves claims against individuals. Those claims are not subject to the automatic stay.[8] As a matter of his own discretion, Judge Hsu stayed the claims against the individuals while awaiting a decision of this Court on Moement's motion for relief from stay. To the extent this Court lifts the stay to permit the case to proceed as to Moement, the question of whether and how to proceed to trial against the individuals (including the question whether that trial should include an assessment of damages, if any, against the individuals) is a matter left for Judge Hsu in the exercise of his discretion.

For the foregoing reasons, the Court is inclined to grant Moement's motion in part, providing that the automatic stay shall be lifted solely with respect to its claim for injunctive relief. If the parties believe that this letter ruling provides them with sufficient guidance, they are directed to settle a form of order so providing. To the extent that either party believes that a further status conference is necessary, the parties may reach out to chambers to schedule such a status conference.

Sincerely,

Craig T. Goldblatt
United States Bankruptcy Judge

---

[8] *See McCartney v. Integra Nat'l Bank North*, 106 F.3d 506, 509 (3d Cir. 1997) (stating that it is a well-established principle that the automatic stay generally only stays an action against a "debtor").

# EXHIBIT B

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 (subchapter V) |
| GROOMORE, INC., | Case No. 25-10018 (CTG) |
| Debtor. | **Related Docket No. 37** |

## ORDER GRANTING RELIEF FROM STAY

In a letter opinion dated February 12, 2025, this Court explained that it intended to grant relief from stay for the purpose of permitting the U.S. District Court for the Central District of California to determine whether plaintiff Moement, Inc. was entitled to injunctive relief running against debtor GrooMore, Inc.[1]  The letter opinion directed the parties to settle an order so providing, and stated that if the parties were unable to agree, that the Court would conduct a status conference to resolve any dispute.

The parties sought such a status conference, which the Court conducted today. The disagreement between the parties is over whether the stay should be lifted for the purpose of permitting Moement to seek any and all relief against debtor GrooMore that may be described as "injunctive," or should be more limited to preventing present or future violations of Moement's rights.[2]

---

[1] D.I. 70.  The U.S. District Court for the Central District of California (the "District Court") is presiding over litigation between the parties that is captioned *Moement, Inc. v. GrooMore, et al.,* Case No. 2:22-cv-02871 (C.D. Cal.).

[2] Debtor GrooMore, Inc. is referred to as the "debtor" or "GrooMore."  The plaintiff, Moement, Inc., is referred to as "Moement."

On the one hand, this Court does not believe it appropriate to micromanage the proceedings that may take place in the District Court. On the other, to the extent that Moement may seek relief that might be described as "injunctive" or "equitable," but is unrelated to protecting against either ongoing or future violations of Moement's rights in trade secrets, intellectual property, and other similar interests (such as, for example, seeking the remedy of disgorgement), this Court does not intend to lift the stay for that purpose.

One specific question on which the parties disagree is whether the District Court would be required to make a finding with respect to prior violations in order to grant forward-looking injunctive relief. So long as the relief sought is forward looking only, this Court will leave to the District Court all questions regarding the conduct of the proceeding that relate to whether or not to grant such forward-looking relief.

Accordingly, Moement's motion for relief from stay is GRANTED IN PART. The automatic stay provided in 11 U.S.C. § 362(a) is hereby lifted for the purpose of permitting the District Court to determine Moement's entitlement to injunctive relief for the purpose of protecting against ongoing or future violations of its rights, by GrooMore, with respect to Moement's trade secrets, intellectual property, and other similar interests. The automatic stay shall remain in place with respect to Moement's entitlement to compensation for any action GrooMore may have taken, prior to the filing of this bankruptcy case, that may have violated those rights.

Dated: February 19, 2025

CRAIG T. GOLDBLATT
UNITED STATES BANKRUPTCY JUDGE

2

**Exhibit C**

UNITED STATES BANKRUPTCY COURT
DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| | . | Chapter 11 (Subchapter V) |
| In Re: | . | |
| | . | Case No. 25-10018(CTG) |
| GrooMore, Inc., | . | |
| | . | 824 Market Street |
| | . | Wilmington, Delaware 19801 |
| Debtor. | . | |
| . . . . . . . . . . . . . . . | | Wednesday, February 19, 2025 |

TRANSCRIPT OF STATUS CONFERENCE
BEFORE THE HONORABLE CRAIG T. GOLDBLATT
UNITED STATES BANKRUPTCY JUDGE

APPEARANCES VIA ZOOM:  (On the Record)

For the Debtor:              Richard W. Riley, Esq.
                             PASHMAN STEIN WALDER HAYDEN, PC
                             1007 North Orange Street
                             Fourth Floor, Suite 183
                             Wilmington, Delaware 19801

                             Steven Gebelin, Esq.
                             LESOWITZ GEBELIN, LLP
                             8383 Wilshire Blvd #520
                             Beverly Hills, California 90211

For Moement, Inc.:           Bryan J. Hall, Esq.
                             CHIPMAN, BROWN, CICERO
                              & COLE, LLP
                             Hercules Plaza
                             1313 North Market Street
                             Suite 5400
                             Wilmington, Delaware 19801


(Appearances Continued)

Audio Operator:              Electronically Recorded
                             by Alyce Doody, ECRO

Transcription Company:       Reliable
                             1007 N. Orange Street
                             Wilmington, Delaware 19801
                             (302)654-8080
                             Email:  gmatthews@reliable-co.com


Proceedings recorded by electronic sound recording,
transcript produced by transcription service.

```
                    APPEARANCES VIA ZOOM:  (On the Record - Continued)


For Moement, Inc.:              Christopher Pelham, Esq.
                                NORTON ROSE FULBRIGHT US, LLP
                                555 South Flower Street
                                41st Floor
                                Los Angeles, California 90071
```

1          (Proceedings commence at 10:00 a.m.)

2          THE COURT:  Good morning, all.  This is Judge

3     Goldblatt.  We're on the record in In Re GrooMore, which is

4     Case Number 25-10018.

5          We are proceeding this morning by way of Zoom, so

6     usual Zoom rules are in effect.

7          Happy to hear from counsel with respect to whatever

8     issues there are with respect to giving effect to the ruling

9     that I've issued, in light of the conversation that I had

10    with Judge Hsu.

11         So who would like to be heard?

12         MR. RILEY:  Richard Riley for GrooMore.

13         We called this status conference, along with

14    counsel for Moement, because we, of course, read your

15    decision and we just could not come to an agreement on the

16    proposed form of order.

17         THE COURT:  Okay.

18         MR. RILEY:  And I think that the basic problem is,

19    when we, debtor's counsel, read your decision, we believe

20    it's limited to the question of whether GrooMore has cleansed

21    itself of the trade secrets and other Moement, you know,

22    intellectual property.

23         THE COURT:  Uh-huh.

24         MR. RILEY:  -- where I believe Moement -- and

25    Moement can speak to this -- but I believe Moement believes

1    it's more broad than that and is just relief from stay to

2    pursue injunctive relief.

3            THE COURT:  What's the difference between those

4    things, mister -- in your view, Mr. Riley, what's the

5    difference between those two things.  I mean, isn't

6    injunctive relief just about whether, on a go forward basis,

7    you are complying with respecting their rights on a go

8    forward basis?

9            MR. RILEY:  If that is -- if they will concede that

10   fact, I don't think there is a difference, but they're not

11   conceding it.  They think their injunctive relief is much

12   broader.  And the other thing they believe is that we might

13   have to determine liability for infringement in order to

14   reach the injunctive relief, which would basically be a full-

15   blown trial.

16           I think -- and I'll -- and then I'll turn it over

17   in a moment.  I think the way the debtors look at this is

18   it's -- and I don't know about your conversation with Judge

19   Hsu.  But we believe it's a more limited relief from stay,

20   some type of summary proceeding or --

21           THE COURT:  Well, I --

22           MR. RILEY:  -- some type of --

23           THE COURT:  Look --

24           MR. RILEY:  -- preliminary --

25           THE COURT:  -- I don't intend --

1          MR. RILEY:  -- injunctive --

2          THE COURT:  -- to tell Judge Hsu how to conduct the

3     proceedings before him.  I intend to lift the stay for the

4     purpose of determining whether, on a go forward basis, the

5     debtor's current operations do or don't interfere with

6     GrooMore's rights.

7          I think -- the way I think about that, since an

8     injunction is just about go forward relief and not about what

9     happened in the past, I think these are two sides of the same

10    coin.  But if Mr. Hall thinks otherwise, let me have him

11    explain to me what I'm missing.

12         MR. HALL:  Thank you, Your Honor.  Bryan Hall from

13    Chipman Brown on behalf of Moement.

14         Your Honor, Moement sought two forms of relief in

15    the District Court of California:  A money judgment and a

16    declaratory judgment on injunctive relief.  And our

17    understanding of Your Honor's ruling is that the money

18    judgment will remain stayed for now and that the declaratory

19    judgment can proceed.

20         THE COURT:  So slow down.  To the extent what you

21    want is a declaration that is separate from the question of

22    the current state of the business, I don't intend to lift the

23    stay for that purpose.  I intend to lift it only with respect

24    to your actual entitlement to injunctive relief, which is

25    limited to the question:  Today, is the business running in a

```
 1    way that violates your rights or not?  To the extent, the day

 2    before the petition, it did, that remains subject to the

 3    automatic stay.  And so I don't really know what a

 4    "declaration" is here, independent from the injunction.  What

 5    am I -- what am I missing?

 6             MR. HALL:  Your Honor, I think what we're all

 7    describe -- and let me separate two things.

 8             I think our conversation with GrooMore's counsel,

 9    they seem to be contemplating a more interim or limited type

10    of hearing.  And my understanding is that, you know, this

11    case was filed two business days before trial, that a

12    bifurcated trial is what was going to go forward.  So I think

13    we're really just kind of talking about what -- you know --

14             THE COURT:  I understand.

15             MR. HALL:  -- what exactly that's --

16             THE COURT:  I understand.  And look, the scope of

17    lifting the stay is a decision for me.  Once I issue that

18    order and the stay is lifted, the shape and manner of the

19    proceeding before Judge Hsu is up to him, not me.  I don't

20    think I ought to be micro-managing, other than saying the

21    stay is in place as to this and it's lifted as to that.

22    That's my judgment about what's appropriate as a matter of

23    bankruptcy law.

24             As a matter of how he conducts his hearing, it

25    seems to me it would be inappropriate for me to say yes, and
```

1  there will be four depositions and the trial will -- each

2  side will have four hours to present your case.  That's not -

3  - that's his business, not mine.

4       So help me, though, with the dispute.  So I

5  understand sort of what you were saying about the

6  declaration.  I'm inclined to say it -- the stay shall be

7  lifted with respect to the entitlement to an injunction as to

8  the current operations of the debtor's business.  And I'm

9  happy to -- if this is too hard, I'm happy to write that

10  order myself.

11       MR. HALL:  I think -- if I may, Your

12  Honor.

13       THE COURT:  Yeah, you may.  If there's something --

14  if there's something I'm missing, I want -- the reason I

15  wrote what I did about the ability to have this hearing is

16  that I appreciate -- you all know the case better than I do,

17  and there may be things that I'm missing, so I'm very happy

18  to try to understand what I might be missing and do my best

19  to get it right.

20       MR. HALL:  If I could, Your Honor, I'd just like to

21  put a slightly finer point on the injunctive relief that

22  Moement is seeking.

23       So it is seeking to, essentially, enjoin the debtor

24  from disclosing, disseminating, transmitting, or using its

25  trade secrets.  It's also asking that the debtor -- to the

1    extent the debtor has or is found to have possession of

2    Moement's intellectual property, that it return that and that

3    it identify that property, and that it defend -- it's

4    identify any person or entity where the information, the

5    intellectual property has been transmitted.

6          So I do think that's consistent with what is

7    happening today, in terms of what the debtor has, what the

8    debtor is or is not using, and what the debtor, you know, has

9    access to, in terms of the infringement claims that Moement

10   has asserted.

11         THE COURT:  All right.  Look, I think I understand

12   what you're saying.  I'm -- I think I'm inclined to go write

13   an order that reflects -- my -- I -- what I think and I will

14   try to convey is that, to me, the central question is whether

15   the current operations are violative of your rights.

16         As to -- and so, on the one -- look, I think that

17   I'm inclined to write this in a way that leaves some

18   discretion to Judge Hsu to figure out whether it's necessary

19   and appropriate to entertain those claims for relief, to

20   ensure that you are not currently violating -- to ensure that

21   your rights aren't currently being violated or not.  I think

22   whether that's appropriate is, itself, a judgment.

23         To the extent anyone is inclined to issue an order

24   on account of alleged past violations, I don't think that's

25   appropriate.  To the extent the order is crafted for the

| | |
|---|---|
| 1 | purpose of protecting you against ongoing violations, I think |
| 2 | that Judge Hsu should have the latitude to do that, and I'll |
| 3 | try to convey that in the order I'll craft. |
| 4 | Does that make sense to the -- I mean, look, I -- |
| 5 | this has been helpful, in that I do appreciate, in a way I |
| 6 | didn't when I got on the bench, what the sticking points are. |
| 7 | But I think my -- the way I'm thinking about it is it's not |
| 8 | that nuanced, but I think I'm happy just to try to do my best |
| 9 | to express it and to leave it in Judge Hsu's hands |
| 10 | thereafter. |
| 11 | Anyone else want the opportunity to be heard? |
| 12 | MR. PELHAM:  I apologize, Your Honor.  This is |
| 13 | Christopher Pelham.  I'm the trial counsel for Moement in the |
| 14 | case before Judge Hsu. |
| 15 | I think the confusion here, Your Honor, is that, |
| 16 | either Judge Hsu will hold a hearing on a preliminary |
| 17 | injunction to determine whether, on a preliminary basis, |
| 18 | before a jury (indiscernible) its verdict, there can be |
| 19 | relief, as Your Honor discussed; or, if the trial should be |
| 20 | bifurcated, so that there is that finding of liability that |
| 21 | provides the basis for the (indiscernible) with the damages |
| 22 | at trial being heard later. |
| 23 | THE COURT:  Right.  And I don't -- |
| 24 | MR. PELHAM:  (Indiscernible) |
| 25 | THE COURT:  I don't think lifting the stay solely |

1    for the purpose of considering a preliminary injunction -- I

2    think, to the extent he wants to grant a permanent injunction

3    -- and he -- again, how he wants to structure the trial is up

4    to him, but the stay is being lifted, not solely for the

5    purposes of having a preliminary injunction hearing, but for

6    the purposes of considering permanent injunctive relief.

7              MR. PELHAM:  Understood, Your Honor.

8              And all I will submit there is that I don't think

9    that Judge Hsu can grant that equitable relief without

10   determining liability, and I think that's the sticking point.

11   I think that Judge Hsu will need to determine if there's a

12   basis --

13             THE COURT:  That doesn't make any sense to me at

14   all, Mr. Pelham.

15             Let me ask you this question.  Imagine that you --

16   there was, in fact, a violation that took place in the past,

17   for which damages would be available, but there is no ongoing

18   -- there was a complete cleanse and no ongoing violation.

19   Then why do you need to decide whether there was or wasn't a

20   violation in order to determine whether the cleanse was

21   successful, such that the claim for injunctive relief has

22   been mooted by the change?

23             MR. PELHAM:  Because I believe, Your Honor, that

24   that's a gating issue.  The District Court must first

25   determine whether or not the act, the defendant's act that

1   led to the violation of the status quo occurred in the first

2   instance.  I think, here, Judge Hsu would have to determine

3   whether or not GrooMore did take intellectual property from

4   Moement; and then, if it did, whether or not Moement is

5   entitled to have relief in the form of --

6               THE COURT:  All right.

7               MR. PELHAM:  -- (indiscernible)

8               THE COURT:  So, look, I'm going to grant stay

9   relief for the purpose of determining whether injunctive

10  relief is or isn't appropriate, and how Judge Hsu wants to go

11  about making that decision is up to Judge Hsu.

12              MR. PELHAM:  Understood, Your Honor.

13              MR. RILEY:  Your Honor, this is Rich Riley.  We

14  have Steve Gebelin on, who's GrooMore's trial counsel out in

15  California.

16              And I think what Mr. Pelham described is kind of

17  where the sticking point is.  They want an actual

18  determination of infringement by GrooMore and then injunctive

19  relief.  We don't think they have to go there.  We think it

20  should be limited to what you say in your decision is the

21  gating issue of whether, you know, we have cleansed ourselves

22  of any infringement.

23              THE COURT:  Right.

24              And I guess what I'm inclined to do is lift the

25  stay for the purpose of determining the entitlement to

1   injunctive relief, period.  And whatever questions Judge Hsu

2   thinks he needs to decide in order to answer that question is

3   a matter for Judge Hsu.

4          If someone thinks what's happening there violates

5   my order, you're welcome to come back and tell me that.  But

6   I've got every confidence that I can write this in a way that

7   will be clear enough to Judge Hsu, and I would begin with the

8   presumption that what Judge Hsu is doing would comport with

9   the lifting of the stay.

10          MR. RILEY:  Your Honor, can I ask for one

11   clarification?

12          THE COURT:  You --

13          MR. RILEY:  When you say --

14          THE COURT:  You may.

15          MR. RILEY:  -- you're just going to generally lift

16   the stay for injunctive relief, that's -- I guess that's --

17   and you, of course, surely -- you are the Judge, you can do

18   whatever you want.

19          We're concerned that Moement is seeking broad

20   injunctive relief beyond whether we've cleansed ourselves and

21   are operating our business --

22          THE COURT:  So help --

23          MR. RILEY:  -- or --

24          THE COURT:  So help me with that, so let's talk

25   about that.  So, to the extent you -- I see.  So the issue is

1    -- and this is a nuance that let's -- I think it's worth

2    puzzling through.

3            Let's assume for this purpose that you were

4    violating in the past, you have possession of their trade

5    secrets, you've got stuff that you shouldn't have, but that

6    today, going forward, you're not using it at all, it's

7    sitting in a garage somewhere, and you're running your

8    business in a way that is fully consistent with their trade

9    secrets and intellectual property rights.

10           And the question is:  Should you or shouldn't you

11   be required to go purge your garage of what's there?  And you

12   could say the direction to purge it is injunctive because

13   it's not a damages award.  And the question is:  Is that

14   forward-looking relief to protect their business going

15   forward or is it backward-looking relief because it's about

16   what you did in the past?

17           I guess what I'm incline -- what I'm inclined to

18   say is that the relief should be focused on the go-forward

19   operations.  And if Judge Hsu concludes that having you purge

20   the garage is necessary to guard against future violations,

21   it's appropriate; to the extent it is about punishing you for

22   what you -- your bad acts in the past, it's not.  And I'm

23   inclined, essentially, to say that and leave it to him.  Does

24   that makes sense to you?

25           MR. RILEY:  I'll leave it to Mr. Gebelin because

1        he's the trial counsel, whether that would work.

2                MR. GEBELIN:  Good morning, Your Honor.  Steven

3        Gebelin, I am trial counsel for GrooMore --

4                THE COURT:  Okay.

5                MR. PELHAM:  -- in the California matter before

6        Judge Hsu.

7                So I generally agree with all of the ideas that I'm

8        hearing about, you know, understanding that what you want us

9        to try and figure out in the California action is about the

10       gating issue of whether or not the operations are cleansed.

11               I'm also understanding, you know, whether it's

12       preliminary or final injunctive relief, that's not the issue,

13       to me.  The issue, I think, is -- as Mr. Pelham sort of

14       alluded to, is the broad scope of injunctive relief, that the

15       backwards-looking decisions of what happened before the

16       bankruptcy filing are very likely to be a large part of the

17       litigation if the stay is lifted and when the stay is lifted,

18       is it's just to determine injunctive relief.

19               I think whatever guidance the Court can give in the

20       order --

21               THE COURT:  I --

22               MR. GEBELIN:  -- if you say that injunctive relief

23       based on, you know, post-filing, either having or infringing

24       (indiscernible) it would be incredibly helpful and help us

25       limit --

```
 1              THE COURT:  All right.

 2              MR. GEBELIN:  -- the scope of --

 3              THE COURT:  So let me give --

 4              MR. GEBELIN:  -- (indiscernible)

 5              THE COURT:  I hear you.  Let me give both of you,

 6     both sides, a choice to weigh in on the following.  I am

 7     happy -- because I understand what you're saying and this has

 8     been helpful.  And unsurprisingly, you all understand your

 9     case better than I do.  But I'm happy to proceed in either of

10     two ways:

11              I'm happy to do my best to articulate what I think

12     is appropriate and just issue an order, and that will get out

13     in like an hour; or, if you all want a day to give me

14     competing forms of order for me to look at, I'm also happy to

15     do it that way.  Whatever your preference is in that regard

16     is fine with me, if you agree.  If you disagree, then I'm

17     just going to make a decision because that's my job.

18              So I'm happy to start with either side.

19          (No verbal response)

20              THE COURT:  All right.  I won't let you -- I'll

21     make a decision about who starts.

22              Mr. Hall, how would you like to -- do you want a

23     chance to give me a form of order?

24              MR. HALL:  Your Honor, it's sort of -- it's already

25     been a week since Your Honor issued its -- Your Honor issued
```

1   your letter ruling.  I mean, I think Your Honor understands

2   what you want your order to say.  It might be most expedient

3   just to have --

4           THE COURT:  I'm happy --

5           MR. RILEY:  -- the Court --

6           THE COURT:  -- to do that.

7           MR. RILEY:  -- issue its order.

8           THE COURT:  Mr. Riley, do you want the opportunity

9   to give me a form of order or are you happy to let me pick up

10  the pen?

11          MR. RILEY:  No.  As Mr. Hall says, I think we would

12  just end in what we were fighting over last week --

13          THE COURT:  Very well.

14          MR. RILEY:  -- (indiscernible) make any sense.

15          THE COURT:  Okay.  Look, I -- this has been

16  helpful, I appreciate it.  I confess, when I received word

17  that you wanted a call, it wasn't at all clear to me what

18  there was to talk about, but I am persuaded that there was a

19  thing to talk about, so that's help -- I appreciate this,

20  this is helpful.  And I will go back to chambers and draft

21  and order and will hit the button, and then you'll be in

22  Judge Hsu's hands.

23          MR. RILEY:  Thank you, Your Honor.

24          THE COURT:  Anything else that I can do to be

25  helpful this morning?

1          MR. RILEY:  Your Honor, I just had a housekeeping

2     issue.

3          THE COURT:  Certainly.

4          MR. RILEY:  And I guess I can raise this late -- I

5     can raise this later.

6          THE COURT:  It's okay.  We're here.

7          MR. RILEY:  The debtor has an -- excuse me?

8          THE COURT:  I said we're here.  It's okay, you can

9     proceed.

10          MR. RILEY:  Yeah.  The issue we have is Mr. Lin,

11     the debtor's principal, is in China.  And for any of these

12     hearings, it's going to be very, very difficult for him to

13     get to the United States; I think, with the Chinese and U.S.

14     relations, it's even harder now.  So I didn't know -- and I

15     think -- we will always consult with Mr. Hall and his

16     attorneys, but we are requesting some leniency about Zoom

17     appearances for Mr. Lin, if he's necessary at trial.  And I

18     know, you know, there are procedures with that with your

19     chambers, but --

20          THE COURT:  Yeah.

21          MR. RILEY:  -- (indiscernible)

22          THE COURT:  Look, it's a fair -- it's a fair ask

23     because it is right that I tend to be something of a stickler

24     about requiring in-person appearance.  On the other hand, the

25     circumstances -- you're not just talking about the expense

```
 1    and inconvenience; your point is broader than that.

 2               So, look, let me -- well, let me just say the

 3    following.  To the extent the parties agree on permitting

 4    Zoom appearance, I'll certainly be open the possibility that

 5    the circumstances surrounding travel from China are the kinds

 6    of extenuating circumstances that would satisfy Rule 43.  If

 7    there's a disagreement, I'm happy to hear it.  But does that

 8    give you enough guidance, at least, you know, between now and

 9    the time we actually have a hearing or -- to puzzle through

10    it?

11               MR. RILEY:  Yes, Your Honor.

12               THE COURT:  Okay.  Anything else that I can do to

13    be helpful while we're here?

14         (No verbal response)

15               THE COURT:  Okay.  So I will go back to chambers

16    and try to get an order issued.  And if issues arise, you all

17    know how to find me.  This has been helpful, so I appreciate

18    this discussion.  And with that and my thanks to all of you,

19    we are adjourned.

20               MR. RILEY:  Thank you, Your Honor.

21         (Proceedings concluded at 10:21 a.m.)

22                              *****

23

24

25
```

CERTIFICATION

I certify that the foregoing is a correct transcript from the electronic sound recording of the proceedings in the above-entitled matter to the best of my knowledge and ability.


_____          February 25, 2025

Coleen Rand, AAERT Cert. No. 341

Certified Court Transcriptionist

For Reliable