# IN THE UNITED STATES DISTRICT COURT
# FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MOEMENT, INC., a Delaware corporation,<br><br>Plaintiff,<br><br>v.<br><br>GROOMORE, INC., a Delaware corporation, CHUNLIANG LIN, an individual, JIE ZHANG, an individual, and SONGYUN LIU, an individual,<br><br>Defendants. | Case No. 2:22-cv-02871-WLH (JEMx)<br><br>*[Assigned to the Hon. Wesley L. Hsu; Courtroom 9B]*<br><br>**[PROPOSED] FINAL PRETRIAL CONFERENCE ORDER**<br><br>Final Pretrial Conference: May 2, 2025<br>Trial: May 12, 2025 |

Following pre-trial proceedings, pursuant to Federal Rule of Civil Procedure 16 and Local Rule 16, IT IS ORDERED:

## I. THE PARTIES AND PLEADINGS

The parties are: Plaintiff Moement, Inc. ("Plaintiff" or "Moement") and Defendants Groomore, Inc. ("Groomore") and Chunliang Lin ("Lin") (together, "Defendants").

The pleadings raise the following causes of action against Defendants, none of which have been dismissed or withdrawn:

(1) Defense of Trade Secrets Act violation under 18 U.S.C. § 1831 et seq. (DTSA);

(2) California Uniform Trade Secrets Act violation under Cal. Civ. Code § 3426 et seq. (CUTSA);

(3) Breach of Contract;

(4) Copyright Infringement; and

(5) California Bus. & Prof. Code § 17200 violation (*i.e.*, Unfair Competition or "UCL").

## II. JURISDICTION

As of this filing, Defendants' counsel has yet to provide any responses to Plaintiff's proposed stipulations for purposes of this final pretrial conference order. Plaintiff's position is that jurisdiction is not contested in this matter.

## III. TRIAL DURATION

The trial is estimated to take 30 to 35 hours of examination, which would require approximately 5 days with opening and closing argument.

## IV. JURY TRIAL

The trial is to be a jury trial on all claims with the exception of Plaintiff's UCL claim which will be submitted to the bench for determination following the jury verdict.

Plaintiff has filed its proposed jury instructions (Dkt. 217) and verdict forms (Dkt. 216 for Defendant Groomore, Inc. and Dkt. 223 for Defendant Chunliang

DOCUMENT PREPARED ON RECYCLED PAPER

Lin) for use at trial. Plaintiff submits the Court should adopt these instructions and forms as written.

## V. ADMITTED FACTS

On May 2, 2025, the Court granted Plaintiff's request for judicial notice (Dkt. 185). As such, the following facts will be read into the record at trial and the jury will be instructed to consider these facts as proven:

(1) Plaintiff sued Defendant Jie Zhang; and

(2) Jie Zhang did not answer or otherwise defend in this action.

## VI. STIPULATED FACTS

The following facts, though stipulated, shall be without prejudice to any evidentiary objection: none.

## VII. PARTIES' CLAIMS AND DEFENSES

**Plaintiff's Claims**:

**a. Plaintiff plans to pursue the following claims against Defendant:**

**Claim 1: DTSA/CUTSA violation**[1]

**b. The elements required to establish Plaintiff's claims are:**

- That Plaintiff owned the alleged trade secret in this dispute known as MoeGo v.1;
- That MoeGo v.1 was a trade secret at the time of the misappropriation;
- That Defendants improperly disclosed, acquired, or used MoeGo v.1 directly, or, that Defendants received, bought, or possessed MoeGo v.1 by and through another party knowing he obtained it without authorization;
- That Plaintiff was harmed or Defendants were unjustly enriched;
- That Defendants' disclosure, acquisition, or use of MoeGo v.1 was a substantial factor in causing Plaintiff's harm, or in causing Defendants to be unjustly enriched.

**Claim 2: Breach of Contract**

**c. The elements required to establish Plaintiff's claims are:**

---

[1] The parties have agreed the DTSA/CUTSA claim should be tried as one claim.

- 3 -      2:22-cv-02871-WLH

- That Plaintiff and Defendant Chunliang Lin entered into a contract or contracts;
- That Defendant Chunliang Lin failed to do something that the contract[s] required him to do;
- That Plaintiff was harmed; and
- That Defendant Chunliang Lin's breach[es] of contract was a substantial factor in causing Plaintiff's harm.

**Claim 3: Copyright Infringement**

d. **The elements required to establish Plaintiff's claims are:**
- Plaintiff is the owner of a valid copyright; and
- Defendants copied original expression from Plaintiff's copyright work.

**Claim 4: UCL Violation**

e. **The elements required to establish Plaintiff's claims are:**
- Defendants engaged in business conduct that was unlawful by violating an applicable law.
- Plaintiff suffered an injury as a result of the unlawful conduct.

f. **Key Evidence in Support of Plaintiff's Claims**

### Claim 1: DTSA / CUTSA

*Development of MoeGo v.1 and Measures to Protect It*

Ethan Dong (Dong) is one of Moement's founders and its current Chief Executive Officer (CEO). Junbao Yang (Yang) is Moement's lead software engineer responsible for overseeing the technical operations of MoeGo, including MoeGo v.1. They will testify about the following:

Moement was founded in 2016 in order to develop and launch an all-in-one software platform for mobile dog grooming companies. Moement sought to provide, on web and mobile platforms, business functions such as scheduling appointments, customer tracking information, and managing client communications, among other services. At the time Moement entered the market (around 2016), the pet care industry did not have many other, if any, similar platforms offering these services.

To expand its footprint and increase its services and functionalities, MoeGo required a unique program that could support the specific needs of commercial pet groomers. To accomplish this, in 2017, Moement and Shenzhen hired software engineer Songyun Liu (Liu), and shortly thereafter, Liu then recruited Zhang and Lin to work with him at Moement. As part of their employment, Liu, Zhang, and Lin signed several agreements with Moement, including a Founder Advisor Agreement, an Independent Contractor Agreement, and a Mutual Confidentiality Agreement (together the "Agreements") that prohibited them from disclosing MoeGo v.1 and other technologies defined to be "Confidential Information," from making use of MoeGo v.1 and "Confidential Information," and from engaging in competitive activities or possessing conflicts of interest while performing services for Moement.

Dong and Yang will testify, along with Plaintiff's expert witness Dr. Craig Rosenberg (Rosenberg), that while Moego's v.1 backend source code is based at least in part on open-source functionalities (as is customary for any software program), Moement's programmers were required to write extensive custom, bespoke code to integrate those functionalities into MoeGo's user experience as a whole. As Rosenberg will testify, the nearly three years of development time and thousands of programmer hours Moement spent to write MoeGo v.1 supports the position that the code lines that comprise MoeGo v.1 were either custom written and/or uniquely implemented. Dong, Yang, and Rosenberg will testify that there was no way for Moement to shortcut this work by reverse-engineering near-competitor platforms (they will testify that their closest competitors did not offer all of the same functions as MoeGo) or utilizing open-source code. On the issue of value of MoeGo v.1, a Dong and Rosenberg will testify that a competitor could skip all of the time that MoeGo spent planning the connections and logic relationships between functionalities, testing and debugging model user experiences, and selecting features. In fact, that is precisely what Defendants did to shortcut the launch of Groomore.

Dong and Yang will testify that Moement took comprehensive measures to

protect MoeGo v.1.  For example, in addition to requiring defendants' signatures to the Agreements, Moement restricted employees' access to the backend source code (that is, by limiting such access to only those who required it); and began (around summer 2018) to require that the code be stored in a third-party repository (GitHub) owned by Moement with security measures that protected access.  Rosenberg will also testify as to the reasonable measures Moement took to protect MoeGo v.1, for example, Moement contracts with GitHub and Google Workspace to provide cloud services, with identity control and information system security features which provide detailed activity and audit logs that Moement can and does review.

### *Zhang and Lin Resign to Launch Groomore Using MoeGo v.1*

Within months of Zhang and Lin resigning from Moement, Lin testified he launched a MoeGo-competing product, Groomore, in October 2020.  While Lin claims this launch was a primitive version, contemporaneous screenshots of Groomore's website and promotions from Groomore produced by Defendants show Groomore offering a full suite of features for customers as early as October 2020.

It is undisputed that Lin is the sole principal and founder of Groomore, and he testified launching Groomore largely by himself, apart from getting minor design help from a friend (in the form of designing a logo and selecting a font).  Lin also testified he did not begin writing Groomore's source code until August 2020 (after he resigned as a full time employee of Mengshi but while still performing services for and being paid by Moement), and that he was the sole writer of both the front and backend code for Groomore.  Thus, Lin, who had little prior professional experience writing backend code, in space of only about 8 ½ weeks, allegedly designed Groomore's web interface and database, wrote Groomore's backend source code, and carried out Groomore's marketing and promotion strategy.  Moement will show at trial that Lin could not have launched Groomore's web-based application in such an implausibly short window absent misappropriation.

### *Evidence Lin Misappropriated MoeGo Technologies*

The weight of the evidence will show that Lin was not able to launch Groomore in the short time without copying much, if not all, of MoeGo v.1:

**First**, a contemporaneous comparison of the web applications for Groomore and MoeGo show substantial similarities in user interfaces, design choices, and features. It is clear that Groomore was built around the same framework as MoeGo and that Lin modeled Groomore off the schematics, design elements, and programming he witnessed while working at Moement. **Second**, Lin has admitted to stealing components from MoeGo's frontend code, namely, MoeGo's Google Maps and FullCalendar functionalities (for which MoeGo was a paying subscriber and had specific licenses for), and integrating them into Groomore. Lin's use of MoeGo's data, even if they were not trade secrets, is probative on his propensity to copy MoeGo v.1. **Third**, evidence shows that Zhang uploaded several key files from his company laptop, which he evidently then shared with Lin. Around July 2020, Zhang uploaded a file named "customerlist.sql" and a copy of MoeGo's v.1 backend source code to his own personal repository on Github without Moement's knowledge or authorization. While Lin claims he had no involvement in Zhang's conduct, evidence shows that an access token to Zhang's Github was found in Groomore's frontend code, and a text message from a former Moement employee shows she was solicited by both Lin and Zhang to work at their new business around July 2020. **Fourth**, despite Lin's claims that he did not direct Zhang to steal MoeGo v.1, evidence found in Zhang's Github repository shows a copy of MoeGo v.1 being rewritten to reference and provide functionality for Groomore.

### *The Unauthenticated Groomore Source Code for Expert Inspection*

During discovery, Defendants purportedly produced to Moement for expert inspection a copy of Groomore's backend source code as it existed in late 2020. There are several reasons why the date of this code cannot be trusted.

First, Moement will point to testimony from Lin that Groomore never used an outside repository or maintained a version history for its source code which can

corroborate the date of the source code Defendants produced. Second, Lin testified to making daily changes to the Groomore code since it launched in October 2020. Thus, it is implausible that the code he produced would be original version (the most likely version to resemble MoeGo v.1) absent some methodology for tracking his constant changes to the code. On this point, Groomore's own expert witness (Banerjee) has testified that it is unusual even for small development teams to not use a version history or commit log to store and track changes to source code over time. Third, there were references to MoeGo in Groomore's front end source code that Moement could see (from a public vantage point) that no longer appeared in the source code that Groomore produced. Thus, while Defendants will point to the source code they produced as lacking indicia of misappropriation, Moement will attack the veracity, authenticity, and reliability of the source code they produced.

### **Claim 2: Breach of Contract**

As was briefed in Moement's MIL No. 2, (Dkt. 142), it is undisputed that Lin executed the Agreements and that said Agreements contained covenants prohibiting Lin from (1) disclosing or making use of Moement's "Confidential Information" (these obligations survived the term of the Agreements), and (2) from possessing conflicts or engaging in directly competitive activities while performing services for Moement. Because Lin has testified to doing both of these things (*e.g.*, he admits using a Moement licensed Google Maps key, and admits he launched Groomore while still performing services for and being paid by Moement), Moement's breach claim has a high likelihood of success at trial. As was also briefed in MIL No. 2, Defendants' only articulated defense to the breach claim relates to the non-compete covenants. In Defendants' view, the only non-compete language arises from the Independent Contractor Agreement on a theory that said Agreement superseded the non-compete provision of the Founder Advisory Agreement. While Moement contests this theory, even if it were true, Lin still violated the non-compete language by continuing to provide "Services" as defined in the Independent Contractor

Agreement to Moement while taking steps to directly compete with Moement by developing and launching Groomore.

### Claim 3: Copyright Infringement

For the same reasons Moement will prevail on its DTSA/CUTSA claims, it will also prevail on copyright infringement. As to the standard for infringement, Rosenberg will testify that the instances of similarities between MoeGo and Groomore are too numerous to be coincidence, and that the nearly identical user interface and user experience of both platforms makes it probable that the early version of Groomore copied MoeGo v.1 (or lines from MoeGo v.1) to function. Conversely, Banerjee's opinions on the copyright claim have been substantially narrowed. (Dkt. 153) (excluding opinions on ultimate question of infringement, on the scope of Moement's copyright protection, and opinions that there is no substantial similarity using the intrinsic test). Moreover, Banerjee's comparisons of the seven (7) lines of code lines from MoeGo v.1 deposited with the U.S. Copyright Office with Groomore's uncorroborated source code can be attacked as an incomplete and therefore not probative analysis on substantial similarity.

### Claim 4: Unfair Competition

Plaintiff will demonstrate Defendants engaged in unlawful conduct using the same evidence that supports Plaintiff's DTSA/CUTSA claim and breach of contract claim.

### Defendant's Affirmative Defenses:

As of this filing, Defendants' counsel has yet to provide any information for this section on affirmative defenses.

## VIII. REMAINING TRIABLE ISSUES

In view of the elements required to establish the claims, the following issues remain to be tried:

(1) Whether Plaintiff took reasonable measures to protect its alleged trade secret;

(2) Whether Plaintiff's alleged trade secret derived value from being kept secret;

(3) Whether Lin breached his confidentiality obligations owed to Plaintiff;

(4) Whether Lin breached his non-compete obligations owed to Plaintiff;

(5) Whether Lin's breaches caused Plaintiff harm;

(6) Whether Defendants accessed, acquired, or possessed Plaintiff's trade secret either directly or through a third-party;

(7) Whether Plaintiff was harmed by Defendants' misappropriation of Plaintiff's trade secret, and to what extent;

(8) Whether Defendants were unjustly enriched by Defendants' misappropriation of Plaintiff's alleged trade secret, and to what extent;

(9) Whether Defendants' misappropriation of Plaintiff's alleged trade secret was willful and malicious;

(10) Whether Plaintiff has proven, by clear and convincing evidence, that Defendants' misappropriation of Plaintiff's alleged trade secret was willful and malicious;

(11) Whether Groomore and MoeGo are substantially similar;

(12) Whether Plaintiff was harmed by Defendants' copying and to what extent;

(13) Whether Defendants copying of MoeGo v.1 was willful.

## IX.  DISCOVERY

All discovery is complete.

## X.  DISCLOSURES AND EXHIBIT LIST

All disclosures under Fed. R. Civ. P. 26(a)(3) have been made.

Plaintiff has filed an amended version of the exhibit list that contains the exhibits Defendants' counsel identified in October 2024. (Dkt. 224). Defendants' counsel has not responded to requests from Plaintiff for him to confirm or update his portion of the exhibit list. Thus, the amended exhibit list filed in Dkt. 224

represents a final and accurate list of Plaintiff's exhibits and objections to Defendants' exhibits only.

Plaintiff objections to Defendants' exhibits are as follows:

- To the extent Defendants intend to introduce their written discovery responses as evidence, the responses are inadmissible hearsay (Exhibit Nos. 7, 11, 17, and 201);
- To the extent Defendants intend to introduce expert reports as evidence, the reports are inadmissible hearsay (Nos. 150, 151, 154, 155, 156, 157, 200, and 202);
- Plaintiff's Complaint on relevancy grounds (No. 101);
- 2012 Patent application for Smart Scheduling on relevancy grounds and lacking foundation (No. 105);
- Plaintiff's Subpoena issued to Github on relevancy grounds (No. 106);
- Groomore's present day website screenshots on relevancy grounds (No. 401);
- Groomore's customer feature request communications as containing inadmissible hearsay (No. 405);
  Groomore APN Key Registration as containing inadmissible hearsay (No. 418);
- MoeGo Google API Key as containing inadmissible hearsay (No. 420);
- Moement grants Lin access to Apple APN as containing inadmissible hearsay (No. 425);
- Groomore Social Media Management by Millie on relevancy grounds (No. 433); and
- An email purporting to show Moement's leaked source code and a corresponding attachment as inadmissible hearsay (Nos. 426 and 427).

As of this filing, Defendants' counsel has yet to respond to requests from Plaintiff to stipulate to preadmission of exhibits that are not subject to dispute and have no genuine questions as to authenticity. Plaintiff intends to request pre-admission of these exhibits at the beginning of trial as listed in its Status Report re: Trial. (Dkt. 220).

## XI.   WITNESS LISTS

Plaintiff has filed an amended witness list with the Court that includes the witnesses Defendants' counsel identified in October 2024 during the pre-trial conference of counsel. (Dkt. 179).

Only the witnesses identified on Dkt. 179 will be permitted to testify (other than solely for impeachment).

## XII.   MOTIONS IN LIMINE

Motions *in Limine* or law and motion matters have been filed with the Court on October 25, 2024. Oppositions were filed on November 11, 2024. The parties have met and conferred on the motions *in limine*. On November 22, 2024, (Dkt. 175), the Court ruled on the motions *in limine* as follows:

- Denying Plaintiff's MIL No. 1 to exclude improper defense witnesses (Dkt. 141);
- Denying Plaintiff's MIL No. 2 to exclude affirmative defenses not pled or disclosed (Dkt. 142);
- Finding moot Plaintiff's MIL No. 3 to exclude evidence relating to trade secret identification (Dkt. 143);
- Denying Plaintiff's MIL No. 4 to exclude testimony that source code combined with open sources cannot be a trade secret (Dkt. 144);
- Granting Plaintiff's MIL No. 5 to admit source code evidence (Dkt. 147);
- Denying Defendants' MIL No. 1 to exclude evidence relating to unproduced hard drive data and files (Dkt. 149);

- Denying Defendants' MIL No. 2 to exclude screenshot evidence illegally obtained. (Dkt. 150).

Defendants abandoned their defense that Plaintiff had not sufficiently identified its trade secret in light of the Court's ruling on Plaintiff's Daubert motion, (Dkt. 153), which was the basis for the Court's mootness finding of Plaintiff's MIL No. 3. (*See generally* Dkt. 160)).

As to expert testimony, per the Court's ruling on Plaintiff's *Daubert* motion, (Dkt. 153), Defendants' expert Kaylan Banerjee is excluded from testifying as to the following: (1) any opinion on the sufficiency of Plaintiff's trade secret identification; (2) any opinion that because Plaintiff did not sufficiently identify a trade secret, there can be no trade secret misappropriation; (3) any opinion that because MoeGo backend code references open sources, the backend code cannot constitute a trade secret; and (4) opinions concerning copyright infringement, opinions concerning the scope of Plaintiff's copyright, and opinions using the intrinsic test for purposes of substantial similarity.

## XIII. BIFURCATION

No bifurcation of trial is ordered.

## XIV. ADMISSIONS

This Final Pre-Trial Order shall supersede the pleadings, and govern the course of the trial of this cause, unless modified to prevent manifest injustice.

**IT IS SO ORDERED.**

DATED:

HON. WESLEY L. HSU
UNITED STATES DISTRICT JUDGE