UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MOEMENT, INC., a Delaware corporations<br><br>Plaintiff,<br><br>v.<br><br>GROOMORE, INC., a Delaware corporations; a Delaware corporation, CHUNLIANG LIN, an individual, JIE ZHANG, an individual, and SONGYUN LIU, an individual,<br><br>Defendants. | Case No. 2:22-cv-2871-WLH-KS<br><br>**ORDER RE PLAINTIFF'S MOTION FOR PERMANENT INJUNCTION AS TO DEFENDANTS GROOMORE, INC. AND CHUNLIANG LIN [265]** |

The Court is in receipt of Plaintiff's Motion for Permanent Injunction as to Defendants Groomore, Inc. ("Defendant Groomore") and Chunliang Lin ("Defendant Lin") (collectively, "Defendants") (the "Motion"). (Mot., Docket No. 265). On July 18, 2025, the Court held a hearing on the Motion and took the matter under submission.

## I. BACKGROUND

On April 29, 2022, Plaintiff Moement Inc. ("Plaintiff") commenced the instant trade secret, copyright infringement and breach of contract action. (Complaint, Docket No. 1). On January 10, 2025, as the case neared trial, the Court recognized an automatic stay as to Defendant Groomore given Defendant's Groomore filing of bankruptcy. (Docket No. 193). On February 12, 2025, the United States Bankruptcy Judge presiding over Defendant Groomore's bankruptcy matter lifted the automatic stay with respect to Plaintiff's claim for injunctive relief. (Ex. A to Status Report ("Decision to Lift of Stay"), Docket No. 203 at 21). On March 15, 2024, the Court scheduled a trial. (Docket No. 208).

On May 12, 2025, Plaintiff proceeded to trial against two Defendants—Defendant Groomore and Defendant Lin on the central theory that Defendants used Plaintiff's backend source code of its pet grooming scheduling software ("MoeGo v.1") to launch a competitor business. (Docket No. 229, Minutes of Jury Trial First Day). On May 22, 2025, the jury returned its verdict. (Groomore Verdict Form, Docket No. 252; Lin Verdict Form, Docket No. 254). The jury found both Defendants liable for trade secret misappropriation in violation of the Defend Trade Secrets Act ("DTSA") and California's Uniform Trade Secrets Act ("UTSA") and copyright infringement in violation of the Copyright Act. (*See generally* Groomore Verdict Form; Lin Verdict Form). As part of these findings, the jury necessarily found that MoeGo v.1 was Plaintiff's trade secret and copyrighted material. The jury additionally found Defendant Lin liable for breaches of three contracts: the Founder Advisor Agreement, Independent Contractor Agreement, and Mutual Confidentiality Agreement. (Lin Verdict Form at 6). Based on the evidence presented at trial, the Court hereby confers in the jury's findings of liability.

The jury found Defendant Lin liable for $184,846 in actual losses and $387,216 in unjust enrichment due to trade secret misappropriation. (Verdict Form at 6). The jury answered "no" to the question: "Are there additional breach of contract damages

that you did not already include in the amounts you entered when [awarding trade secret damages]?" (*Id.* at 7).  Given the bankruptcy stay, the jury was not asked to assess damages as to Defendant Groomore.  (*See generally* Groomore Verdict Form).

Following the trial, Plaintiff filed the instant Motion.  Plaintiff asks the Court to (1) find in favor of Plaintiff under California's Unfair Competition Law, Cal. Bus. Prof. Code § 17200 ("UCL"); and (2) enter a permanent injunction against Defendants Groomore and Lin.  Defendant timely opposed the motion (Opp'n, Docket No. 279), and Plaintiff timely replied (Docket No. 284).

## II. UNFAIR COMPETITION CLAIM

Plaintiff prevails on its UCL Claim as a matter of law.  The UCL "borrows violations of other laws and treats them as unlawful practices that the unfair competition law makes independently actionable." *Cyntegra, Inc. v. Idexx Lab'ys, Inc.*, 520 F. Supp. 2d 1199, 1212 (C.D. Cal. 2007), *aff'd*, 322 F. App'x 569 (9th Cir. 2009) (quoting *Cel–Tech Communications, Inc. v. Los Angeles Cellular Telephone Co.*, 20 Cal.4th 163, 180)).  Because the Court concurs in the jury's finding that Defendants Groomore and Lin misappropriated Plaintiff's trade secrets and infringed upon Plaintiff's copyrights in violation of federal and state law,[1] the Court concludes that Defendants Groomore and Lin violated the UCL.

## III. PERMANENT INJUNCTION

Plaintiff seeks a permanent injunction enjoining Defendants Lin and Groomore from possessing or using Moement's trade secret and confidential information, requiring Defendants to identify, quarantine and destroy any such information, and authorizing Plaintiff to audit Defendants' systems and records for compliance at the expense of Defendants.  The Court **GRANTS** in part Plaintiff's Motion for Permanent Injunction.  A subsequent order will provide the full text of the Permanent Injunction.

---

[1] In reaching this finding, the Court expressly finds the testimony of Plaintiff's witnesses to be credible and, to the extent his testimony conflicted with the testimony of Plaintiff's witnesses, Defendant's testimony not to be credible.

**A.  Legal Standard**

A party seeking a permanent injunction must demonstrate: (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction. *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006).

The Copyright Act authorizes courts to grant final injunctions "on such terms as it may deem reasonable to prevent or restrain infringement of a copyright." 17 U.S.C. § 502. The DTSA likewise authorizes courts to grant injunctions to "prevent any actual or threatened misappropriation" of trade secrets. Finally, Plaintiff may seek equitable remedies for Defendant Lin's breaches of contract, including specific performance by Defendant Lin's destruction of information secured in violation of his contracts. *See E*Trade Fin. Corp. v. Eaton*, 305 F. Supp. 3d 1029, 1040 (D. Ariz. 2018) (granting preliminary injunction requiring defendant to return or delete confidential information secured in violation of breach of contract, breach of duty of loyalty and interference with contractual expectations).

**B.  Analysis**

*1. Irreparable Injury*

"District courts consistently conclude that a plaintiff will suffer irreparable harm if its proprietary information is misappropriated." *Monster Energy Co. v. Vital Pharms.*, Inc., No. EDCV181882JGBSHKX, 2023 WL 8168854, at *18 (C.D. Cal. Oct. 6, 2023), *aff'd*, No. 23-55451, 2025 WL 1111495 (9th Cir. Apr. 15, 2025). The Court concurs in the jury's finding that Defendants misappropriated MoeGo v.1—and concludes Plaintiff has experienced irreparable injury. *See id.* (finding irreparable injury given jury's finding of malicious and willful misappropriation of trade secrets). So long as Defendants have access to MoeGo v.1 and its derivatives, Plaintiff faces the threat of future, irreparable injury.

Further, "a trade secret plaintiff may also demonstrate irreparable injury through a loss in competitive advantage." *Id.* A copyright plaintiff may do the same. *USA, Inc. v. Rimini St., Inc.*, 324 F. Supp. 3d 1157, 1164 (D. Nev. 2018), *aff'd in part, vacated in part on other grounds, remanded*, 783 F. App'x 707 (9th Cir. 2019). The evidence at trial demonstrated that Defendants used Plaintiff's trade secret and copyrighted MoeGo v.1 as a shortcut to launch a competitive product. Additional evidence established that Plaintiff lost profits as a result of Defendant's misappropriation of trade secrets. Plaintiff thus also suffers irreparable injury given the loss of competitive advantage inflected by Defendants' possession and use of MoeGo v.1.

Finally, evidence presented at trial—including testimony by Plaintiff's expert Maryellen Sebold and records of emails sent to then-existing MoeGo customers—establishes that Plaintiff lost part of its market share as a result of Defendants' access to the copy of Moement's customer database found in Defendant Zhang's Github account. As such, Plaintiff experienced irreparable harm, and faces the threat of additional harm, as a result of Defendants' access to or possession of Moement's customer database.

### 2. Remedies at Law are Inadequate

"The terms 'inadequate remedy at law' and 'irreparable harm' describe two sides of the same coin. If the harm being suffered by plaintiff ... is 'irreparable,' then the remedy at law (monetary damages) is 'inadequate.'" *Anhing Corp. v. Thuan Phong Co. Ltd.*, 2015 WL 4517846, at *23 (C.D. Cal. July 24, 2015) (internal citation omitted). In the instant case, an injunction is needed to address an unresolved risk of future misappropriation and infringement of MoeGo v.1 and use of Plaintiff's customer data. Second, an injunction is needed to "eliminate any unfair head start [Defendants] may have gained by improper use of confidential information." *Netlist Inc v. Diablo Techs. Inc*, No. 13-CV-05962-YGR, 2015 WL 153724, at *7 (N.D. Cal. Jan. 12, 2015).

5

### 3. Balance of Equities

The balance of equities also favors entry of permanent injunction. The Court has already established the hardship faced by Plaintiff in the absence of a permanent injunction. Defendants, by contrast, "cannot claim legitimate hardship resulting from an injunction prohibiting them from engaging in illegal copyright infringement and misappropriation of trade secrets." *iBASEt v. Exacore, LLC*, 2014 WL 12576816, at *5 (C.D. Cal. Mar. 24, 2014). While the injunction certainly imposes some hardship on Defendants—including the cost of Plaintiff conducting a one-time audit of each Defendant—such an imposition is necessary to (a) ensure Defendants' compliance with the Court's order and (b) remedy the harm Defendant caused Plaintiff.

### 4. Public Interest

The public interest would not be disserved by entry of a permanent injunction. Defendant has advanced no argument that the public would be harmed by the entry of permanent injunction. (*See generally* Opp'n). Further, courts evaluating similar claims have found that a permanent injunction furthers the public interest. *Id.* ("[T]he public receives a benefit when the legitimate rights of copyright holders are vindicated."); *Comet Techs. USA Inc. v. XP Power LLC*, No. 20-CV-06408-NC, 2022 WL 4625149, at *3 (N.D. Cal. Sept. 30, 2022) ("Courts in trade secret cases have consistently held that the public interest favors the vindication of intellectual property rights."). As such, the fourth *eBay* factor is met.

### 5. Permanent Injunction Terms

In the hearing on the Motion, the Court detailed its tentative view of reasonable terms for a permanent injunction as to Defendants Groomore and Lin. The parties provided helpful suggestions for clarifying the proposed terms.[2] The Court's final injunction is forthcoming. In summary, the forthcoming injunction enjoins

---

[2] At the hearing, Defendant did not present argument against the propriety of an injunction in general.

Defendants Lin and Groomore from possessing or using Moement Trade Secret Information or Moement Confidential Information,[3] requires Defendants to identify, quarantine and destroy any such information, and authorizes Plaintiff to audit Defendants' systems and records for compliance, at the cost of Defendants.[4] The Court deems these terms reasonable to prevent or restrain infringement of copyright, prevent actual or threatened misappropriation and provide an equitable remedy of Defendant Lin's breaches of contract.

## IV. CONCLUSION

For the foregoing reasons, the Court **GRANTS** in part Plaintiff's Motion for Permanent Injunction. The Court shall issue a Permanent Injunction in a separate order.

**IT IS SO ORDERED.**

Dated: July 29, 2025

HON. WESLEY L. HSU
UNITED STATES DISTRICT JUDGE

---

[3] For the purposes of this order and forthcoming injunction the term "Moement Trade Secret Information" means any confidential information copied or derived from, in whole or in part from the source code titled MoeGo v.1, which the jury found were used or acquired through improper means. For purposes of this order and forthcoming injunction, "Moement Confidential Information" means the Moement Customer Database found in the Zhang Githhub account.

[4] Because the Court enters Default Judgment against defaulted Defendant Jie Zhang, the Permanent Injunction applies in equal force to Defendant Jie Zhang.