UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MOEMENT, INC., a Delaware corporations<br><br>Plaintiff,<br><br>v.<br><br>GROOMORE, INC., a Delaware corporations; a Delaware corporation, CHUNLIANG LIN, an individual, JIE ZHANG, an individual, and SONGYUN LIU, an individual,<br><br>Defendants. | Case No. 2:22-cv-2871-WLH-KS<br><br>**AMENDED ORDER RE PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT AS TO DEFENDANT JIE ZHANG [278]** |

Before the Court is Plaintiff Moement Inc.'s ("Plaintiff") Motion for Default Judgment (the "Motion") (Mot., Docket No. 278) against Defendant Jie Zhang ("Defendant Zhang). On July 18, 2025, the Court held a hearing on the matter. For the reasons set forth below, the Court **GRANTS** in part and **DENIES** in part the Motion and **ORDERS** entry of Default Judgment.

## I. BACKGROUND

Plaintiff owns and operates "Moego" an online pet grooming scheduling software system. (Complaint, Docket No. 1 ¶ 3). In 2017, Defendant Jie Zhang worked as a backend developer on the first version of the Moego software, known as Moego v.1. (*Id.* ¶ 4). Plaintiff alleges that on June 5, 20202, Defendant Zhang downloaded a full copy of the Moego v.1 back-end code, made a copy of that code and shared it with Defendant Chunliang Lin ("Defendant Lin") and Defendant Groomore, Inc. ("Groomore") in order to create a competing online pet grooming software. (*Id.* ¶¶ 6-11). Plaintiff alleges that, in doing so, Defendant Lin misappropriated trade secrets, breached three contracts with Plaintiff, and infringed on Plaintiff's copyrights. (*See generally id.*).

On July 2, 2024, the Clerk entered default as to Defendant Jie Zhang. (Docket Nos. 99, 100). On May 12, 2025, Plaintiff proceeded to trial against Defendant Groomore and Defendant Lin on the same claims which Plaintiff asserts against Defendant Zhang. (Minutes of Jury Trial First Day, Docket No. 229). On May 22, 2025, the jury returned its verdict. (Groomore Verdict Form, Docket No. 252; Lin Verdict Form, Docket No. 254). The jury found both Defendant Lin and Defendant Groomore liable for Trade Secret Misappropriation and Copyright Infringement. (*See generally* Groomore Verdict Form; Lin Verdict Form). The jury additionally found Defendant Lin liable for breaches of three contracts: the Founder Advisor Agreement, Independent Contractor Agreement, and Mutual Confidentiality Agreement. (*Id.* at 6).

At trial Plaintiff's expert testified that Defendant Lin was liable for $6,838,985 in lost profit damages, (Mot. for Default Judgment, Docket No. 278 at 22 (summarizing lost profit calculation put forth by Plaintiff's expert)). The jury, however, found Defendant Lin liable only for $184,846 in actual losses and $387,216 in unjust enrichment due to trade secret misappropriation. (Verdict Form at 6). The jury answered "no" to the question: "Are there additional breach of contract damages that

2

you did not already include in the amounts you entered when [awarding trade secret damages]?" (*Id.* at 7).

Following the trial, Plaintiff filed the instant Motion. (Mot.) Plaintiff asks the Court to enter default judgments against Defendant Zhang and to hold Defendant Zhang responsible for $6,838,985 in lost profit damages, $13,677,970 in exemplary damages; and $2,849,577 in pre-judgment interest, and "the full amount of [attorneys'] fees incurred in prosecuting this case." (*See generally* Mot.).

## II. LEGAL STANDARD

A court may enter default judgment upon a party's application when the defendant fails to defend itself and the clerk has entered default. Fed. R. Civ. P. 55. Generally, once the court clerk enters default, all factual allegations in the complaint—except those relating to the damages amount—are taken as true. *Geddes v. United Fin. Grp.*, 559 F.2d 557, 560 (9th Cir. 1977).

A party moving for default judgment in this district must comply with the procedural requirements of Federal Rule of Civil Procedure 55(b)(2) and Local Rule 55-1. Local Rule 55-1 requires that an application for default judgment be accompanied by a declaration that states, inter alia, (1) "[w]hether the defaulting party is an infant or incompetent person" and (2) "[t]hat the Servicemembers Civil Relief Act (50 U.S.C. App. § 521) does not apply." L.R. 55-1.

If the procedural requirements are met, as they are here, the court must determine whether default judgment should be granted by considering: (1) the possibility of prejudice to plaintiff; (2) the merits of plaintiff's substantive claim; (3) the sufficiency of the complaint; (4) the sum of money at stake in the action; (5) the possibility of dispute as to any material facts; (6) whether default resulted from excusable neglect; and (7) the strong policy of the Federal Rules of Civil Procedure favoring decisions on the merits. *Eitel v. McCool*, 782 F.2d 1470, 1471−72 (9th Cir. 1986). "A default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings." Fed. R. Civ. P. 54(c).

## III. DISCUSSION

### A. Eitel Factors

As set forth below, Plaintiff has satisfied the *Eitel* factors such that granting default judgment is proper.

#### 1. *Possibility of Prejudice to Plaintiff*

First, Plaintiff will suffer prejudice absent default judgment because of Defendant Zhang's refusal to participate in the litigation. Accordingly, default judgment is Plaintiff's only method to obtain a remedy for Defendant Zhang's alleged misappropriation of trade secrets, breach of contract and copyright infringement. *See PepsiCo, Inc. v. Cal. Sec. Cans*, 238 F. Supp. 2d 1172, 1177 (C.D. Cal. Dec. 27, 2002) ("If [the plaintiff's] motion for default judgment is not granted, [the plaintiff] will likely be without other recourse for recovery.").

#### 2. *Merits of Plaintiff's Substantive Claims and Sufficiency of the Complaint*

Second and third, Plaintiff's trade secret misappropriation claims (causes of action I and II), breach of contract claims (cause of action III), copyright infringement (cause of action IV) and unfair competition claims (causes of action V) are meritorious, and the Complaint is sufficiently pled. As in other cases where the Court has entered default judgment, the merit of the claims are demonstrated by the well-pled factual allegations, which the Court must accept as true at this posture. In this case, the merits of the claims are emphasized by the fact that Plaintiff prevailed on near-identical claims against Defendant Lin and Defendant Groomore at trial both before the jury and before the Court as to injunctive relief. (*See generally* Groomore Verdict Form; Lin Verdict Form; Order re Plaintiff's Mot. for Permanent Injunction Against Defs. Groomore and Lin). Much of the evidence presented to the jury applies equally as to Defendant Zhang as it did to Defendant Lin and Defendant Groomore. Further, because the case proceeded to trial, Plaintiff has specific evidence, which the Court found credible, that Defendant Zhang had stolen MoeGo v.1 and shared it with Defendant Lin and

Defendant Groomore, thus violating copyright laws and breaching his contracts with Plaintiff. (*See*, *e.g.,* Trial Exhibit 149 (Zhang's GitHub account); Trial Exhibit 138 (Moement's forensic investigator expert report)).

### a. Trade Secret Misappropriation Claims (Cause of Action I and II)

To prevail on its trade secret misappropriation claims against Defendant Lin, Plaintiff must establish that (a) Plaintiff owned MoeGo v.1; (b) MoeGo v.1 was a trade secret; (c) Defendant Zhang improperly disclosed, acquired, and used the trade secret directly; (d) Plaintiff was harmed or Defendant Zhang was unjustly enriched; (e) Defendant's disclosure, acquisition, or use of MoeGo v.1 was a substantial factor in causing Plaintiff's harm, or in causing Defendants to be unjustly enriched. 18 U.S.C. § 1832; CACI (2024) 4401. Plaintiff has sufficiently pled these elements as to Defendant Zhang. (Complaint ¶¶ 53-80). This alone suffices to establish liability given that the Court must take factual allegations in the Complaint as true. *Geddes*, 559 F.2d at 560.

The merit of Plaintiff's trade secret claims are underscored by the jury verdict and Court's post-trial findings against Defendant Lin and Groomore at trial. The jury was instructed as to nearly identical elements as to Defendants Lin and Groomore. (Jury Instructions, Docket No. 239 at 51). In finding that those Defendants were liable for trade secret misappropriation the jury found that Plaintiff owned MoeGo v.1, that MoeGo v.1 was a trade secret, and that Defendants were harmed and/or enriched by the use, disclosure or acquisition of MoeGo v.1. (*Id.* (outlining elements); Lin Verdict Form; Groomore Verdict Form (reflecting finding of trade secret misappropriation)).[1]

Finally, the Court specifically finds that Plaintiff has sufficiently pled that Defendant Zhang willfully and maliciously misappropriated Plaintiff's trade secrets

---

[1] The jury also found, and this Court agrees, that Defendants Lin and Groomore either "improperly disclosed, acquired, and used the trade secret directly, or, alternatively, that Defendants received, bought, or possessed MoeGo v.1 by and through Jie Zhang

5

1 and that this claim has merit. Plaintiff specifically alleges that Defendant Zhang
2 willfully and maliciously misappropriated Plaintiff's trade secrets and infringed on
3 Plaintiff's copyrights (Complaint ¶¶ 42-42, 79, 91).

### b. Breach of Contract Claims (Cause of Action III)

To prevail on its breach of contract, Plaintiff must establish "(1) the contract, (2) plaintiff's performance or excuse for nonperformance, (3) defendant's breach, and (4) the resulting damages to plaintiff." *Reichert v. Gen. Ins. Co. of Am.*, 68 Cal. 2d 822, 830, 442 P.2d 377, 381 (1968). Taking the allegations of the Complaint as true, as the Court must do at this stage, Plaintiff has met each element as to Defendant Zhang. Plaintiff alleges that that Defendant Zhang signed a Mutual Confidentiality Agreement, a Founder Advisor Agreement and an Independent Contractor agreement, all of which prohibited Defendant Zhang from using or disclosing trade secrets. (Complaint ¶ 82); that Defendant Zhang breached this agreement by copying MoeGo v.1 and sharing it with Defendants Lin and Groomore (*id.* ¶ 83; 42-43); and that Moement sustained damages from this breach of contract (*id.* ¶ 84). Plaintiff's Breach of Contract claims as to Defendant Zhang are therefore sufficiently pled and meritorious.

### c. Copyright Infringement (Cause of Action IV)

To prevail on its copyright infringement claim, Plaintiff must establish that Plaintiff owned a valid copyright and Defendant Zhang infringed upon it. (17 U.S.C. § 501(a)-(b)). Plaintiff properly alleged these elements by alleging that Plaintiff owns the copyright to Moego v.1 (Complaint ¶ 86) and that Defendant Zhang infringed upon the copyright by copying Moego v.1 for use in Defendant Groomore's competing software. (*Id.* ¶ 86). The jury's verdicts and the Court's post-trial findings against Defendants Lin and Groomore on copyright infringement (Lin

---

knowing he obtained it without authorization." (Jury Instructions at 51).

Verdict Form at 5; Groomore Verdict Form at 2) lend further credence to the merits of Plaintiff's claim as to Defendant Zhang.

### d. Unfair Competition (Cause of Action V)

Finally, Plaintiff prevails on its unfair competition claim against Defendant Zhang as a matter of law. California's Unfair Competition Law "borrows violations of other laws and treats them as unlawful practices that the unfair competition law makes independently actionable." *Cyntegra, Inc. v. Idexx Lab'ys, Inc.*, 520 F. Supp. 2d 1199, 1212 (C.D. Cal. 2007), *aff'd*, 322 F. App'x 569 (9th Cir. 2009) (*quoting Cel–Tech Communications, Inc. v. Los Angeles Cellular Telephone Co.*, 20 Cal.4th 163, 180)). Because the Court has found that Plaintiff has prevailed against Defendant Zhang on its breach of contract, trade secrets and copyright claims, Plaintiff's unfair competition claim is meritorious.

### 3. *Sum of Money at Stake in the Action*

The sum of money which the Court *awards* does not prevent entry of default judgment. Evaluating the sum of money at stake requires the court to "consider the amount of money at stake in relation to the seriousness of Defendant[s'] conduct." *PepsiCo*, 238 F. Supp. 1172 at 1176. At trial, Plaintiff's expert Maryellen Sebold demonstrated that the misappropriation of MoeGo v.1 led to $990,447 in Lost Profit between April 1, 2021, and December 9, 2024. (*See*, e.g., Trial Exhibit 180 (summarizing calculations)). The Court finds this testimony to be credible and that Defendant Lin is responsible for this lost profit figure. The amount of money is thus commensurate with the seriousness of Defendant's conduct.

### 4. *Possibility of Dispute to Any Material Facts*

Fifth, the possibility of disputed material facts is improbable as Defendant Zhang was served with the Complaint over three years ago and still has not appeared in the case. (*See* Proof of Service, Docket No. 30; Order re: Request for Entry of Default, Docket No. 99 at 2 (finding service proper)). Moreover, as discussed above, the Court must take the facts of the Complaint as true in evaluating a default judgment motion.

Further, the Defendants in this case who proceeded to trial—and had a full opportunity to dispute material facts—lost on the merits before both the jury and the Court.

### 5. *Whether Default Resulted From Excusable Neglect*

Sixth, it is unlikely that Defendant Zhang's default resulted from excusable neglect. Defendant Zhang was properly served the Complaint by personal service on May 7, 2022. (Proof of Service; Order re: Request for Entry of Default at 2). Further, a representative for Moement mailed a copy of the Complaint and Summons to the address listed on Defendant Zhang's Mutual Confidentiality Agreement. (Order re: Request for Entry of Default at 2). The Court explicitly found that service was proper. (*Id.* at 2-3). Additionally, Plaintiff's counsel emailed Defendant Zhang a copy of this Motion using an email address by which Defendant Zhang previously communicated with Plaintiff's counsel. (Amended Scandroli Decl., Docket No. 283 ¶¶ 4-5, Ex. B).

### 6. *Policy to Favor Decisions on the Merits*

Seventh, though cases should be decided on their merits where possible, such preference must give way when it is not reasonably possible to reach such a decision. *See, e.g.*, *Truong Giang Corp. v. Twinstar Tea Corp.*, No. 06-03594 JSW, 2007 WL 1545173, at *13 (N.D. Cal. May 29, 2007). Because Defendant has declined to engage in the judicial process, a decision on the merits is not possible and default judgment is appropriate here.

### B. **Remedies**

Plaintiff requests a permanent injunction, damages, attorneys' fees in amount to be proven, pre-judgment interest and post-judgment interest.

### 1. *Damages*

In the Motion, Plaintiff asks the Court to hold Defendant Zhang responsible for $6,838,985 in compensatory damages representing Moement's lost profits and $13,677,970 in exemplary damages. (Mot. at 19-25). Plaintiff argues that its expert demonstrated that Moement suffered $6,838,985 in lost profits due to Defendant

Zhang's actions. (*Id.* at 22-24).[2] Plaintiff asks the Court to award the maximum amount of exemplary damages provided for under trade secret law.

At trial, the jury was asked to find the amount of loss profit damages Plaintiff suffered as a result of the misappropriation of MoeGo v.1. The jury found that Plaintiff suffered $184,846 in lost profit damages. (Lin Verdict Form). In evaluating a proper default judgment as to Defendant Zhang, however, the Court is not bound by the jury's verdict. The Court believes that Plaintiff's expert Maryellen Sebold presented sufficient, credible evidence that Plaintiff suffered at least $990,477 in lost profit damages from April 1, 2021, through December 9, 2024. The Court awards these damages. The Court declines to award further compensatory damages given the more speculative nature of Ms. Sebold's calculation of loss profits beyond December 9, 2024.

In light of the Court's calculation of loss profit damages—which are more than five times the loss profit damages assessed by the jury—the Court declines to exercise its discretion to impose exemplary damages.

### 2. *Attorneys' Fees*

Because the Court enters default judgment against Defendant Zhang on the claim that Defendant Zhang willfully and maliciously appropriated MoeGo v.1., the Court may award reasonable attorneys' fees. 18 U.S.C. § 1836(b)(3)(C); Cal. Civ. Proc. Code. § 3426.4 (providing for attorneys' fees upon a finding of willful and malicious disapprobation). Local Rule 55-3 provides a schedule of attorneys' fees.

---

[2] This figure represents Ms. Sebold's calculation of $990,477 in then-current lost profits calculated between April 1, 2021, and December 9, 2024, and $5,848,508 in projected future lost profits. (*See* Trial Exhibit 180 (illustrative aid summarizing Sebold's calculations)). At hearing on the Motion, Plaintiff asked the Court to consider awarding the $990,447 "current" lost profit damages should the Court find it inappropriate to award the full $6,838,985 in damages.

L.R. 55-3. Where, as here, the amount of judgment is over $100,000, the scheduled award is $5600 plus 2% of the amount over $100,000. *Id.*

Local Rule 55-3 permits parties to ask the Court to affix fees in excess of the schedule but provides Courts the discretion to deny such a request. *Id.* Plaintiff asks the Court for the full amount of the fees Moement incurred in prosecuting the case against all Defendants. (Mot. at 25). Plaintiff asks the Court to allow Plaintiff to submit supplemental briefing on the amount of fees. The Court denies this request. The Court is not convinced that, had Defendant Zhang not defaulted, "many of the fees [incurred] would have been avoided" because discovery on Defendant Zhang "would have yielded evidence of liability early in the action and dramatically narrowed the scope of litigable issues. (*Id.*) Imposing the entire cost of litigation upon the defaulted Defendant appears fundamentally unfair. The Court, therefore, awards attorneys' fees in the amount of $23,409.54, as provided for in Local Rule 55.3's schedule.

### 3. *Pre-Judgment and Post-Judgment Interest*

The Court previously declined Plaintiff's request to award pre-judgment interest as to Defendants Lin and Groomore. (Docket No. 287). The Court, likewise, declines to exercise its discretion to award pre-judgment interest as to defaulted Defendant Zhang.

"Under the provisions of 28 U.S.C. § 1961, post-judgment interest on a district court judgment is mandatory." *Air Separation, Inc. v. Underwriters at Lloyd's of London*, 45 F.3d 288, 290 (9th Cir. 1995) (citing *Perkins v. Standard Oil Co.*, 487 F.2d 672, 674 (9th Cir.1973)). Post-judgment interest applies to the entire judgment. *Id*. at 291. The post-judgment interest rate is set "at a rate equal to the weekly average 1–year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding . . . the date of the judgment." 28 U.S.C. § 1961(a). As of publishing of this Order, that rate sits at 4.06%. (https://www.federalreserve.gov/releases/h15/). Post-judgment interest on

compensatory damages, exemplary damages and attorneys' fees, will accrue at 4.06% from the date the judgment is entered until the date of Defendant Zhang's full payment.

    4. *Permanent Injunction*

"[I]njunctive relief [is] an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Stormans, Inc. v. Selecky*, 586 F.3d 1109, 1127 (9th Cir. 2009) (quoting *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008)); *see also Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 165 (2010). The party seeking a permanent injunction must demonstrate: (1) it has suffered irreparable harm; (2) monetary damages are inadequate; (3) the balance of hardships is in the moving party's favor; and (4) the public interest would not be disserved by a permanent injunction. *eBay, Inc. v. MercExchange, LLC*, 547 U.S. 388, 391 (2006). "The decision to grant or deny permanent injunctive relief is an act of equitable discretion by the district court, reviewable on appeal for abuse of discretion." *Id*. at 391.

The Copyright Act authorizes courts to grant final injunctions "on such terms as it may deem reasonable to prevent or restrain infringement of a copyright." 17 U.S.C. § 502. The DTSA likewise authorizes courts to grant injunctions to "prevent any actual or threatened misappropriation" of trade secrets. Finally, Plaintiff may seek equitable remedies for Defendant Zhang's breaches of contract, including specific performance by Defendant Zhang's destruction of information secured in violation of his contracts. *See E*Trade Fin. Corp. v. Eaton*, 305 F. Supp. 3d 1029, 1040 (D. Ariz. 2018) (granting preliminary injunction requiring defendant to return or delete confidential information secured in violation of breach of contract, breach of duty of loyalty and interference with contractual expectations).

Plaintiff established the elements required for permanent injunctive relief. First, the Plaintiff will suffer irreparable harm. "District courts consistently conclude that a plaintiff will suffer irreparable harm if its proprietary information is misappropriated."

11

*Monster Energy Co. v. Vital Pharms., Inc.*, No. EDCV181882JGBSHKX, 2023 WL 8168854, at *18 (C.D. Cal. Oct. 6, 2023), aff'd, No. 23-55451, 2025 WL 1111495 (9th Cir. Apr. 15, 2025). Relatedly, "a trade secret plaintiff may also demonstrate irreparable injury through a loss in competitive advantage," *id*, and copyright plaintiff may do the same. *USA, Inc. v. Rimini St., Inc.*, 324 F. Supp. 3d 1157, 1164 (D. Nev. 2018), *aff'd in part, vacated in part on other grounds, remanded*, 783 F. App'x 707 (9th Cir. 2019). The Court enters default judgement against Defendant Zhang on Plaintiff's trade secret and copyright claims—which incorporate factual allegations that Defendant Zhang harmed Plaintiff's competitive advantage. The Court thus finds that Defendant Zhang has caused irreparable harm and faces the risk of further irreparable harm in the absence of injunctive relief.

Second, Plaintiff has demonstrated that remedies at law are inadequate. "The terms 'inadequate remedy at law' and 'irreparable harm' describe two sides of the same coin. If the harm being suffered by plaintiff ... is 'irreparable,' then the remedy at law (monetary damages) is 'inadequate.'" *Anhing Corp. v. Thuan Phong Co. Ltd.*, 2015 WL 4517846, at *23 (C.D. Cal. July 24, 2015) (internal citation omitted). In the instant case, an injunction is needed to address an unresolved risk of Defendant Zhang's future misappropriation and infringement of MoeGo v.1 and use of Plaintiff's customer data. Second, an injunction is needed to "eliminate any unfair head start [Defendant Zhang] may have gained by improper use of confidential information." *Netlist Inc v. Diablo Techs. Inc*, No. 13-CV-05962-YGR, 2015 WL 153724, at *7 (N.D. Cal. Jan. 12, 2015).

Third, the balance of equities also favors entry of permanent injunction. The Court has already established the hardship faced by Plaintiff in the absence of a permanent injunction. Defendant Zhang, by contrast, "cannot claim legitimate hardship resulting from an injunction prohibiting them from engaging in illegal copyright infringement and misappropriation of trade secrets." *iBASEt v. Exacore, LLC*, 2014 WL 12576816, at *5 (C.D. Cal. Mar. 24, 2014). While the injunction certainly imposes some hardship on Defendant Zhang—including the cost of Plaintiff conducting a one-

time audit of Defendant Zang—such an imposition is necessary to (a) ensure Defendant Zhang's compliance with the Court's order and (b) remedy the harm Defendant caused Plaintiff.

Fourth, a permanent injunction would serve public interest. Courts evaluating similar claims have found that a permanent injunction furthers the public interest. *Id.* ("[T]he public receives a benefit when the legitimate rights of copyright holders are vindicated."); *Comet Techs. USA Inc. v. XP Power LLC*, No. 20-CV-06408-NC, 2022 WL 4625149, at *3 (N.D. Cal. Sept. 30, 2022) ("Courts in trade secret cases have consistently held that the public interest favors the vindication of intellectual property rights."). As such, the public interest would not be disserved by entry of a permanent injunction against Defendant Zhang.

The Court finds it appropriate to enter the same permanent injunction as to Defendant Zhang as it does against Defendants Lin and Moement. The permanent injunction will follow as a separate order.

## IV. CONCLUSION

For the foregoing reasons, Plaintiff's Motion for Default Judgment is **GRANTED** in part and **DENIED** in part. The Court **ORDERS** entry of the following Default Judgment.

## V. DEFAULT JUDGMENT

1. The Judgement hereby enters judgment in favor of Plaintiff Moement and against Defendant Zhang in the total amount of:
    a. Compensatory damages in the amount of $ 990,477;
    b. Attorneys' Fees in the amount of $ 23,409.54;
    c. Post-judgment interest as provided by law from the date of this Order until paid in full.

2. The Court shall issue a Permanent Injunction in a separate order.

**IT IS SO ORDERED.**

Dated: August 18, 2025

_____
HON. WESLEY L. HSU
UNITED STATES DISTRICT JUDGE